# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| BALLAST VENTURES LLC ROTH 401(K) PLAN, JOSEPH HERMAN, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Ballast Ventures LLC Roth 401(K) Plan ("**Ballast Ventures**"), Joseph Herman ("**Herman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I. **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Ballast Ventures, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Ben-Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

       b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and their authorized representatives; and

       c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 28,283,537, or at least $4,279,000.00 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

Case 1:19-cv-01781   Document 1-1   Filed 02/04/19   Page 6 of 747

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Ballast Ventures is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 250 West 55th Street, New York, NY 10019, USA.  On information and belief, each participant, or member, of Defendant Ballast Ventures is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Ballast Ventures purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Herman is a citizen of the State of New York.  Defendant Herman was the sole participant in Defendant Ballast Ventures.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Ben-Jacob served as the Authorized Representative for Defendant Ballast Ventures.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 250 West 55th Street, New York, NY 10019, the same address listed by Defendant Ballast Holdings in its fraudulent refund claims to SKAT.

Case 1:18-md-02865-LAK   Document 87-1   Filed 02/20/19   Page 6 of 8

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.      **The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

1.      **The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

   a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

   b.      a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

      i.      the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

      ii.     the amount of the tax refund claim;

      iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

iv.     the bank account to which SKAT should pay the claim;

c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Ballast Ventures, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims.  Defendant Ballast Ventures represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Ballast Ventures' claims.

36.    As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Ballast Ventures represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

37.    Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Ballast Ventures made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 28,283,537, or at least $4,279,000 (US).  These refund claims were submitted to SKAT on May 22, 2015.

38.    In fact, Defendant Ballast Ventures did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.    Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Ballast Ventures on July 6, 2015.

40.    On information and belief, Defendant Herman caused Defendant Ballast Ventures' fraudulent refund claims to be submitted to SKAT.  Defendant Herman exerted control over Defendant Ballast Ventures as the plan's sole participant, and used this control to commit the fraud on SKAT.

41.    Defendant Herman was the sole participant in three different pension plans that submitted fraudulent tax refund claims to SKAT.  For one of these claimants, non-party Fairlie

Investments LLC Roth 401(K) Plan, Defendant Herman also served as the plan's Authorized Representative.

### 3.  The Role of the Claimants' Authorized Representatives

42.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.     Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Ballast Ventures a "Special Power of Attorney" dated January 6, 2015, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Ballast Venture's] name for which [Ballast Ventures is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Ballast Ventures is] entitled on [Ballast Venture's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Ballast Ventures.

44.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Ballast Ventures' claims to SKAT.

45.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Ballast.  Six of these claimants, including Defendant Ballast, listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in their fraudulent refund claims to SKAT.

46.     In addition to Defendant Ballast Ventures, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

47.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.     By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

50.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

51.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other

participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

52.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.      By way of example, with respect to Defendant Ballast Ventures, one example of a "Credit Advice":

a.      is made out by Telesto Markets LLP;

b.      is dated April 7, 2015;

c.      purports to certify Defendant Ballast Ventures' ownership of 7,903 shares in AP Moeller-Maersk A/S-A (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.      states an International Securities Identification Number ("**ISIN**") for AP Moeller-Maersk A/S-A shares as "DK0010244425".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.      Defendant Ballast Ventures never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against All Defendants)

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 52 through 54 to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 28,283,537, or at least $4,279,000 (US), and thereby suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

67.     SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.     SKAT's mistaken belief was material to its decision to pay the claims.

71.     SKAT suffered a loss as a result of its mistaken payments.

72.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.     SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.     SKAT suffered a loss because of the Defendants' unjust enrichment.

77.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.     SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Both Defendants)

81.    SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.    Defendants made material misstatements described in paragraphs 29-30, 37, and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Ballast Ventures to SKAT.   Defendants knew, or should have known, that these statements were inaccurate.

84.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 28,283,537, or at least $4,279,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| BAREROOT CAPITAL INVESTMENTS LLC ROTH 401(K) PLAN, DAVID ZELMAN, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Bareroot Capital Investments LLC Roth 401(K) Plan ("**Bareroot**"), David Zelman ("**Zelman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Bareroot, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

   a.     The Authorized Representatives of the claimants, such as Defendant Zelman, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 28,899,429, or at least $4,373,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.       Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

### III.   PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Bareroot is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Bareroot is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Bareroot purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Zelman is a citizen of the State of Texas.  At all times material to the allegations in this Complaint, Defendant Zelman was the sole participant in and served as the Authorized Representative for Defendant Bareroot.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Bareroot in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

    a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

    b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

        i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

        ii.    the amount of the tax refund claim;

        iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

    iv. the bank account to which SKAT should pay the claim;

   c. a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

   d. a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

   e. in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30. The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31. It was SKAT's practice to pay claims that included the required supporting documentation.

32. SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2. The Role of the Claimants

33. Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34. Each of the claimants, including Defendant Bareroot, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35. As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims.  Defendant Bareroot represented that Defendant Zelman was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Bareroot's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Bareroot represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Bareroot made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 28,899,429, or at least $4,373,000 (US).  These refund claims were submitted to SKAT on the following dates:  October 28, 2014; April 16, 2015; April 21, 2015; April 23, 2015; April 28, 2015; and May 15, 2015.

38.     In fact, Defendant Bareroot did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Bareroot on the following dates:  November 10, 2014; May 8, 2015; May 27, 2015; and July 6, 2015.

40.     On information and belief, Defendant Zelman caused Defendant Bareroot's fraudulent claims to be submitted to SKAT.  Defendant Zelman exerted control over Defendant Bareroot as the plan's sole participant, and used this control to commit the fraud on SKAT.  Defendant Zelman was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3.  The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     At the direction of, and on behalf of, Defendant Bareroot, Defendant Zelman caused the execution of a "Limited Power of Attorney" dated August 7, 2014, that granted to Payment Agent Syntax authority to be Defendant Bareroot's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."  Defendant Zelman described himself as the "Authorized Representative" of Defendant Bareroot.

43.     As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Zelman and be subject to his direction and control with respect to Defendant Bareroot's claims to SKAT.

44.     In addition to Defendant Bareroot, Defendant Zelman served as the Authorized Representative for at least two other claimants, which, in their fraudulent requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.     Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Zelman's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Bareroot to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Bareroot's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Zelman with regard to Defendant Bareroot's fraudulent claims to SKAT.

48.     In addition to Defendant Bareroot, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41 through 45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

11

c.       enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.       requested that SKAT pay the claim to its bank account.

53.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.       The Role of the Broker-Custodians

54.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.      By way of example, with respect to Defendant Bareroot, one example of a "Credit Advice":

a.       is made out by Telesto Markets LLP;

b.       is dated May 11, 2015;

c.       purports to certify Defendant Bareroot's ownership of 294,163 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.       states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Bareroot never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants Bareroot and Zelman)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 28,899,429, or at least $4,373,000 (US) and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

**(Negligent Misrepresentation – Against Defendants Bareroot and Zelman)**

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Bareroot to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 28,899,429, or at least $4,373,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

                              Respectfully submitted,


                              HUGHES HUBBARD & REED LLP


                               s/ Sarah. L. Cave
                              William R. Maguire
                              Marc A. Weinstein
                              Sarah L. Cave
                              John T. McGoey
                              One Battery Park Plaza
                              New York, New York 10004-1482
                              (212) 837-6000 (t)
                              (212) 422-4726 (f)
                              Bill.maguire@hugheshubbard.com
                              Marc.weinstein@hugheshubbard.com
                              Sarah.cave@hugheshubbard.com
                              John.mcgoey@hugheshubbard.com

                              Counsel for Plaintiff Skatteforvaltningen
                              (Customs and Tax Administration of the
                              Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| ALBEDO MANAGEMENT LLC ROTH 401(K) PLAN, JOSEPH HERMAN, and MICHAEL BEN-JACOB | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Albedo Management LLC Roth 401(K) Plan ("**Albedo**"), Joseph Herman ("**Herman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.     **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Albedo, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

        a.      The Authorized Representatives of the claimants, such as Defendant Ben-Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 68,907,138, or at least $10,426,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III.   **PARTIES**

16.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.    Defendant Albedo is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 250 West 55th Street, New York, NY 10019, USA.  On information and belief, each participant, or member, of Defendant Albedo is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Albedo purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.    Defendant Herman is a citizen of the State of New York.  Defendant Herman was the sole participant in Defendant Albedo.

19.    Defendant Ben-Jacob is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Ben-Jacob served as the Authorized Representative for Defendant Albedo.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 250 West 55th Street, New York, NY 10019, the same address listed by Defendant Albedo in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.    the bank account to which SKAT should pay the claim;

c.    a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.    a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.    in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.    The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.    It was SKAT's practice to pay claims that included the required supporting documentation.

32.    SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.    The Role of the Claimants

33.    Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.    Each of the claimants, including Defendant Albedo, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.    As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Albedo represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Albedo's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Albedo represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Albedo made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 68,907,138, or at least $10,426,000 (US). These refund claims were submitted to SKAT on the following dates: May 22, 2015 and May 29, 2015.

38.     In fact, Defendant Albedo did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Albedo on July 6, 2015.

40.     On information and belief, Defendant Herman caused Defendant Albedo's fraudulent claims to be submitted to SKAT. Defendant Herman exerted control over Defendant Albedo as the plan's sole participant, and used this control to commit the fraud on SKAT.

41.     Defendant Herman was the sole participant in three different pension plans that submitted fraudulent tax refund claims to SKAT. For one of these claimants, non-party Fairlie Investments LLC Roth 401(K) Plan, Defendant Herman also served as the plan's Authorized Representative.

### 3.    The Role of the Claimants' Authorized Representatives

42.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.    Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Albedo a "Special Power of Attorney" dated January 6, 2015, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Albedo's] name for which [Albedo is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Albedo is] entitled on [Albedo's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Albedo.

44.    As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Albedo's claims to SKAT.

45.    Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Albedo.  Six of these claimants, including Defendant Albedo, listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in their fraudulent refund claims to SKAT.

46.    In addition to Defendant Albedo, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.   The Role of the Payment Agents

47.   The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.   By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.   With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

50.   In connection with each Claim Form, the Payment Agent:

a.   provided its email address as the contact address for the claimant on whose behalf it was acting;

b.   signed and stamped the form, and stated it was applying on behalf of the claimant;

c.   enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.   requested that SKAT pay the claim to its bank account.

51.   As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.   The Role of the Broker-Custodians

52.   Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to

show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.    By way of example, with respect to Defendant Albedo, one example of an "Income Advice":

a.    is made out by Old Park Lane Capital PLC;

b.    is dated December 9, 2014;

c.    purports to certify Defendant Albedo's ownership of 1,085,287 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.    states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.    Defendant Albedo never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

55.    SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.    Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 52 through 54 to support claims for withholding tax refund payments.

57.    Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.    In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 68,907,138, or at least $10,426,000 (US), and thereby suffered damages of that amount, plus interest.

59.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

60.    SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.    As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.    As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.    The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.    The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65.    As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

67.    SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.    This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.    SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.    SKAT's mistaken belief was material to its decision to pay the claims.

71.    SKAT suffered a loss as a result of its mistaken payments.

72.    The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.    SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.    This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.    By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.    SKAT suffered a loss because of the Defendants' unjust enrichment.

77.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.     SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

81.     SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.     Defendants made material misstatements described in paragraphs 29-30, 37, and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Albedo to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.    SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 68,907,138, or at least $10,426,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.    For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.    For Counts I and II, punitive damages.

4.    The costs of this action.

5.    All other and further relief that is just and proper.

# JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| DICOT TECHNOLOGIES LLC ROTH 401(K) PLAN, DAVID ZELMAN, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Dicot Technologies LLC Roth 401(K) Plan ("**Dicot**"), David Zelman ("**Zelman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.     **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Dicot, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

   a.      The Authorized Representatives of the claimants, such as Defendant Zelman, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 28,027,173, or at least $4,241,000 (US)[2], plus interest.

## II.      JURISDICTION & VENUE

14.       Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    **PARTIES**

16.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.    Defendant Dicot is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Dicot is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Dicot purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.    Defendant Zelman is a citizen of the State of Texas.  At all times material to the allegations in this Complaint, Defendant Zelman was the sole participant in and served as the Authorized Representative for Defendant Dicot.

19.    Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Dicot in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.     **The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.     **The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

iv.        the bank account to which SKAT should pay the claim;

c.        a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.        a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.        in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.      It was SKAT's practice to pay claims that included the required supporting documentation.

32.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.      The Role of the Claimants

33.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.      Each of the claimants, including Defendant Dicot, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.      As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims.  Defendant Dicot represented that Defendant Zelman was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Dicot's claims.

36.    As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Dicot represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37.    Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Dicot made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 28,027,173, or at least $4,241,000 (US).  These refund claims were submitted to SKAT on the following dates:  December 10, 2014; April 16, 2015; April 21, 2015; April 27, 2015; and May 15, 2015.

38.    In fact, Defendant Dicot did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.    Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Dicot on the following dates:  January 7, 2015; May 8, 2015; May 27, 2015; and July 6, 2015.

40.    On information and belief, Defendant Zelman caused Defendant Dicot's fraudulent claims to be submitted to SKAT.  Defendant Zelman exerted control over Defendant Dicot as the plan's sole participant, and used this control to commit the fraud on SKAT.  Defendant Zelman was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3. The Role of the Claimants' Authorized Representatives

41.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.    At the direction of, and on behalf of, Defendant Dicot, Defendant Zelman caused the execution of a "Limited Power of Attorney" dated August 7, 2014, that granted to Payment Agent Syntax authority to be Defendant Dicot's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction." Defendant Zelman described himself as the "Authorized Representative" of Defendant Dicot.

43.    As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Zelman and be subject to his direction and control with respect to Defendant Dicot's claims to SKAT.

44.    In addition to Defendant Dicot, Defendant Zelman served as the Authorized Representative for at least two other claimants, which, in their fraudulent requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.    Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Zelman's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims. Defendant Ben-Jacob also allowed Defendant Dicot to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Dicot's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Zelman with regard to Defendant Dicot's fraudulent refund claims to SKAT.

48.     In addition to Defendant Dicot, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

11

> c.    enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

> d.    requested that SKAT pay the claim to its bank account.

53.    As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.    The Role of the Broker-Custodians**

54.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.    By way of example, with respect to Defendant Dicot, one example of a "Dividend Credit Advice":

> a.    is made out by West Point Derivatives Ltd;

> b.    is dated May 11, 2015;

> c.    purports to certify Defendant Dicot's ownership of 291,729 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

> d.    states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

12

56. Defendant Dicot never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

**(Fraud – Against Defendants Dicot and Zelman)**

57. SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58. Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59. Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60. In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 28,027,173, or at least $4,241,000 (US), and thereby suffered damages of that amount, plus interest.

61. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

**(Aiding and Abetting Fraud – Against All Defendants)**

62. SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63. As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

13

64. As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65. The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66. The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67. As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69. SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70. This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71. SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72. SKAT's mistaken belief was material to its decision to pay the claims.

73. SKAT suffered a loss as a result of its mistaken payments.

74. The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.      SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.      This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.      By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.      SKAT suffered a loss because of the Defendants' unjust enrichment.

79.      The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.      SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.      As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.      It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Dicot and Zelman)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Dicot to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 28,027,173, or at least $4,241,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.    For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

      had and received, the damages sustained or the amounts by which the Defendants

      were paid by mistake or unjustly enriched, or by which the Defendants received

      money to which they were not entitled, plus pre-judgment interest, fees, costs and

      expenses.

3.    For Counts I and II, punitive damages.

4.    The costs of this action.

5.    All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

                                        Respectfully submitted,


                                        HUGHES HUBBARD & REED LLP


                                         s/ Sarah. L. Cave
                                        William R. Maguire
                                        Marc A. Weinstein
                                        Sarah L. Cave
                                        John T. McGoey
                                        One Battery Park Plaza
                                        New York, New York 10004-1482
                                        (212) 837-6000 (t)
                                        (212) 422-4726 (f)
                                        Bill.maguire@hugheshubbard.com
                                        Marc.weinstein@hugheshubbard.com
                                        Sarah.cave@hugheshubbard.com
                                        John.mcgoey@hugheshubbard.com

                                        Counsel for Plaintiff Skatteforvaltningen
                                        (Customs and Tax Administration of the
                                        Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| FAIRLIE INVESTMENTS LLC ROTH 401(K) PLAN, JOSEPH HERMAN, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Fairlie Investments LLC Roth 401(K) Plan ("**Fairlie Investments**"), Joseph Herman ("**Herman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Fairlie Investments, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.    As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.    On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.    The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

    a.    The Authorized Representatives of the claimants, such as Defendant Herman, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 29,051,405, or at least $4,395,000 (US)[2], plus interest.

## II.      JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III.    **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Fairlie Investments is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Fairlie Investments is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Fairlie Investments purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Herman is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Herman was the sole participant in and served as the Authorized Representative for Defendant Fairlie Investments.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, USA, the same address listed by Defendant Fairlie Investments in its fraudulent refund claims to SKAT.

5

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.   Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.   Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.   Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.   A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.   SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.   It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

**B.     The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 55 below.

**1.     The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

   a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

   b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

      i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

      ii.     the amount of the tax refund claim;

      iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.    the bank account to which SKAT should pay the claim;

c.    a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.    a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.    in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.    The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.    It was SKAT's practice to pay claims that included the required supporting documentation.

32.    SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.    The Role of the Claimants

33.    Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.    Each of the claimants, including Defendant Fairlie Investments, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.    As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims.  Defendant Fairlie Investments represented that Defendant Herman was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Fairlie Investment's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Fairlie Investments represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Fairlie Investments made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 29,051,405, or at least $4,395,000 (US).  These refund claims were submitted to SKAT on the following dates: April 16, 2015; April 21, 2015; April 23, 2015; April 27, 2015; and May 14, 2015.

38.     In fact, Defendant Fairlie Investments did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Fairlie Investments on the following dates: May 8, 2015; May 19, 2015; June 24, 2015; and July 13, 2015.

40.     On information and belief, Defendant Herman caused Defendant Fairlie Investments' fraudulent claims to be submitted to SKAT.  Defendant Herman exerted control over Defendant Fairlie Investments as the plan's sole participant, and used this control to commit the fraud on SKAT.  Defendant Herman was the sole participant in three different pension plans that submitted fraudulent refund claims to SKAT.

### 3. The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     At the direction of, and on behalf of, Defendant Fairlie Investments, Defendant Herman caused the execution of a "Power of Attorney" dated December 23, 2014, that granted to Payment Agent Goal authority to be the "attorney of [Fairlie Investments] and in [Fairlie Investments'] name and otherwise on [Fairlie Investments'] behalf and as the [Fairlie Investments'] act and deed to sign, seal, execute, deliver, perfect, and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Fairlie Investments] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Fairlie Investments], or through Goal on behalf of [Fairlie Investments]."

43.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Herman and be subject to his direction and control with respect to Defendant Fairlie Investments' claims to SKAT.

44.     Defendant Ben-Jacob signed the Power of Attorney document as Defendant Herman's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Fairlie Investments to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Fairlie Investments' address on the claims listed in paragraph 37.

45.     Defendant Ben-Jacob signed Power Attorney of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

46.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Herman with regard to Defendant Fairlie Investments' fraudulent claims to SKAT

47.     In addition to Defendant Fairlie Investments, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

## 4.     The Role of the Payment Agents

48.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

49.     By means of the Power of Attorney described in paragraphs 41 through 44 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

50.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

51.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

      b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

      c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

      d.      requested that SKAT pay the claim to its bank account.

52.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.**      **The Role of the Broker-Custodians**

53.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

54.      By way of example, with respect to Defendant Fairlie Investments, one example of a "Dividend Credit Advice":

      a.      is made out by West Point Derivatives Ltd;

      b.      is dated May 11, 2015;

      c.      purports to certify Defendant Fairlie Investments' ownership of 292,104 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.      states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

55.    Defendant Fairlie Investments never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

**(Fraud – Against Defendants Fairlie Investments and Herman)**

56.    SKAT repeats and realleges paragraphs 1 through 55 above as if fully set forth herein.

57.    Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37 and 53 through 55 to support claims for withholding tax refund payments.

58.    Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

59.    In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 29,051,405, or at least $4,395,000 (US), and thereby suffered damages of that amount, plus interest.

60.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

61.     SKAT repeats and realleges paragraphs 1 through 60 above as if fully set forth herein.

62.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

63.     As alleged in paragraphs 26 through 55 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

64.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

65.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 55 above.

66.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

67.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

68.     SKAT repeats and realleges paragraphs 1 through 67 above as if fully set forth herein.

69.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

70.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

71.     SKAT's mistaken belief was material to its decision to pay the claims.

72.     SKAT suffered a loss as a result of its mistaken payments.

73.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

74.     SKAT repeats and realleges paragraphs 1 through 73 above as if fully set forth herein.

75.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

76.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

77.     SKAT suffered a loss because of the Defendants' unjust enrichment.

78.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

79.     SKAT repeats and realleges paragraphs 1 through 78 above as if fully set forth herein.

80.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

81.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Fairlie Investments and Herman)

82.     SKAT repeats and realleges paragraphs 1 through 81 above as if fully set forth herein.

83.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

84.     Defendants made material misstatements described in paragraphs 29-30, 37 and 53 through 55 above in connection with every withholding tax refund claim submitted on behalf of Defendant Fairlie Investments to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

85.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

86.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 29,051,405, or at least $4,395,000 (US), plus interest.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| FIRST ASCENT WORLDWIDE LLC ROTH 401(K) PLAN, PERRY LERNER, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants First Ascent Worldwide LLC Roth 401(K) Plan ("**First Ascent**"), Perry Lerner ("**Lerner**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.   **INTRODUCTION**

1.   Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.   This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.   The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant First Ascent, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

      a.      The Authorized Representatives of the claimants, such as Defendant Lerner, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 26,816,385, or at least $4,057,000 (US)[2], plus interest.

## II.      JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant First Ascent is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant First Ascent is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant First Ascent purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Lerner, on information and belief, is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Lerner was the sole participant in and served as the Authorized Representative for Defendant First Ascent.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant First Ascent in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.      the bank account to which SKAT should pay the claim;

        c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.    The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant First Ascent, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant First Ascent represented that Defendant Lerner was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant First Ascent's claims.

36.    As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant First Ascent represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37.    Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant First Ascent made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 26,816,385, or at least $4,057,000 (US). These refund claims were submitted to SKAT on the following dates: October 28, 2014; April 13, 2015; April 30, 2015; May 15, 2015.

38.    In fact, Defendant First Ascent did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.    Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant First Ascent on the following dates: November 10, 2014; April 24, 2015; May 27, 2015; and July 6, 2015.

40.    On information and belief, Defendant Lerner caused Defendant First Ascent's fraudulent claims to be submitted to SKAT. Defendant Lerner exerted control over Defendant First Ascent as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Lerner was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

41.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.    At the direction of, and on behalf of, Defendant First Ascent, Defendant Lerner caused the execution of a "Limited Power of Attorney" dated August 7, 2014, that granted to Payment Agent Syntax authority to be Defendant First Ascent's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."  Defendant Lerner described himself as the "Authorized Representative" of Defendant First Ascent.

43.    As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Lerner and be subject to his direction and control with respect to Defendant First Ascent's claims to SKAT.

44.    In addition to Defendant First Ascent, Defendant Lerner served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.    Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Lerner's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant First Ascent to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant First Ascent's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Lerner with regard to Defendant First Ascent's fraudulent claims to SKAT.

48.     In addition to Defendant First Ascent, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.      The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

      c.        enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

      d.        requested that SKAT pay the claim to its bank account.

53.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

54.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.      By way of example, with respect to Defendant First Ascent, one example of a "Credit Advice":

      a.        is made out by Telesto Markets LLP;

      b.        is dated May 11, 2015;

      c.        purports to certify Defendant First Ascent's ownership of 290,706 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

      d.        states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56. Defendant First Ascent never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants First Ascent and Lerner)

57. SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58. Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59. Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60. In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 26,816,385, or at least $4,057,000 (US), and thereby suffered damages of that amount, plus interest.

61. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62. SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63. As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

Case 1:18-cv-04792 Document 87-1 Filed 02/26/19 Page 146 of 109

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

<u>**COUNT IV**</u>

**(Unjust Enrichment – Against All Defendants)**

75.　　SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.　　This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.　　By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.　　SKAT suffered a loss because of the Defendants' unjust enrichment.

79.　　The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

<u>**COUNT V**</u>

**(Money Had & Received – Against All Defendants)**

80.　　SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.　　As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.　　It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants First Ascent and Lerner)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant First Ascent to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 26,816,385, or at least $4,057,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

had and received, the damages sustained or the amounts by which the Defendants

were paid by mistake or unjustly enriched, or by which the Defendants received

money to which they were not entitled, plus pre-judgment interest, fees, costs and

expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| BATTU HOLDINGS LLC ROTH 401K PLAN, DAVID ZELMAN, and MICHAEL BEN-JACOB, | COMPLAINT |
| | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Battu Holdings LLC Roth 401K Plan ("**Battu Holdings**"), David Zelman ("**Zelman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.    The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.    The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Battu Holdings, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.    On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.    As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.    On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.    The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

   a.    The Authorized Representatives of the claimants, such as Defendant Ben-Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

3

      b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

      c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 69,306,603, or at least $10,487,000 (US)[2], plus interest.

## II.    <u>JURISDICTION & VENUE</u>

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Battu Holdings is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, New York 10022, USA.  On information and belief, each participant, or member, of Defendant Battu Holdings is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Battu Holdings purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Zelman is a citizen of the State of Texas.  Defendant Zelman was the sole participant in Defendant Battu Holdings.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Ben-Jacob served as the Authorized Representative for Defendant Battu Holdings.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Battu Holdings in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.      the bank account to which SKAT should pay the claim;

        c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

        **2.**       **The Role of the Claimants**

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Battu Holdings, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Battu Holdings represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Battu Holdings' claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Battu Holdings represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Battu Holdings made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 69,306,603, or at least $10,487,000 (US). These refund claims were submitted to SKAT on the following dates: November 13, 2014; Mar. 27, 2015; Mar. 31, 2015; Apr. 17, 2015; Apr. 24, 2015; May 1, 2015; and May 22, 2015.

38.     In fact, Defendant Battu Holdings did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Battu Holdings on the following dates: Nov. 26, 2014; Apr. 29, 2015; May 19, 2015; and July 6, 2015.

40.     On information and belief, Defendant Zelman caused Defendant Battu Holdings' fraudulent refund claims to be submitted to SKAT. Defendant Zelman exerted control over Defendant Battu Holdings as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Zelman was the sole participant in five different plans that submitted fraudulent refund claims to SKAT.

9

41.     Defendant Zelman also participated in the fraudulent scheme by serving as the Authorized Representative for at least three different claimants pretending to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

### 3.     The Role of the Claimants' Authorized Representatives

42.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.     Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Battu Holdings a "Special Power of Attorney" dated August 22, 2014, that granted to Payment Agent Acupay authority "to pursue and file for reductions in rates of tax withholding in [Battu Holding's] name for which [Battu Holdings is] eligible, to oversee this process, and to collect refunds of excess withholding tat to which [Battu Holdings is] entitled on [Battu Holding's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Battu Holdings.

44.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Battu Holdings' claims to SKAT.

45.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Battu Holdings.  Six of these claimants, including Defendant Battu Holdings, listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York,

NY 10022 or 250 West 55th Street, New York, NY 10019 in their fraudulent refund claims to SKAT.

46.     In addition to Defendant Battu Holdings, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.      The Role of the Payment Agents

47.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.     By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

50.     In connection with each Claim Form, the Payment Agent:

        a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

        b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

        c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

        d.      requested that SKAT pay the claim to its bank account.

51.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and

belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

52.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.      By way of example, with respect to Defendant Battu Holdings, one example of an "income advice":

         a.      is made out by Old Park Lane Capital PLC;

         b.      is dated August 13, 2014;

         c.      purports to certify Defendant Battu Holdings' ownership of 3,081,898 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

         d.      states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.      Defendant Battu Holdings never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

# CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37 and 52 through 54 to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 69,306,603, or at least $10,487,000 (US), and thereby suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

67.     SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.     SKAT's mistaken belief was material to its decision to pay the claims.

71.     SKAT suffered a loss as a result of its mistaken payments.

72.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.     SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.     SKAT suffered a loss because of the Defendants' unjust enrichment.

77.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.     SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

81.     SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.     Defendants made material misstatements described in paragraphs 29-30, 37 and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Battu Holdings to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 69,306,603, or at least $10,487,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.    For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

      had and received, the damages sustained or the amounts by which the Defendants

      were paid by mistake or unjustly enriched, or by which the Defendants received

      money to which they were not entitled, plus pre-judgment interest, fees, costs and

      expenses.

3.    For Counts I and II, punitive damages.

4.    The costs of this action.

5.    All other and further relief that is just and proper.

### JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

                              Respectfully submitted,


                              HUGHES HUBBARD & REED LLP


                               s/ Sarah. L. Cave
                              William R. Maguire
                              Marc A. Weinstein
                              Sarah L. Cave
                              John T. McGoey
                              One Battery Park Plaza
                              New York, New York 10004-1482
                              (212) 837-6000 (t)
                              (212) 422-4726 (f)
                              Bill.maguire@hugheshubbard.com
                              Marc.weinstein@hugheshubbard.com
                              Sarah.cave@hugheshubbard.com
                              John.mcgoey@hugheshubbard.com

                              Counsel for Plaintiff Skatteforvaltningen
                              (Customs and Tax Administration of the
                              Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| CANTATA INDUSTRIES LLC ROTH 401(K) PLAN, DAVID ZELMAN, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Cantata Industries LLC Roth 401(K) Plan ("**Cantata**"), David Zelman ("**Zelman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Cantata, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7. As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8. On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9. The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

      a. The Authorized Representatives of the claimants, such as Defendant Zelman, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 48,613,209, or at least $7,356,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III.   **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Cantata is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Cantata is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Cantata purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Zelman is a citizen of the State of Texas.  At all times material to the allegations in this Complaint, Defendant Zelman was the sole participant in and served as the Authorized Representative for Defendant Cantata.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Cantata in its fraudulent refund claims to SKAT.

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.    The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

    iv. the bank account to which SKAT should pay the claim;

   c. a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

   d. a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

   e. in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30. The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31. It was SKAT's practice to pay claims that included the required supporting documentation.

32. SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

    **2.**  **The Role of the Claimants**

33. Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34. Each of the claimants, including Defendant Cantata, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35. As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Cantata represented that Defendant Zelman was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Cantata's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Cantata represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Cantata made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 48,613,209, or at least $7,356,000 (US). These refund claims were submitted to SKAT on the following dates: December 15, 2014; March 13, 2015; March 24, 2015; April 14, 2015; April 16, 2015; April 21, 2015; April 23, 2015; April 27, 2015; and May 14, 2015.

38.     In fact, Defendant Cantata did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Cantata on the following dates: January 7, 2015; April 24, 2015; April 29, 2015; May 8, 2015; May 19, 2015; June 24, 2015; and July 1, 2015.

40.     On information and belief, Defendant Zelman caused Defendant Cantata's fraudulent claims to be submitted to SKAT. Defendant Zelman exerted control over Defendant Cantata as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Zelman was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

Case 1:18-md-02865-LAK   Document 97-1   Filed 02/26/19   Page 132 of 747

### 3.   The Role of the Claimants' Authorized Representatives

41.   Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."   By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.   At the direction of, and on behalf of, Defendant Cantata, Defendant Zelman caused the execution of a "Power of Attorney" dated August 22, 2014, that granted to Payment Agent Goal authority "to be the attorney of [Cantata] and in [Cantata's] name and otherwise on [Cantata's] behalf and as [Cantata's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Cantata] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Cantata] or through [Goal] on behalf of [Cantata]."

43.   As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Zelman and be subject to his direction and control with respect to Defendant Cantata's claims to SKAT.

44.   In addition to Defendant Cantata, Defendant Zelman served as the Authorized Representative for at least two other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.   Defendant Ben-Jacob signed the Power of Attorney document as Defendant Zelman's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant

Ben-Jacob also allowed Defendant Cantata to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Cantata's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing power of attorney documents on behalf of the authorized representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Zelman with respect to Defendant Cantata's fraudulent claims to SKAT.

48.     In addition to Defendant Cantata, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

      b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

      c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

      d.      requested that SKAT pay the claim to its bank account.

53.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants. On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.      The Role of the Broker-Custodians**

54.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.      By way of example, with respect to Defendant Cantata, one example of an "Income Advice":

      a.      is made out by Old Park Lane Capital PLC;

      b.      is dated May 11, 2015;

      c.      purports to certify Defendant Cantata's ownership of 879,435 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

      d.      states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Cantata never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

<div align="center">

**CAUSES OF ACTION**

**COUNT I**

**(Fraud – Against Defendants Cantata and Zelman)**

</div>

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 48,613,209, or at least $7,356,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

Case 1:19-cv-01798   Document 1   Filed 02/26/19   Page 14 of 136

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

<div align="center">

**COUNT IV**

**(Unjust Enrichment – Against All Defendants)**

</div>

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

<div align="center">

**COUNT V**

**(Money Had & Received – Against All Defendants)**

</div>

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

<div align="center">

15

</div>

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

<u>**COUNT VI**</u>

**(Negligent Misrepresentation – Against Defendants Cantata and Zelman)**

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Cantata to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 48,613,209, or at least $7,356,000 (US), plus interest.

<u>**REQUEST FOR RELIEF**</u>

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| CRUCIBLE VENTURES LLC ROTH 401(K) PLAN, RONALD ALTBACH, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Crucible Ventures LLC Roth 401(K) Plan ("**Crucible**"), Ronald Altbach ("**Altbach**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.     **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Crucible, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.    As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.    On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.    The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

a.    The Authorized Representatives of the claimants, such as Defendant Altbach, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

     b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and their authorized representatives; and

     c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 47,579,533, or at least $7,199,000 (US)[2], plus interest.

## II.    <u>JURISDICTION & VENUE</u>

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III.    **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Crucible is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Crucible is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Crucible purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Altbach is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Altbach was the sole participant in and served as the Authorized Representative for Defendant Crucible.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Crucible in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.     **The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.     **The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

           iv.      the bank account to which SKAT should pay the claim;

        c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Crucible, made withholding tax refund claims through their Payment Agents, as described in paragraph 29 above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Crucible represented that Defendant Altbach was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Crucible's claims.

36. As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Crucible represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37. Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Crucible made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 47,579,533, or at least $7,199,000 (US). These refund claims were submitted to SKAT on the following dates: November 27, 2014; March 23, 2015; March 24, 2015; April 14, 2015; April 16, 2015; April 21, 2015; April 23, 2015; April 27, 2015; and May 14, 2015.

38. In fact, Defendant Crucible did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39. Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Crucible on the following dates: December 19, 2014; April 29, 2015; May 8, 2015; May 19, 2015; June 24, 2015; and July 1, 2015.

40. On information and belief, Defendant Altbach caused Defendant Crucible's fraudulent claims to be submitted to SKAT. Defendant Altbach exerted control over Defendant Crucible as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Altbach was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3. The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     At the direction of, and on behalf of, Defendant Crucible, Defendant Altbach caused the execution of a "Power of Attorney" dated November 7, 2014, that granted to Payment Agent Goal authority "to be the attorney of [Crucible] and in [Crucible's] name and otherwise on [Crucible's] behalf and as [Crucible's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Crucible] from time to time, including   the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Crucible] or through [Goal] on behalf of [Crucible]."

43.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Altbach and be subject to his direction and control with respect to Defendant Crucible's claims to SKAT.

44.     In addition to Defendant Crucible, Defendant Altbach served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.     Defendant Ben-Jacob signed the Power of Attorney document as Defendant Altbach's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant

Ben-Jacob also allowed Defendant Crucible to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Crucible's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Altbach with regard to Defendant Crucible's fraudulent claims to SKAT.

48.     In addition to Defendant Crucible, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

#### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41 through 45 above, each claimant and Authorized Representative authorized its respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

          a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.      requested that SKAT pay the claim to its bank account.

53.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.      The Role of the Broker-Custodians**

54.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.      By way of example, with respect to Defendant Crucible, one example of an "Income Advice":

a.      is made out by Old Park Lane Capital PLC;

b.      is dated May 11, 2015;

c.      purports to certify Defendant Crucible's ownership of 871,575 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

     d.     states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Crucible never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants Crucible and Altbach)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 47,579,533, or at least $7,199,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

<div align="center">COUNT IV</div>

<div align="center">(Unjust Enrichment – Against All Defendants)</div>

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

<div align="center">COUNT V</div>

<div align="center">(Money Had & Received – Against All Defendants)</div>

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## <u>COUNT VI</u>

### **(Negligent Misrepresentation – Against Defendants Crucible and Altbach)**

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Crucible to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 47,579,533, or at least $7,199,000 (US), plus interest.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| MONOMER INDUSTRIES LLC ROTH 401(K) PLAN, ROBIN JONES, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Monomer Industries LLC Roth 401(K) Plan ("**Monomer**"), Robin Jones ("**Jones**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Monomer, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Jones, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 49,738,020, or at least $7,526,000 (US)[2], plus interest.

## II.     JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Monomer is a pension plan which, in its requests to SKAT for tax refunds, listed its address as both 425 Park Avenue, New York, NY 10022, USA, and 250 West 55th Street, New York, NY 10019, USA.  On information and belief, each participant, or member, of Defendant Monomer is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Monomer purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Jones is a citizen of the State of Georgia.  At all times material to the allegations in this Complaint, Defendant Jones was the sole participant in and served as the Authorized Representative for Defendant Monomer.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, and 250 West 55th Street, New York, NY 10019, the same addresses listed by Defendant Monomer in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.   Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.   Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.   Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.   A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.   SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.   It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.     the bank account to which SKAT should pay the claim;

        c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.    The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.    It was SKAT's practice to pay claims that included the required supporting documentation.

32.    SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.    The Role of the Claimants

33.    Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.    Each of the claimants, including Defendant Monomer, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.    As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Monomer represented that Defendant Jones was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Monomer's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Monomer represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Monomer made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 49,738,020, or at least $7,526,000 (US). These refund claims were submitted to SKAT on the following dates: April 14, 2015; April 16, 2015; April 27, 2015; and May 14, 2015.

38.     In fact, Defendant Monomer did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Monomer on the following dates: May 8, 2015; June 24, 2015; and July 1, 2015.

40.     On information and belief, Defendant Jones caused Defendant Monomer's fraudulent claims to be submitted to SKAT. Defendant Jones exerted control over Defendant Monomer as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Jones was the sole participant in three different pension plans that submitted fraudulent refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of

Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     At the direction of, and on behalf of, Defendant Monomer, Defendant Jones caused the execution of a "Power of Attorney" dated December 23, 2014, that granted to Payment Agent Goal authority "to be the attorney of [Monomer] and in [Monomer's] name and otherwise on [Monomer's] behalf and as [Monomer's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Monomer] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Monomer] or through [Goal] on behalf of [Monomer]."

43.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Jones and be subject to her direction and control with respect to Defendant Monomer's claims to SKAT.

44.     In addition to serving as the Authorized Representative of Defendant Monomer, Defendant Jones served as Authorized Representative for at least two other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 250 West 55th Street, New York, NY 10019.

45.     Defendant Ben-Jacob signed the Power of Attorney document as Defendant Jones' "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Monomer to use his office addresses of 425 Park Avenue, New York, NY

10022, and 250 West 55th Street, New York, NY 10019 as Defendant Monomer's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Jones with regard to Defendant Monomer's fraudulent claims to SKAT.

48.     In addition to Defendant Monomer, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

    a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.      requested that SKAT pay the claim to its bank account.

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.      The Role of the Broker-Custodians**

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.     By way of example, with respect to Defendant Monomer, one example of an "Income Advice":

a.      is made out by Old Park Lane Capital PLC;

b.      is dated May 11, 2015;

c.      purports to certify Defendant Monomer's ownership of 879,537 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

12

    d.     states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.    Defendant Monomer never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

<div align="center">

**CAUSES OF ACTION**

**COUNT I**

**(Fraud – Against Defendants Monomer and Jones)**

</div>

57.    SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.    Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.    Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.    In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 49,738,020, or at least $7,526,000 (US), and thereby suffered damages of that amount, plus interest.

61.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<div align="center">13</div>

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

14

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

<div align="center">

**COUNT IV**

**(Unjust Enrichment – Against All Defendants)**

</div>

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

<div align="center">

**COUNT V**

**(Money Had & Received – Against All Defendants)**

</div>

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

<div align="center">15</div>

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

<div align="center">

**COUNT VI**

**(Negligent Misrepresentation – Against Defendants Monomer and Jones)**

</div>

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Monomer to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 49,738,020, or at least $7,526,000 (US), plus interest.

<div align="center">

**REQUEST FOR RELIEF**

</div>

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ William R. Maguire
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKATTEFORVALTNINGEN,<br><br>                          Plaintiff,<br><br>         vs.<br><br>LIMELIGHT GLOBAL PRODUCTIONS LLC ROTH 401(K) PLAN, RONALD ALTBACH, and MICHAEL BEN-JACOB,<br><br>                        Defendants. | Civil Action No. _____<br><br>Honorable _____<br><br>February 26, 2019<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Limelight Global Productions LLC Roth 401(K) Plan ("**Limelight**"), Ronald Altbach ("**Altbach**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.     <u>**INTRODUCTION**</u>

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.    The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.    The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Limelight, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.    On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Altbach, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 27,901,401, or at least $4,221,000 (US)[2], plus interest.

## II.     JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a
     conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.  **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Limelight is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Limelight is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Limelight purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Altbach is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Altbach was the sole participant in and served as the Authorized Representative for Defendant Limelight.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Limelight in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

<div style="padding-left:2em">

iv.      the bank account to which SKAT should pay the claim;

c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

</div>

30.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.      It was SKAT's practice to pay claims that included the required supporting documentation.

32.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.      The Role of the Claimants

33.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.      Each of the claimants, including Defendant Limelight, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.      As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Limelight represented that Defendant Altbach was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Limelight's claims.

36. As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Limelight represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37. Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Limelight made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 27,901,401, or at least $4,221,000 (US). These refund claims were submitted to SKAT on the following dates: October 28, 2014; April 13, 2015; April 30, 2015; and May 15, 2015.

38. In fact, Defendant Limelight did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39. Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Limelight on the following dates: November 10, 2014; April 24, 2015; May 27, 2015; and July 6, 2015.

40. On information and belief, Defendant Altbach caused Defendant Limelight's fraudulent claims to be submitted to SKAT. Defendant Altbach exerted control over Defendant Limelight as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Altbach was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

41.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.    At the direction of, and on behalf of, Defendant Limelight, Defendant Altbach caused the execution of a "Limited Power of Attorney" dated August 7, 2014, that granted to Payment Agent Syntax authority to be Defendant Limelight's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."    Defendant Altbach described himself as the "Authorized Representative" of Defendant Limelight.

43.    As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Altbach and be subject to his direction and control with respect to Defendant Limelight's claims to SKAT.

44.    In addition to Defendant Limelight, Defendant Altbach served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.    Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Altbach's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Limelight to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Limelight's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Altbach with regard to Defendant Limelight's fraudulent claims to SKAT.

48.     In addition to Defendant Limelight, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

    a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

    b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.       enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.       requested that SKAT pay the claim to its bank account.

53.       As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.       The Role of the Broker-Custodians

54.       Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.       By way of example, with respect to Defendant Limelight, one example of a "Credit Advice":

a.       is made out by Telesto Markets LLP;

b.       is dated May 11, 2015;

c.       purports to certify Defendant Limelight's ownership of 290,456 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.       states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Limelight never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against Defendants Limelight and Altbach)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 27,901,401, or at least $4,221,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT III**</u>

**(Payment By Mistake – Against All Defendants)**

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

14

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.    SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.    This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.    By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.    SKAT suffered a loss because of the Defendants' unjust enrichment.

79.    The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.    SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.    As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.    It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Limelight and Altbach)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Limelight to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 27,901,401, or at least $4,221,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| LOGGERHEAD SERVICES LLC ROTH 401(K) PLAN, PERRY LERNER, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Loggerhead Services LLC Roth 401(K) Plan ("**Loggerhead**"), Perry Lerner ("**Lerner**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.     **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Loggerhead, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Ben-Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

3

b.    The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and their authorized representatives; and

c.    The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.    The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.    SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.    As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.    As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 68,808,367, or at least $10,411,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.    Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.    Defendant Loggerhead is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Loggerhead is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Loggerhead purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.    Defendant Lerner, on information and belief, is a citizen of a State of the United States.  Defendant Lerner was the sole participant in Defendant Loggerhead.

19.    Defendant Ben-Jacob is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Ben-Jacob served as the Authorized Representative for Defendant Loggerhead.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Loggerhead in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.    The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.     the bank account to which SKAT should pay the claim;

        c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2. The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Loggerhead, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Loggerhead represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Loggerhead's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Loggerhead represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Loggerhead made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 68,808,367, or at least $10,411,000 (US). These refund claims were submitted to SKAT on the following dates: November 13, 2014; March 27, 2015; March 31, 2015; April 17, 2015; April 24, 2015; May 1, 2015; and May 22, 2015.

38.     In fact, Defendant Loggerhead did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Loggerhead on the following dates: November 26, 2014; April 29, 2015; May 19, 2015; and July 6, 2015.

40.     On information and belief, Defendant Lerner caused Defendant Loggerhead's fraudulent refund claims to be submitted to SKAT. Defendant Lerner exerted control over Defendant Loggerhead as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Lerner was the sole participant in at least five different plans that submitted fraudulent refund claims to SKAT.

41.     Defendant Lerner also participated in the fraudulent scheme by serving as the Authorized Representative for at least four different claimants pretending to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

### 3.    The Role of the Claimants' Authorized Representatives

42.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.     Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Loggerhead a "Special Power of Attorney" dated August 22, 2014, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Loggerhead's] name for which [Loggerhead is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Loggerhead is] entitled on [Loggerhead's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Loggerhead.

44.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Loggerhead's claims to SKAT.

45.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Loggerhead. Six of these claimants, including Defendant Loggerhead, listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in their fraudulent refund claims to SKAT.

46.     In addition to Defendant Loggerhead, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

47.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.     By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

50.     In connection with each Claim Form, the Payment Agent:

        a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

        b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

        c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

        d.     requested that SKAT pay the claim to its bank account.

51.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other

participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

52.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.    By way of example, with respect to Defendant Loggerhead, one example of a "Dividend Credit Advice":

a.    is made out by Solo Capital Partners LLP;

b.    is dated May 11, 2015;

c.    purports to certify Defendant Loggerhead's ownership of 1,452,946 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.    states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.    Defendant Loggerhead never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 52 through 54 to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 68,808,367, or at least $10,411,000 (US), and thereby suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT III**</u>

**(Payment By Mistake – Against All Defendants)**

67.     SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.     SKAT's mistaken belief was material to its decision to pay the claims.

71.     SKAT suffered a loss as a result of its mistaken payments.

72.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.    SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.    This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.    By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.    SKAT suffered a loss because of the Defendants' unjust enrichment.

77.    The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.    SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.    As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.    It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

81.     SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.     Defendants made material misstatements described in paragraphs 29-30, 37, and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Loggerhead to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 68,808,367, or at least $10,411,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.


**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

                            Respectfully submitted,


                            HUGHES HUBBARD & REED LLP


                             s/ William R. Maguire
                            William R. Maguire
                            Marc A. Weinstein
                            Sarah L. Cave
                            John T. McGoey
                            One Battery Park Plaza
                            New York, New York 10004-1482
                            (212) 837-6000 (t)
                            (212) 422-4726 (f)
                            Bill.maguire@hugheshubbard.com
                            Marc.weinstein@hugheshubbard.com
                            Sarah.cave@hugheshubbard.com
                            John.mcgoey@hugheshubbard.com

                            Counsel for Plaintiff Skatteforvaltningen
                            (Customs and Tax Administration of the
                            Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| PAB FACILITIES GLOBAL LLC ROTH 401(K) PLAN, PERRY LERNER, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

---

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants PAB Facilities Global LLC Roth 401(K) Plan ("**PAB Facilities**"), Perry Lerner ("**Lerner**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.   **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant PAB Facilities, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

        a.      The Authorized Representatives of the claimants, such as Defendant Lerner, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.　　The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.　　The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.　　The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.　　SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.　　As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.　　As a result of the fraudulent claim by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 1,486,300, or at least $224,000 (US)[2], plus interest.

## II.　JURISDICTION & VENUE

14.　　Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.　This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III.     **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant PAB Facilities is a pension plan which, in its request to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant PAB Facilities is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant PAB Facilities purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Lerner, on information and belief, is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Lerner was the sole participant in and served as the Authorized Representative for Defendant PAB Facilities.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant PAB Facilities in is fraudulent refund claim to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

6

B.     **The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.     **The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.     the bank account to which SKAT should pay the claim;

        c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant PAB Facilities, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant PAB Facilities represented that Defendant Lerner was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant PAB Facilities' claim.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant PAB Facilities represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claim.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant PAB Facilities made one (1) withholding tax refund claim, and represented that it was entitled to a refund totaling DKK 1,486,300, or at least $224,000 (US). This refund claim was submitted to SKAT on November 27, 2014.

38.     In fact, Defendant PAB Facilities did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claim listed in paragraph 37, SKAT made payment to Defendant PAB Facilities on December 19, 2014.

40.     On information and belief, Defendant Lerner caused Defendant PAB Facilities' fraudulent claim to be submitted to SKAT. Defendant Lerner exerted control over Defendant PAB Facilities as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Lerner was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of

Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     At the direction of, and on behalf of, Defendant PAB Facilities, Defendant Lerner caused the execution of a "Power of Attorney" dated August 22, 2014, that granted to Payment Agent Goal authority "to be the attorney of [PAB Facilities] and in [PAB Facilities] name and otherwise on [PAB Facilities] behalf and as [PAB Facilities'] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [PAB Facilities] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [PAB Facilities] or through [Goal] on behalf of [PAB Facilities]."

43.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Lerner and be subject to his direction and control with respect to Defendant PAB Facilities' claim to SKAT.

44.     In addition to Defendant PAB Facilities, Defendant Lerner served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.     Defendant Ben-Jacob signed the Power of Attorney document as Defendant Lerner's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant PAB Facilities to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant PAB Facilities' address on the claim listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Lerner with regard to Defendant PAB Facilities' fraudulent claim to SKAT.

48.     In addition to Defendant PAB Facilities, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

      c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

      d.     requested that SKAT pay the claim to its bank account.

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.**      **The Role of the Broker-Custodians**

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.     By way of example, with respect to Defendant PAB Facilities, one example of an "Income Advice":

      a.     is made out by Old Park Lane Capital PLC;

      b.     is dated August 13, 2014;

      c.     purports to certify Defendant PAB Facilities' ownership of 3,669,877 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

      d.     states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant PAB Facilities never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants PAB Facilities and Lerner)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claim.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 1,486,300, or at least $224,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting a claim for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT III**</u>

**(Payment By Mistake – Against All Defendants)**

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.     This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted a valid claim with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claim.

73.     SKAT suffered a loss as a result of its mistaken payment.

74.     The Defendants are liable to account and pay to SKAT the payment that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from a withholding tax refund claim, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of the dividend withholding tax refund payment they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from a withholding tax refund to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of the withholding tax refund payment they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants PAB Facilities and Lerner)

83.    SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.    Defendants had a duty, as a result of their submission of a claim for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.    Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with the withholding tax refund claim submitted on behalf of Defendant PAB Facilities to SKAT.   Defendants knew, or should have known, that these statements were inaccurate.

86.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.     SKAT reasonably relied on the misstatements while reviewing Defendants' claim, and as a direct and proximate result incurred damages of DKK 1,486,300, or at least $224,000 (US), plus interest.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.   For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.   For Counts I and II, punitive damages.

4.   The costs of this action.

5.   All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ William R. Maguire
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| PLUMROSE INDUSTRIES LLC ROTH 401K PLAN, RONALD ALTBACH, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Plumrose Industries LLC Roth 401K Plan ("**Plumrose**"), Ronald Altbach ("**Altbach**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Plumrose, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.    As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.    On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.    The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

   a.    The Authorized Representatives of the claimants, such as Defendant Ben-Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.       The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and their authorized representatives; and

c.       The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.       The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.       SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.       As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.       As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 48,047,199, or at least $7,270,000 (US)[2], plus interest.

## II.       JURISDICTION & VENUE

14.       Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Plumrose is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Plumrose is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Plumrose purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Altbach is a citizen of the State of New York.  Defendant Altbach was the sole participant in Defendant Plumrose.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Ben-Jacob served as the Authorized Representative for Defendant Plumrose.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Plumrose in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B. **The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

1.     **The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.     the bank account to which SKAT should pay the claim;

        c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Plumrose, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Plumrose represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Plumrose's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Plumrose represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Plumrose made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 48,047,199, or at least $7,270,000 (US). These refund claims were submitted to SKAT on the following dates: November 13, 2014; March 27, 2015; March 31, 2015; April 17, 2015; May 1, 2015; and May 22, 2015.

38.     In fact, Defendant Plumrose did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Plumrose on the following dates: November 26, 2014; April 29, 2015; May 19, 2015; and July 6, 2015.

40.     On information and belief, Defendant Altbach caused Defendant Plumrose fraudulent refund claims to be submitted to SKAT. Defendant Altbach exerted control over Defendant Plumrose as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Altbach was the sole participant in at least five different plans that submitted fraudulent refund claims to SKAT.

41.     Defendant Altbach also participated in the fraudulent scheme by serving as the Authorized Representative for at least four different claimants pretending to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

### 3.     The Role of the Claimants' Authorized Representatives

42.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.     Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Plumrose a "Special Power of Attorney" dated August 22, 2014, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Plumrose's] name for which [Plumrose is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Plumrose is] entitled on [Plumrose's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Plumrose.

44.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Plumrose's claims to SKAT.

45.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Plumrose.  Six of these claimants, including Defendant Plumrose, listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in their fraudulent refund claims to SKAT.

46.     In addition to Defendant Plumrose, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

47.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.     By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

50.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

51.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other

participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

52.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.    By way of example, with respect to Defendant Plumrose, one example of an "Income Advice":

        a.    is made out by Old Park Lane Capital PLC;

        b.    is dated May 11, 2015;

        c.    purports to certify Defendant Plumrose's ownership of 875,990 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

        d.    states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.    Defendant Plumrose never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against All Defendants)

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 52 through 54 to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 48,047,199, or at least $7,270,000 (US), and thereby suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT III**</u>

**(Payment By Mistake – Against All Defendants)**

67.     SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.     SKAT's mistaken belief was material to its decision to pay the claims.

71.     SKAT suffered a loss as a result of its mistaken payments.

72.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.     SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.     SKAT suffered a loss because of the Defendants' unjust enrichment.

77.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.     SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

81.    SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.    Defendants made material misstatements described in paragraphs 29-30, 37, and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Plumrose to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 48,047,199, or at least $7,270,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.


**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

                        Respectfully submitted,


                        HUGHES HUBBARD & REED LLP


                         s/ William R. Maguire
                        William R. Maguire
                        Marc A. Weinstein
                        Sarah L. Cave
                        John T. McGoey
                        One Battery Park Plaza
                        New York, New York 10004-1482
                        (212) 837-6000 (t)
                        (212) 422-4726 (f)
                        Bill.maguire@hugheshubbard.com
                        Marc.weinstein@hugheshubbard.com
                        Sarah.cave@hugheshubbard.com
                        John.mcgoey@hugheshubbard.com

                        Counsel for Plaintiff Skatteforvaltningen
                        (Customs and Tax Administration of the
                        Kingdom of Denmark)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| PINAX HOLDINGS LLC ROTH 401(K) PLAN, ROBIN JONES, and MICHAEL BEN-JACOB, | COMPLAINT |
| | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Pinax Holdings LLC Roth 401(K) Plan ("**Pinax**"), Robin Jones ("**Jones**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Pinax, as well as entities in the United Kingdom, Canada, Malaysia,

and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently  discovered  that  the  claimants  had  submitted  requests  for  tax  refunds  by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Jones, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.       The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.       The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 29,131,518, or at least $4,408,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Pinax is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 250 West 55th Street, New York, NY 10019.  On information and belief, each participant, or member, of Defendant Pinax is a citizen of a state of the United States.  At all times material to the allegations in this Complaint, Defendant Pinax purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Jones is a citizen of the State of Georgia.  At all times material to the allegations in this Complaint, Defendant Jones was the sole participant in and served as the Authorized Representative for Defendant Pinax.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 250 West 55th Street, New York, NY 10019, the same address listed by Defendant Pinax in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

6

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

          iv.      the bank account to which SKAT should pay the claim;

        c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.      It was SKAT's practice to pay claims that included the required supporting documentation.

32.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.      The Role of the Claimants

33.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.      Each of the claimants, including Defendant Pinax, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.      As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Pinax represented that Defendant Jones was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Pinax's claims.

36.  As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Pinax represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37.  Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Pinax made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 29,131,518, or at least $4,408,000 (US). These refund claims were submitted to SKAT on the following dates: May 21, 2015 and June 10, 2015.

38.  In fact, Defendant Pinax did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.  Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Pinax on July 6, 2015.

40.  On information and belief, Defendant Jones caused Defendant Pinax's fraudulent claims to be submitted to SKAT. Defendant Jones exerted control over Defendant Pinax as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Jones was the sole participant in three different pension plans that submitted fraudulent refund claims to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

41.  Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of

Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42. At the direction of, and on behalf of, Defendant Pinax, Defendant Jones caused the execution of a "Limited Power of Attorney" document dated December 15, 2014, that granted to Payment Agent Syntax authority to be Defendant Pinax's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction." Defendant Jones described herself as the "Authorized Representative" of Defendant Pinax.

43. As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Jones and be subject to her direction and control with respect to Defendant Pinax's claims to SKAT.

44. In addition to Defendant Pinax, Defendant Jones served as the Authorized Representative for at least one other claimant, which, in its requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 250 West 55th Street, New York, NY 10019.

45. Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Jones' "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims. Defendant Ben-Jacob also allowed Defendant Pinax to use his office address of 250 West 55th Street, New York, NY 10019 as Defendant Pinax's address on the claims listed in paragraph 37.

46. Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Jones with regard to Defendant Pinax's fraudulent claims to SKAT.

48.     In addition to Defendant Pinax, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.     The Role of the Broker-Custodians

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.     By way of example, with respect to Defendant Pinax, one example of a "Credit Advice":

    a.      is made out by Telesto Markets LLP;

    b.      is dated May 11, 2015;

    c.      purports to certify Defendant Pinax's ownership of 292,709 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

    d.      states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Pinax never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against Defendants Pinax and Jones)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 29,131,518, or at least $4,408,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Pinax and Jones)

83.    SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.    Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Pinax to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.    SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 29,131,518, or at least $4,408,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

16

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

 s/ William R. Maguire
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| ROADCRAFT TECHNOLOGIES LLC ROTH 401(K) PLAN, RONALD ALTBACH, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Roadcraft Technologies LLC Roth 401(K) Plan ("**Roadcraft**"), Ronald Altbach ("**Altbach**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Roadcraft, as well as entities in the United Kingdom, Canada,

Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7. As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8. On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9. The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

a. The Authorized Representatives of the claimants, such as Defendant Altbach, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

       b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

       c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 67,971,029, or at least $10,285,000 (US)[2], plus interest.

## II.    <u>JURISDICTION & VENUE</u>

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   <u>PARTIES</u>

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes. SKAT is located at Østbanegade 123, 2200 København Ø, Denmark. During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Roadcraft is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA. On information and belief, each participant, or member, of Defendant Roadcraft is a citizen of a State of the United States. At all times material to the allegations in this Complaint, Defendant Roadcraft purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Altbach is a citizen of the State of New York. At all times material to the allegations in this Complaint, Defendant Altbach was the sole participant in and served as the Authorized Representative for Defendant Roadcraft.

19.     Defendant Ben-Jacob is a citizen of the State of New York. At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Roadcraft in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.     the bank account to which SKAT should pay the claim;

        c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Roadcraft, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Roadcraft represented that Defendant Altbach was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Roadcraft's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Roadcraft represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Roadcraft made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 67,971,029, or at least $10,285,000 (US). These refund claims were submitted to SKAT on the following dates: November 27, 2014; April 28, 2015; and May 15, 2015.

38.     In fact, Defendant Roadcraft did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Roadcraft on the following dates: December 19, 2014; June 24, 2015; and July 1, 2015.

40.     On information and belief, Defendant Altbach caused Defendant Roadcraft's fraudulent claims to be submitted to SKAT. Defendant Altbach exerted control over Defendant Roadcraft as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Altbach was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of

Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     At the direction of, and on behalf of, Defendant Roadcraft, Defendant Altbach caused the execution of a "Power of Attorney" dated August 22, 2014, that granted to Payment Agent Goal authority "to be the attorney of [Roadcraft] and in [Roadcraft's] name and otherwise on [Roadcraft's] behalf and as [Roadcraft's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Roadcraft] from time to time, including  the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Roadcraft] or through [Goal] on behalf of [Roadcraft]."

43.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Altbach and be subject to his direction and control with respect to Defendant Roadcraft's claims to SKAT.

44.     In addition to Defendant Roadcraft, Defendant Altbach served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.     Defendant Ben-Jacob signed the Power of Attorney document as Defendant Altbach's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Roadcraft to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Roadcraft's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Altbach with regard to Defendant Roadcraft's fraudulent claims to SKAT.

48.     In addition to Defendant Roadcraft, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

11

> c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

> d.      requested that SKAT pay the claim to its bank account.

53.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

54.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.      By way of example, with respect to Defendant Roadcraft, one example of a "Dividend Credit Advice":

> a.      is made out by Solo Capital Partners LLP;

> b.      is dated May 11, 2015;

> c.      purports to certify Defendant Roadcraft's ownership of 1,473,168 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

> d.      states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Roadcraft never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against Defendants Roadcraft and Altbach)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 67,971,029, or at least $10,285,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<div align="center">

**COUNT III**

**(Payment By Mistake – Against All Defendants)**

</div>

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Roadcraft and Altbach)

83.    SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.    Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Roadcraft to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.    SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 67,971,029, or at least $10,285,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

Case 1:18-cv-01812   Document 7-1   Filed 03/04/19   Page 17 of 18

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ William R. Maguire
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| STERNWAY LOGISTICS LLC ROTH 401(K) PLAN, ROBIN JONES, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Sternway Logistics LLC Roth 401(K) Plan ("**Sternway**"), Robin Jones ("**Jones**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Sternway, as well as entities in the United Kingdom, Canada,

Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently  discovered  that  the  claimants  had  submitted  requests  for  tax  refunds  by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

     a.     The Authorized Representatives of the claimants, such as Defendant Jones, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b. The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c. The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10. The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11. SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12. As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13. As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 28,790,461, or at least $4,356,000 (US)[2], plus interest.

## II.   JURISDICTION & VENUE

14. Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2. This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.    Defendant Sternway is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 250 West 55th Street, New York, NY 10019.  On information and belief, each participant, or member, of Defendant Sternway is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Sternway purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.    Defendant Jones is a citizen of the State of Georgia.  At all times material to the allegations in this Complaint, Defendant Jones was the sole participant in and served as the Authorized Representative for Defendant Sternway.

19.    Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 250 West 55th Street, New York, NY 10019, the same address listed by Defendant Sternway in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.      the bank account to which SKAT should pay the claim;

        c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Sternway, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Sternway represented that Defendant Jones was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Sternway's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Sternway represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Sternway made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 28,790,461, or at least $4,356,000 (US). These refund claims were submitted to SKAT on the following dates: April 13, 2015; May 21, 2015; and June 10, 2015.

38.     In fact, Defendant Sternway did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Sternway on the following dates: April 24, 2015; July 6, 2015; and July 10, 2015.

40.     On information and belief, Defendant Jones caused Defendant Sternway's fraudulent claims to be submitted to SKAT. Defendant Jones exerted control over Defendant Sternway as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Jones was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of

Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     At the direction of, and on behalf of, Defendant Sternway, Defendant Jones caused the execution of a "Limited Power of Attorney" document dated December 15, 2014, that granted to Payment Agent Syntax authority to be Defendant Sternway's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."  Defendant Jones described herself as the "Authorized Representative" of Defendant Sternway.

43.     As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Jones and be subject to her direction and control with respect to Defendant Sternway's claims to SKAT.

44.     In addition to Defendant Sternway, Defendant Jones served as the Authorized Representative for at least one other claimant, which, in its requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 250 West 55th Street, New York, NY 10019.

45.     Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Jones' "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Sternway to use his office address of 250 West 55th Street, New York, NY 10019 as Defendant Sternway's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Jones with regard to Defendant Sternway's fraudulent claims to SKAT.

48.     In addition to Defendant Sternway, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

**4.      The Role of the Payment Agents**

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.      requested that SKAT pay the claim to its bank account.

11

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.     By way of example, with respect to Defendant Sternway, one example of a "Dividend Credit Advice":

a.      is made out by West Point Derivatives Ltd;

b.      is dated May 11, 2015;

c.      purports to certify Defendant Sternway's ownership of 289,905 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.      states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Sternway never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

# CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants Sternway and Jones)

57.      SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.      Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.      Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.      In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 28,790,461, or at least $4,356,000 (US), and thereby suffered damages of that amount, plus interest.

61.      Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.      SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.      As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.      As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### <u>COUNT III</u>

### **(Payment By Mistake – Against All Defendants)**

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

**(Negligent Misrepresentation – Against Defendants Sternway and Jones)**

83.    SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.    Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Sternway to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.    SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 28,790,461, or at least $4,356,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money
        had and received, the damages sustained or the amounts by which the Defendants
        were paid by mistake or unjustly enriched, or by which the Defendants received
        money to which they were not entitled, plus pre-judgment interest, fees, costs and
        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ William R. Maguire
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN,<br><br>                             Plaintiff,<br><br>vs.<br><br>TRAILING EDGE PRODUCTIONS LLC<br>ROTH 401(K) PLAN, PERRY LERNER,<br>and MICHAEL BEN-JACOB,<br><br>                             Defendants. | Civil Action No. _____<br><br>Honorable _____<br><br>February 26, 2019<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Trailing Edge Productions LLC Roth 401(K) Plan ("**Trailing Edge**"), Perry Lerner ("**Lerner**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

**I.     INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4. The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5. The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Trailing Edge, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6. On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7. As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8. On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9. The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

    a. The Authorized Representatives of the claimants, such as Defendant Lerner, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 28,206,357, or at least $4,268,000 (US)[2], plus interest.

## II.      JURISDICTION & VENUE

14.       Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Trailing Edge is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Trailing Edge is a citizen of a State of the United States.   At all times material to the allegations in this Complaint, Defendant Trailing Edge purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Lerner, on information and belief, is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Lerner was the sole participant in and served as the Authorized Representative for Defendant Trailing Edge.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Trailing Edge in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.      the bank account to which SKAT should pay the claim;

c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.      It was SKAT's practice to pay claims that included the required supporting documentation.

32.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.      The Role of the Claimants

33.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.      Each of the claimants, including Defendant Trailing Edge, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.      As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims.  Defendant Trailing Edge represented that Defendant Lerner was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Trailing Edge's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Trailing Edge represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Trailing Edge made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 28,206,357, or at least $4,268,000 (US).  These refund claims were submitted to SKAT on the following dates:  October 28, 2014; April 23, 2015; April 27, 2015; and May 15, 2015.

38.     In fact, Defendant Trailing Edge did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Trailing Edge on the following dates:  November 10, 2014; May 8, 2015; May 27, 2015; and July 6, 2015.

40.     On information and belief, Defendant Lerner caused Defendant Trailing Edge's fraudulent claims to be submitted to SKAT.  Defendant Lerner exerted control over Defendant Trailing Edge as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Lerner was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

41.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.    At the direction of, and on behalf of, Defendant Trailing Edge, Defendant Lerner caused the execution of a "Limited Power of Attorney" dated August 7, 2014, that granted to Payment Agent Syntax authority to be Defendant Trailing Edge's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."  Defendant Lerner described himself as the "Authorized Representative" of Defendant Trailing Edge.

43.    As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Lerner and be subject to his direction and control with respect to Defendant Trailing Edge's claims to SKAT.

44.    In addition to Defendant Trailing Edge, Defendant Lerner served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.    Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Lerner's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Trailing Edge to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Trailing Edge's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Lerner with regard to Defendant Trailing Edge's fraudulent claims to SKAT.

48.     In addition to Defendant Trailing Edge, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.       enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.       requested that SKAT pay the claim to its bank account.

53.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.       The Role of the Broker-Custodians**

54.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.      By way of example, with respect to Defendant Trailing Edge, one example of a "Dividend Credit Advice":

a.       is made out by West Point Derivatives Ltd;

b.       is dated May 11, 2015;

c.       purports to certify Defendant Trailing Edge's ownership of 294,920 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.       states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Trailing Edge never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants Trailing Edge and Lerner)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 28,206,357, or at least $4,268,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Trailing Edge and Lerner)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Trailing Edge to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 28,206,357, or at least $4,268,000 (US), plus interest.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

                                        Respectfully submitted,


                                        HUGHES HUBBARD & REED LLP


                                         s/ William R. Maguire
                                        William R. Maguire
                                        Marc A. Weinstein
                                        Sarah L. Cave
                                        John T. McGoey
                                        One Battery Park Plaza
                                        New York, New York  10004-1482
                                        (212) 837-6000 (t)
                                        (212) 422-4726 (f)
                                        Bill.maguire@hugheshubbard.com
                                        Marc.weinstein@hugheshubbard.com
                                        Sarah.cave@hugheshubbard.com
                                        John.mcgoey@hugheshubbard.com

                                        Counsel for Plaintiff Skatteforvaltningen
                                        (Customs and Tax Administration of the
                                        Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| TRUE WIND INVESTMENTS LLC ROTH 401(K) PLAN, RONALD ALTBACH, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants True Wind Investments LLC Roth 401(K) Plan ("**True Wind**"), Ronald Altbach ("**Altbach**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.   **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant True Wind, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Altbach, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 29,333,040, or at least $4,438,000 (US)[2], plus interest.

## II.     JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes. SKAT is located at Østbanegade 123, 2200 København Ø, Denmark. During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant True Wind is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA. On information and belief, each participant, or member, of Defendant True Wind is a citizen of a State of the United States. At all times material to the allegations in this Complaint, Defendant True Wind purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Altbach is a citizen of the State of New York. At all times material to the allegations in this Complaint, Defendant Altbach was the sole participant in and served as the Authorized Representative for Defendant True Wind.

19.     Defendant Ben-Jacob is a citizen of the State of New York. At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant True Wind in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

          iv.     the bank account to which SKAT should pay the claim;

          c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

          d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

          e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant True Wind, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant True Wind represented that Defendant Altbach was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant True Wind's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant True Wind represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant True Wind made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 29,333,040, or at least $4,438,000 (US). These refund claims were submitted to SKAT on the following dates: October 28, 2014; April 23, 2015; April 27, 2015; and May 15, 2015.

38.     In fact, Defendant True Wind did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant True Wind on the following dates: November 10, 2014; May 8, 2015; May 27, 2015; and July 6, 2015.

40.     On information and belief, Defendant Altbach caused Defendant True Wind's fraudulent claims to be submitted to SKAT. Defendant Altbach exerted control over Defendant True Wind as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Altbach was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3. The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     At the direction of, and on behalf of, Defendant True Wind, Defendant Altbach caused the execution of a "Limited Power of Attorney" dated August 7, 2014, that granted to Payment Agent Syntax authority to be Defendant True Wind's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction." Defendant Altbach described himself as the "Authorized Representative" of Defendant True Wind.

43.     As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Altbach and be subject to his direction and control with respect to Defendant True Wind's claims to SKAT.

44.     In addition to Defendant True Wind, Defendant Altbach served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.     Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Altbach's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims. Defendant Ben-Jacob also allowed Defendant True Wind to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant True Wind's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Altbach with regard to Defendant True Wind's fraudulent claims to SKAT.

48.     In addition to Defendant True Wind, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

        a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

        b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

11

      c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

      d.      requested that SKAT pay the claim to its bank account.

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.     By way of example, with respect to Defendant True Wind, one example of a "Dividend Credit Advice":

      a.      is made out by West Point Derivatives Ltd;

      b.      is dated May 11, 2015;

      c.      purports to certify Defendant True Wind's ownership of 295,676 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

      d.      states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant True Wind never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against Defendants True Wind and Altbach)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 29,333,040, or at least $4,438,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.    SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.    This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.    By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.    SKAT suffered a loss because of the Defendants' unjust enrichment.

79.    The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.    SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.    As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.    It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants True Wind and Altbach)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant True Wind to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 29,333,040, or at least $4,438,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ William R. Maguire
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 27, 2019 |
| BERNINA PENSION PLAN, and JOHN VAN MERKENSTEIJN, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Bernina Pension Plan ("**Bernina**") and John van Merkensteijn ("**van Merkensteijn**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Bernina, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.    As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.    On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.    The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.    The Authorized Representatives of the claimants, such as Defendant van Merkensteijn, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

3

b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 57,927,090, or at least $8,765,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   PARTIES

16.     Plaintiff SKAT is the agency of the Government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Bernina is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 211 Central Park West, Apartment 2G, New York, NY 10024, USA.  On information and belief, each participant, or member, of Defendant Bernina is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Bernina purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant van Merkensteijn is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant van Merkensteijn was the sole participant in and served as the Authorized Representative for Defendant Bernina.  At times material to the allegations in this Complaint, Defendant van Merkensteijn resided at 211 Central Park West, Apartment 2G, New York, NY 10024, the same address listed by at least three claimants in their fraudulent refund claims to SKAT, including Defendant Bernina.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

19.   Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.   Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.   Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.   A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.   SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.   It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

**B.     The Fraudulent Scheme**

25.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 32 through 52 below.

**1.     The Fraudulent Refund Claims Process**

26.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

27.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.       the bank account to which SKAT should pay the claim;

c.       a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.       a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.       in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.    The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.    It was SKAT's practice to pay claims that included the required supporting documentation.

31.    SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

## 2.    The Role of the Claimants

32.    Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.    Each of the claimants, including Defendant Bernina, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.    As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Bernina represented that Defendant van Merkensteijn was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Bernina's claims.

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Bernina represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Bernina made twenty-three (23) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 57,927,090, or at least $8,765,000 (US). These refund claims were submitted to SKAT on the following dates: April 19, 2013; May 16, 2013; September 20, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and September 4, 2014.

37.     In fact, Defendant Bernina did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Bernina on the following dates: May 13, 2013; June 10, 2013; October 17, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and October 9, 2014.

39.     On information and belief, Defendant van Merkensteijn caused Defendant Bernina's fraudulent claims to be submitted to SKAT, evidenced in part by the fact that Defendant Bernina used Defendant van Merkensteijn's New York home address in its fraudulent refund

claims to SKAT.  Defendant van Merkensteijn exerted control over Defendant Bernina as the plan's sole participant, and used this control to commit the fraud on SKAT.  Defendant van Merkensteijn was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans.   Defendant van Merkensteijn's wife was also the sole participant in a pension plan that submitted fraudulent refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

40.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

41.     Defendant van Merkensteijn executed at the direction of, and on behalf of, Defendant Bernina a "Special Power of Attorney" dated April 22, 2013, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Bernina's] name for which [Bernina is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Bernina is] entitled on [Bernina's] behalf."  Defendant van Merkensteijn described himself as the "authorized signer" of Defendant Bernina.

42.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant van Merkensteijn and be subject to his direction and control with respect to Defendant Bernina's claims to SKAT

43.     At times material to the allegations in this Complaint, Defendant van Merkensteijn served as a Managing Director at a financial services firm based at 40 West 57th Street, New York, NY.  At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT.  In addition, at least four different officers and/or employees of that firm

signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

44.    Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative of at least six claimants, including Defendant Bernina.  Two of these claimants listed the financial services firm's West 57th Street address in their fraudulent claims to SKAT.

### 4.    The Role of the Payment Agents

45.    The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

46.    By means of the Power of Attorney described in paragraphs 40-41 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

47.    With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

48.    In connection with each Claim Form, the Payment Agent:

a.    provided its email address as the contact address for the claimant on whose behalf it was acting;

b.    signed and stamped the form, and stated it was applying on behalf of the claimant;

c.    enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.    requested that SKAT pay the claim to its bank account.

49.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

50.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

51.     By way of example, with respect to Defendant Bernina, one example of a "Dividend Credit Advice":

        a.       is made out by Solo Capital Partners LLP;

        b.       is dated August 13, 2014;

        c.       purports to certify Defendant Bernina's ownership of 3,002,746 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

        d.       states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

52.     Defendant Bernina never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

#### (Fraud – Against Both Defendants)

53.      SKAT repeats and realleges paragraphs 1 through 52 above as if fully set forth herein.

54.      Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 50 through 52 to support claims for withholding tax refund payments.

55.      Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

56.      In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 57,927,090, or at least $8,765,000 (US), and thereby suffered damages of that amount, plus interest.

57.      Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

#### (Aiding and Abetting Fraud – Against Both Defendants)

58.      SKAT repeats and realleges paragraphs 1 through 57 above as if fully set forth herein.

59.      As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

60.      As alleged in paragraphs 25 through 52 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

61.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

62.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 52 above.

63.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

64.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against Both Defendants)

65.     SKAT repeats and realleges paragraphs 1 through 64 above as if fully set forth herein.

66.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

67.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

68.     SKAT's mistaken belief was material to its decision to pay the claims.

69.     SKAT suffered a loss as a result of its mistaken payments.

70.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against Both Defendants)

71.     SKAT repeats and realleges paragraphs 1 through 70 above as if fully set forth herein.

72.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

73.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

74.     SKAT suffered a loss because of the Defendants' unjust enrichment.

75.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against Both Defendants)

76.     SKAT repeats and realleges paragraphs 1 through 75 above as if fully set forth herein.

77.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

78.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Both Defendants)

79.     SKAT repeats and realleges paragraphs 1 through 78 above as if fully set forth herein.

80.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

81.     Defendants made material misstatements described in paragraphs 28-29, 36 and 50 through 52 above in connection with every withholding tax refund claim submitted on behalf of Defendant Bernina to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

82.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

83.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 57,927,090, or at least $8,765,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.


**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

                            Respectfully submitted,


                            HUGHES HUBBARD & REED LLP


                             s/ Sarah. L. Cave
                            William R. Maguire
                            Marc A. Weinstein
                            Sarah L. Cave
                            John T. McGoey
                            One Battery Park Plaza
                            New York, New York  10004-1482
                            (212) 837-6000 (t)
                            (212) 422-4726 (f)
                            Bill.maguire@hugheshubbard.com
                            Marc.weinstein@hugheshubbard.com
                            Sarah.cave@hugheshubbard.com
                            John.mcgoey@hugheshubbard.com

                            Counsel for Plaintiff Skatteforvaltningen
                            (Customs and Tax Administration of the
                            Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 27, 2019 |
| BASALT VENTURES LLC ROTH 401(K) PLAN & JOHN VAN MERKENSTEIJN, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Basalt Ventures LLC Roth 401(K) Plan ("**Basalt**") and John van Merkensteijn ("**van Merkensteijn**") as follows:

I.      **INTRODUCTION**

1.      Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.      This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.      The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

_____

1.      At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

Case 1:19-cv-01866   Document 1   Filed 02/27/19   Page 2 of 18

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Basalt, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant van Merkensteijn, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

       b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

       c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 27,853,521, or at least $4,214,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Basalt is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, New York 10022, USA.  On information and belief, each participant, or member, of Defendant Basalt is a citizen of a State of the United States. At all times material to the allegations in this Complaint, Defendant Basalt purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant van Merkensteijn is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant van Merkensteijn was the sole participant in and served as the Authorized Representative for Defendant Basalt.

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

19.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

**B.**     **The Fraudulent Scheme**

25.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 32 through 53 below.

### 1.    The Fraudulent Refund Claims Process

26.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

27.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.    Each of the claimants provided the following documentation to SKAT through their designated agents:

    a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

    b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

        i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

        ii.    the amount of the tax refund claim;

        iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.    the bank account to which SKAT should pay the claim;

    c.    a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.       a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.       in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.     It was SKAT's practice to pay claims that included the required supporting documentation.

31.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.       The Role of the Claimants

32.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.     Each of the claimants, including Defendant Basalt, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.   Defendant Basalt represented that Defendant van Merkensteijn was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Basalt's claims.

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Basalt represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Basalt made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 27,853,521, or at least $4,214,000 (US).  These refund claims were submitted to SKAT on the following dates: November 27, 2014; April 14, 2015; April 16, 2015; April 21, 2015; April 23, 2015; April 27, 2015; and May 15, 2015.

37.     In fact, Defendant Basalt did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Basalt on the following dates: December 19, 2014; May 8, 2015; May 19, 2015; June 24, 2015; and July 1, 2015.

39.     On information and belief, Defendant van Merkensteijn caused Defendant Basalt's fraudulent claims to be submitted to SKAT.  Defendant van Merkensteijn exerted control over Defendant Basalt as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant van Merkensteijn was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans. Defendant van Merkensteijn's wife was also the sole participant in a pension plan that submitted fraudulent claims to SKAT.

40.     In addition to Defendant Basalt, at least 29 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed an address of 425 Park Avenue, New York, NY 10022, USA, in their fraudulent tax refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     Defendant van Merkensteijn executed at the direction of, and on behalf of, Defendant Basalt a "Power of Attorney" dated August 22, 2014, that granted to Payment Agent Goal authority "to be the attorney of [Basalt] and in [Basalt's] name and otherwise on [Basalt's] behalf and as [Basalt's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Basalt] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Basalt] or through [Goal] on behalf of [Basalt]."

43.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant van Merkensteijn and be subject to his direction and control with respect to Defendant Basalt's fraudulent claims to SKAT.

44.     At times material to the allegations in this Complaint, Defendant van Merkensteijn served as a Managing Director of a financial services firm based at 40 West 57th Street, New York, NY.  At least nine claimants listed that firm's West 57th street address in their fraudulent tax refund claims to SKAT.  In addition, at least four different officers and/or employees of that firm signed

Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

45.     Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative for at least six claimants, including Defendant Basalt.  Two of these claimants listed the financial services firm's West 57th Street address in their fraudulent refund claims to SKAT, and a third listed Defendant van Merkensteijn's New York home address.

### 4.     The Role of the Payment Agents

46.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

47.     By means of the Power of Attorney described in paragraphs 41-42 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

48.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

49.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

50.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and

belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

51.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

52.    By way of example, with respect to Defendant Basalt, one example of a "Credit Advice":

a.    is made out by Telesto Markets LLP;

b.    is dated May 11, 2015;

c.    purports to certify Defendant Basalt's ownership of 294,679 shares in Coloplast-B (a genuine company), and whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.    states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

53.    Defendant Basalt never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Both Defendants)

54.     SKAT repeats and realleges paragraphs 1 through 53 above as if fully set forth herein.

55.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 51 through 53 to support claims for withholding tax refund payments.

56.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

57.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 27,853,521, or at least $4,214,000 (US), and thereby suffered damages of that amount, plus interest.

58.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against Both Defendants)

59.     SKAT repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

61.     As alleged in paragraphs 25 through 53 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

62.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

63.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 53 above.

64.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

65.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against Both Defendants)

66.     SKAT repeats and realleges paragraphs 1 through 65 above as if fully set forth herein.

67.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

68.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

69.     SKAT's mistaken belief was material to its decision to pay the claims.

70.     SKAT suffered a loss as a result of its mistaken payments.

71.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against Both Defendants)

72.　　SKAT repeats and realleges paragraphs 1 through 71 above as if fully set forth herein.

73.　　This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

74.　　By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

75.　　SKAT suffered a loss because of the Defendants' unjust enrichment.

76.　　The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against Both Defendants)

77.　　SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.　　As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

79.　　It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Both Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

82.     Defendants made material misstatements described in paragraphs 28-29, 36 and 51 through 53 above in connection with every withholding tax refund claim submitted on behalf of Defendant Basalt to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

83.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

84.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 27,853,521, or at least $4,214,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.


## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

                              Respectfully submitted,


                              HUGHES HUBBARD & REED LLP


                               s/ Sarah. L. Cave
                              William R. Maguire
                              Marc A. Weinstein
                              Sarah L. Cave
                              John T. McGoey
                              One Battery Park Plaza
                              New York, New York  10004-1482
                              (212) 837-6000 (t)
                              (212) 422-4726 (f)
                              Bill.maguire@hugheshubbard.com
                              Marc.weinstein@hugheshubbard.com
                              Sarah.cave@hugheshubbard.com
                              John.mcgoey@hugheshubbard.com

                              Counsel for Plaintiff Skatteforvaltningen
                              (Customs and Tax Administration of the
                              Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 27, 2019 |
| AVANIX MANAGEMENT LLC ROTH 401K PLAN & RICHARD MARKOWITZ, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Avanix Management LLC Roth 401K Plan ("**Avanix**") and Richard Markowitz ("**Markowitz**") as follows:

## I.     INTRODUCTION

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Avanix, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7. As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8. On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9. The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

   a. The Authorized Representatives of the claimants, such as Defendant Markowitz, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 68,945,863, or at least $10,432,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Avanix is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Avanix is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Avanix purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Markowitz is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Markowitz was the sole participant in and served as the Authorized Representative for Defendant Avanix.

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

19.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

**B.    The Fraudulent Scheme**

25.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

Agent, and (iv) a Broker-Custodian. The respective roles of each of these participants are described in further detail in paragraphs 32 through 53 below.

### 1. The Fraudulent Refund Claims Process

26.   The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

27.   The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.   Each of the claimants provided the following documentation to SKAT through their designated agents:

a.   a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.   a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.   the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.   the amount of the tax refund claim;

iii.   a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.   the bank account to which SKAT should pay the claim;

c.   a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.      It was SKAT's practice to pay claims that included the required supporting documentation.

31.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

**2.      The Role of the Claimants**

32.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.      Each of the claimants, including Defendant Avanix, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.      As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.  Defendant Avanix represented that Defendant Markowitz was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Avanix's claims.

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Avanix represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Avanix made sixteen (16) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 68,945,863, or at least $10,432,000 (US).  These refund claims were submitted to SKAT on the following dates: December 15, 2014; March 27, 2015; March 31, 2015; April 17, 2015; April 24, 2015; May 1, 2015; and May 22, 2015.

37.     In fact, Defendant Avanix did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Avanix on the following dates: January 7, 2015; April 29, 2015; May 19, 2015; and July 6, 2015.

39.     On information and belief, Defendant Markowitz caused Defendant Avanix's fraudulent claims to be submitted to SKAT.  Defendant Markowitz exerted control over Defendant Avanix as the plans' sole participant, and used this control to commit the fraud on SKAT. Defendant Markowitz was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans. Defendant Markowitz's wife was also the sole participant in a pension plan that submitted fraudulent claims to SKAT.

### 3.   The Role of the Claimants' Authorized Representatives

40.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

41.    Defendant Markowitz executed at the direction of, and on behalf of, Defendant Avanix a "Special Power of Attorney" dated August 21, 2014, that granted to Payment Agent Acupay authority "to pursue and file for reductions in rates of tax withholding in [Avanix's] name for which [Avanix is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Avanix is] entitled on [Avanix's] behalf."  Defendant Markowitz described himself as the "Trustee" of Defendant Avanix.

42.    As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant Markowitz and be subject to his direction and control with respect to Defendant Avanix's claims to SKAT.

43.    Defendant Markowitz signed Power of Attorney documents as the Authorized Representative for at least four of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Avanix.  Three of these claimants, including Defendant Avanix, listed an address of 425 Park Avenue, New York, NY 10022 in their fraudulent refund claims to SKAT, and the fourth listed Defendant Markowitz's New York home address.

44.    At times material to the allegations in this Complaint, Defendant Markowitz served as a Managing Director of a financial services firm based at 40 West 57th Street, New York, NY. At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT.  In addition, at least four different officers and/or employees of that firm signed

10

Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

45.     In addition to Defendant Avanix, at least 29 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed an address of 425 Park Avenue, New York, NY 10022, USA, in their fraudulent tax refund claims to SKAT.

**4.     The Role of the Payment Agents**

46.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

47.     By means of the Power of Attorney described in paragraphs 40-41 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

48.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

49.     In connection with each Claim Form, the Payment Agent:

        a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

        b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

        c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

        d.     requested that SKAT pay the claim to its bank account.

50.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other

participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

51.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

52.    By way of example, with respect to Defendant Avanix, one example of a "dividend credit advice":

      a.      is made out by Solo Capital Partners LLP;

      b.      is dated March 23, 2015;

      c.      purports to certify Defendant Avanix's ownership of 3,142,914 shares in Danske Bank A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

      d.      states an International Securities Identification Number ("**ISIN**") for Danske Bank A/S shares as "DK0010274414".   An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

53.    Defendant Avanix never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Both Defendants)

54.     SKAT repeats and realleges paragraphs 1 through 53 above as if fully set forth herein.

55.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 51 through 53 to support claims for withholding tax refund payments.

56.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

57.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 68,945,863, or at least $10,432,000 (US), and thereby suffered damages of that amount, plus interest.

58.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against Both Defendants)

59.     SKAT repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

61.     As alleged in paragraphs 25 through 53 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

62.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

63.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 53 above.

64.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

65.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against Both Defendants)

66.     SKAT repeats and realleges paragraphs 1 through 65 above as if fully set forth herein.

67.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

68.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

69.     SKAT's mistaken belief was material to its decision to pay the claims.

70.     SKAT suffered a loss as a result of its mistaken payments.

71.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against Both Defendants)

72.     SKAT repeats and realleges paragraphs 1 through 71 above as if fully set forth herein.

73.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

74.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

75.     SKAT suffered a loss because of the Defendants' unjust enrichment.

76.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against Both Defendants)

77.     SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

79.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Both Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

82.     Defendants made material misstatements described in paragraphs 28-29, 36 and 51 through 53 above in connection with every withholding tax refund claim submitted on behalf of Defendant Avanix to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

83.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

84.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 68,945,863, or at least $10,432,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 27, 2019 |
| HADRON INDUSTRIES LLC ROTH 401(K) PLAN & RICHARD MARKOWITZ, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Hadron Industries LLC Roth 401(K) Plan ("**Hadron Industries**") and Richard Markowitz ("**Markowitz**") as follows:

I.  **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Hadron Industries, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Markowitz, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

   b.  The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

   c.  The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

  10.  The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

  11.  SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

  12.  As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

  13.  As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 30,520,158, or at least $4,618,000 (US)[2], plus interest.

## II.  <u>JURISDICTION & VENUE</u>

  14.  Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III.    **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Hadron Industries is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Hadron Industries is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Hadron Industries purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Markowitz is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Markowitz was the sole participant in and served as the Authorized Representative for Defendant Hadron Industries.

IV.     **FACTUAL ALLEGATIONS**

A.      **The Danish Withholding Tax System**

19.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.   Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.   Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.   A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.   SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.   It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

**B.   The Fraudulent Scheme**

25.   As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 32 through 53 below.

### 1.    The Fraudulent Refund Claims Process

26.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

27.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.    the bank account to which SKAT should pay the claim;

c.    a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.       a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.       in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.       The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.       It was SKAT's practice to pay claims that included the required supporting documentation.

31.       SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

## 2.       The Role of the Claimants

32.       Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.       Each of the claimants, including Defendant Hadron Industries, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.       As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.  Defendant Hadron Industries represented that Defendant Markowitz was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Hadron Industries' claims.

8

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Hadron Industries represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Hadron Industries made sixteen (16) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 30,520,158, or at least $4,618,000 (US).  These refund claims were submitted to SKAT on the following dates: November 7, 2014; December 11, 2014; April 13, 2015; April 30, 2015; and May 15, 2015.

37.     In fact, Defendant Hadron Industries did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Hadron Industries on the following dates: November 19, 2014; January 7, 2015; April 24, 2015; May 27, 2015; and July 6, 2015.

39.     On information and belief, Defendant Markowitz caused Defendant Hadron Industries' fraudulent claims to be submitted to SKAT.  Defendant Markowitz exerted control over Defendant Hadron Industries as the plan's sole participant, and used this control to commit the fraud on SKAT.  Defendant Markowitz was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and was a participant with three others in three additional plans.  Defendant Markowitz's wife was also the sole participant in a plan that submitted fraudulent claims to SKAT.

40.     In addition to Defendant Hadron Industries, at least 29 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed an address of 425 Park Avenue, New York, NY 10022, USA, in their fraudulent tax refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     Defendant Markowitz executed at the direction of, and on behalf of, Defendant Hadron Industries a "Limited Power of Attorney" dated August 21, 2014, that granted to Payment Agent Syntax authority to be Defendant Hadron Industries' "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."   Defendant Markowitz described himself as the "Authorised Representative" of Defendant Hadron Industries.

43.     As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Markowitz and be subject to his direction and control with respect to Defendant Hadron Industries' claims to SKAT.

44.     Defendant Markowitz signed Power of Attorney documents as the Authorized Representative for at least four of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Hadron Industries.   Three of these claimants, including Defendant Hadron Industries, listed an address of 425 Park Avenue, New York, NY 10022 in their

fraudulent refund claims to SKAT, and the fourth listed Defendant Markowitz's New York home address.

45.     At times material to the allegations in this Complaint, Defendant Markowitz served as a Managing Director of a financial services firm based at 40 West 57th Street, New York, NY. At least nine claimants listed that firm's West 57th Street address in their fraudulent refund claims to SKAT.  In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

### 4.     The Role of the Payment Agents

46.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

47.     By means of the Power of Attorney described in paragraphs 41-42 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

48.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

49.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

50.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.     The Role of the Broker-Custodians

51.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

52.     By way of example, with respect to Defendant Hadron Industries, one example of a "Dividend Credit Advice":

a.     is made out by West Point Derivatives Ltd;

b.     is dated May 11, 2015;

c.     purports to certify Defendant Hadron Industries' ownership of 291,036 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.     states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

53.     Defendant Hadron Industries never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

# CAUSES OF ACTION

## COUNT I

### (Fraud – Against Both Defendants)

54.    SKAT repeats and realleges paragraphs 1 through 53 above as if fully set forth herein.

55.    Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 51 through 53 to support claims for withholding tax refund payments.

56.    Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

57.    In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 30,520,158, or at least $4,618,000 (US), and thereby suffered damages of that amount, plus interest.

58.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against Both Defendants)

59.    SKAT repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.    As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

61.    As alleged in paragraphs 25 through 53 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

62.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

63.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 53 above.

64.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

65.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against Both Defendants)

66.     SKAT repeats and realleges paragraphs 1 through 65 above as if fully set forth herein.

67.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

68.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

69.     SKAT's mistaken belief was material to its decision to pay the claims.

70.     SKAT suffered a loss as a result of its mistaken payments.

71.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against Both Defendants)

72.     SKAT repeats and realleges paragraphs 1 through 71 above as if fully set forth herein.

73.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

74.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

75.     SKAT suffered a loss because of the Defendants' unjust enrichment.

76.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against Both Defendants)

77.     SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

79.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Both Defendants)

80.    SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

82.    Defendants made material misstatements described in paragraphs 28-29, 36 and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Hadron Industries to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

83.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

84.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 30,520,158, or at least $4,618,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

                                Respectfully submitted,


                                HUGHES HUBBARD & REED LLP


                                 s/ Sarah. L. Cave
                                William R. Maguire
                                Marc A. Weinstein
                                Sarah L. Cave
                                John T. McGoey
                                One Battery Park Plaza
                                New York, New York  10004-1482
                                (212) 837-6000 (t)
                                (212) 422-4726 (f)
                                Bill.maguire@hugheshubbard.com
                                Marc.weinstein@hugheshubbard.com
                                Sarah.cave@hugheshubbard.com
                                John.mcgoey@hugheshubbard.com

                                Counsel for Plaintiff Skatteforvaltningen
                                (Customs and Tax Administration of the
                                Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 27, 2019 |
| CAVUS SYSTEMS LLC ROTH 401(K) PLAN, RICHARD MARKOWITZ, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Cavus Systems LLC Roth 401(K) Plan ("**Cavus**"), Richard Markowitz ("**Markowitz**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    <u>**INTRODUCTION**</u>

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Cavus, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Markowitz, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 30,340,949, or at least $4,591,000 (US)[2], plus interest.

## II.     JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III.   **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Cavus is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Cavus is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Cavus purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Markowitz is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Markowitz was the sole participant in and served as the Authorized Representative for Defendant Cavus.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Cavus in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

**B.**     **The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 58 below.

**1.     The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal Taxback Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

    a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

    b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

        i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

        ii.     the amount of the tax refund claim;

        iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

iv.      the bank account to which SKAT should pay the claim;

c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.      It was SKAT's practice to pay claims that included the required supporting documentation.

32.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.      The Role of the Claimants

33.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.      Each of the claimants, including Defendant Cavus, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.      As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Cavus represented that Defendant Markowitz was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Cavus's claims.

36.    As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Cavus represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37.    Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Cavus made sixteen (16) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 30,340,949, or at least $4,591,000 (US). These refund claims were submitted to SKAT on the following dates: November 27, 2014; January 12, 2015; April 14, 2015; April 16; 2015; April 21, 2015; April 23, 2015; April 27, 2015; and May 15, 2015.

38.    In fact, Defendant Cavus did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.    Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Cavus on the following dates: December 19, 2014; March 9, 2015; May 8, 2015; May 19, 2015; June 24, 2015; and July 1, 2015.

40.    On information and belief, Defendant Markowitz caused Defendant Cavus' fraudulent claims to be submitted to SKAT. Defendant Markowitz exerted control over Defendant Cavus as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Markowitz was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and was a participant with three others in three additional plans.

Defendant Markowitz's wife was also the sole participant in a plan that submitted fraudulent claims to SKAT.

### 3.  The Role of the Claimants' Authorized Representatives

41.  Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.  At the direction of, and on behalf of, Defendant Cavus, Defendant Markowitz caused the execution of a "Power of Attorney" dated November 7, 2014, that granted to Payment Agent Goal authority "to be the attorney of [Cavus] and in [Cavus's] name and otherwise on [Cavus's] behalf and as [Cavus's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Cavus] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Cavus], or through [Goal] on behalf of [Cavus]."

43.  As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Markowitz and be subject to his direction and control with respect to Defendant Cavus' claims to SKAT.

44.  In addition to Defendant Cavus, Defendant Markowitz served as the Authorized Representative for at least two other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022, USA.  Defendant Markowitz signed the Power of Attorney document as the Authorized Representative for a fourth claimant that listed Defendant Markowitz's home address in its fraudulent refund claims to SKAT.

45.     At times material to the allegations in this Complaint, Defendant Markowitz served as a Managing Director of a financial services firm based at 40 West 57th Street, New York, NY. At least nine claimants listed that firm's West 57th Street address in their fraudulent refund claims to SKAT.  In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

46.     Defendant Markowitz also participated in the fraudulent scheme through his role incorporating non-party RJM Capital LLC, the affiliated entity of non-party claimant RJM Capital Pension Plan.  Defendant Markowitz signed RJM Capital LLC's Certificate of Formation filed with the State of Delaware listing him as the "Authorized Person" of the LLC.

47.     Defendant Ben-Jacob signed the Power of Attorney document as Defendant Markowitz's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Cavus to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Cavus' address on the claims listed in paragraph 37.

48.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

49.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the authorized representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Markowitz with regard to Defendant Cavus's fraudulent claims to SKAT.

50.     In addition to Defendant Cavus, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-

Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.   The Role of the Payment Agents

51.   The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

52.   By means of the Power of Attorney described in paragraphs 41-43 and 47 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

53.   With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

54.   In connection with each Claim Form, the Payment Agent:

   a.   provided its email address as the contact address for the claimant on whose behalf it was acting;

   b.   signed and stamped the form, and stated it was applying on behalf of the claimant;

   c.   enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

   d.   requested that SKAT pay the claim to its bank account.

55.   As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.     The Role of the Broker-Custodians

56.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

57.     By way of example, with respect to Defendant Cavus, one example of a "credit advice":

   a.     is made out by Telesto Markets LLP;

   b.     is dated April 7, 2015;

   c.     purports to certify Defendant Cavus's ownership of 7,890 shares in AP Moeller-Maersk A/S-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

   d.     states an International Securities Identification Number ("**ISIN**") for AP Moeller-Maersk A/S-B shares as "DK0010244508".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

58.     Defendant Cavus never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants Cavus and Markowitz)

59.     SKAT repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60. Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37 and 56 through 58 to support claims for withholding tax refund payments.

61. Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

62. In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 30,340,949, or at least $4,591,000 (US), and thereby suffered damages of that amount, plus interest.

63. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

64. SKAT repeats and realleges paragraphs 1 through 63 above as if fully set forth herein.

65. As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

66. As alleged in paragraphs 26 through 58 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

67. The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

68. The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 58 above.

69.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

70.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

71.     SKAT repeats and realleges paragraphs 1 through 70 above as if fully set forth herein.

72.     This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

73.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

74.     SKAT's mistaken belief was material to its decision to pay the claims.

75.     SKAT suffered a loss as a result of its mistaken payments.

76.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

77.     SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

79.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

80.     SKAT suffered a loss because of the Defendants' unjust enrichment.

81.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

82.     SKAT repeats and realleges paragraphs 1 through 81 above as if fully set forth herein.

83.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

84.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Cavus and Markowitz)

85.     SKAT repeats and realleges paragraphs 1 through 84 above as if fully set forth herein.

86.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

87.     Defendants made material misstatements described in paragraphs 29-30, 37 and 56 through 58 above in connection with every withholding tax refund claim submitted on behalf of

Defendant Cavus to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

88.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

89.    SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 30,340,949, or at least $4,591,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.    For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.    For Counts I and II, punitive damages.

4.    The costs of this action.

5.    All other and further relief that is just and proper.

## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 27, 2019 |
| ECLOUGE INDUSTRY LLC ROTH 401(K) PLAN, PERRY LERNER, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Eclouge Industry LLC Roth 401(K) Plan ("**Eclouge**"), Perry Lerner ("**Lerner**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.     **INTRODUCTION**

1.      Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.      This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.      The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Eclouge, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

        a.      The Authorized Representatives of the claimants, such as Defendant Lerner, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.    The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.    SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.    As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.    As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 48,315,325, or at least $7,310,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.    This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Eclouge is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Eclouge is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Eclouge purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Lerner, on information and belief, is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Lerner was the sole participant in and served as the Authorized Representative for Defendant Eclouge.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Eclouge in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.   Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.   Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.   Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.   A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.   SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.   It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

### B.     The Fraudulent Scheme

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

### 1.     The Fraudulent Refund Claims Process

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

iv.       the bank account to which SKAT should pay the claim;

c.       a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.       a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.       in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.      The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Eclouge, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Eclouge represented that Defendant Lerner was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Eclouge's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Eclouge represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Eclouge made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 48,315,325, or at least $7,310,000 (US). These refund claims were submitted to SKAT on the following dates: November 27, 2014; March 13, 2015; March 24, 2015; April 14, 2015; April 16, 2015; April 23, 2015; April 27, 2015; and May 14, 2015.

38.     In fact, Defendant Eclouge did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Eclouge on the following dates: December 19, 2014; April 24, 2015; April 29, 2015; May 8, 2015; May 19, 2015; June 24, 2015; and July 1, 2015.

40.     On information and belief, Defendant Lerner caused Defendant Eclouge's fraudulent claims to be submitted to SKAT. Defendant Lerner exerted control over Defendant Eclouge as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Lerner was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

41.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.    At the direction of, and on behalf of, Defendant Eclouge, Defendant Lerner caused the execution of a "Power of Attorney" dated November 7, 2014, that granted to Payment Agent Goal authority "to be the attorney of [Eclouge] and in [Eclouge's] name and otherwise on [Eclouge's] behalf and as [Eclouge's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Eclouge] from time to time, including   the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Eclouge] or through [Goal] on behalf of [Eclouge]."

43.    As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Lerner and be subject to his direction and control with respect to Defendant Eclouge's claims to SKAT.

44.    In addition to Defendant Eclouge, Defendant Lerner served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.    Defendant Ben-Jacob signed the Power of Attorney document as Defendant Lerner's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also

allowed Defendant Eclouge to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Eclouge's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Lerner with regard to Defendant Eclouge's fraudulent claims to SKAT.

48.     In addition to Defendant Eclouge, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

    b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

    c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

    d.      requested that SKAT pay the claim to its bank account.

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.     By way of example, with respect to Defendant Eclouge, one example of an "Income Advice":

    a.      is made out by Old Park Lane Capital PLC;

    b.      is dated May 11, 2015;

    c.      purports to certify Defendant Eclouge's ownership of 873,331 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.      states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.      Defendant Eclouge never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants Eclouge and Lerner)

57.      SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.      Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.      Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.      In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 48,315,325, or at least $7,310,000 (US), and thereby suffered damages of that amount, plus interest.

61.      Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

15

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

**(Negligent Misrepresentation – Against Defendants Eclouge and Lerner)**

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Eclouge to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 48,315,325, or at least $7,310,000 (US), plus interest.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor

against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent

misrepresentation, the damages sustained by SKAT as a result of the Defendants'

wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

had and received, the damages sustained or the amounts by which the Defendants

were paid by mistake or unjustly enriched, or by which the Defendants received

money to which they were not entitled, plus pre-judgment interest, fees, costs and

expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 27, 2019 |
| STARFISH CAPITAL MANAGEMENT LLC ROTH 401(K) PLAN & JOHN VAN MERKENSTEIJN, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Starfish Capital Management LLC Roth 401(K) Plan ("**Starfish Capital**") and John van Merkensteijn ("**van Merkensteijn**") as follows:

I.      **INTRODUCTION**

1.      Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.      This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.      The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.      At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.    The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.    The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Starfish Capital, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.    On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant van Merkensteijn, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

3

      b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

      c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.    The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.    SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.    As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.    As a result of the fraudulent claim by the Defendants in this action, SKAT paid a baseless withholding tax refund claim and was damaged in the amount of DKK 1,436,630, or at least $217,000 (US)[2], plus interest.

## II.    <u>JURISDICTION & VENUE</u>

14.    Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Starfish Capital is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, New York 10022, USA.  On information and belief, each participant, or member, of Defendant Starfish Capital is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Starfish Capital purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant van Merkensteijn is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant van Merkensteijn was the sole participant in and served as the Authorized Representative for Defendant Starfish Capital.

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

19.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

**B.     The Fraudulent Scheme**

25.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment

---

3.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 32 through 53 below.

### 1.      The Fraudulent Refund Claims Process

26.      The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

27.      The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.      Each of the claimants provided the following documentation to SKAT through their designated agents:

      a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

      b.      a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

            i.      the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

            ii.      the amount of the tax refund claim;

            iii.      a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

            iv.      the bank account to which SKAT should pay the claim;

      c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.     It was SKAT's practice to pay claims that included the required supporting documentation.

31.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

## 2.      The Role of the Claimants

32.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.     Each of the claimants, including Defendant Starfish Capital, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.  Defendant Starfish Capital represented that Defendant van Merkensteijn was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Starfish Capital's claims.

8

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Starfish Capital represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Starfish Capital made one (1) withholding tax refund claim, and represented that it was entitled to a refund totaling DKK 1,436,630, or at least $217,000 (US).   This refund claim was submitted to SKAT on November 7, 2014.

37.     In fact, Defendant Starfish Capital did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claim listed in paragraph 36, SKAT made payment to Defendant Starfish Capital on November 19, 2014.

39.     On information and belief, Defendant van Merkensteijn caused Defendant Starfish Capital's fraudulent refund claims to be submitted to SKAT.  Defendant van Merkensteijn exerted control over Defendant Starfish Capital as the plan's sole participant, and used this control to commit the fraud on SKAT.  Defendant van Merkensteijn was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans.  Defendant van Merkensteijn's wife was also the sole participant in a pension plan that submitted fraudulent refund claims to SKAT.

40.     In addition to Defendant Starfish Capital, at least 29 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed an address of 425 Park Avenue, New York, NY 10022, USA, in their fraudulent tax refund claims to SKAT.

### 3. The Role of the Claimants' Authorized Representatives

41. Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42. Defendant van Merkensteijn executed at the direction of, and on behalf of, Defendant Starfish Capital a "Limited Power of Attorney" dated August 21, 2014, that granted to Payment Agent Syntax authority to be Defendant Starfish Capital's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction." Defendant van Merkensteijn described himself as the "Authorized Representative" of Defendant Starfish Capital.

43. As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant van Merkensteijn and be subject to his direction and control with respect to Defendant Starfish Capital's claims to SKAT.

44. At times material to the allegations in this Complaint, Defendant van Merkensteijn served as a Managing Director at a financial services firm based at 40 West 57th Street, New York, NY. At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT. In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

45. Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative for at least six of the 277 U.S. entities that pretended to own shares in

Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Starfish Capital. Two of these six claimants listed the financial services firm's West 57th Street address in their fraudulent refund claims to SKAT, and a third listed Defendant van Merkensteijn's New York home address.

### 4.  The Role of the Payment Agents

46. The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

47. By means of the Power of Attorney described in paragraphs 41-42 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and subject to their control with respect to submitting the withholding tax refund claims.

48. With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

49. In connection with each Claim Form, the Payment Agent:

a.  provided its email address as the contact address for the claimant on whose behalf it was acting;

b.  signed and stamped the form, and stated it was applying on behalf of the claimant;

c.  enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.  requested that SKAT pay the claim to its bank account.

50. As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants. On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other

participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

51.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

52.    By way of example, with respect to Defendant Starfish Capital, one example of an "Income Advice":

      a.      is made out by Old Park Lane Capital PLC;

      b.      is dated August 13, 2014;

      c.      purports to certify Defendant Starfish Capital's ownership of 3,547,235 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

      d.      states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

53.    Defendant Starfish Capital never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against Both Defendants)

54.     SKAT repeats and realleges paragraphs 1 through 53 above as if fully set forth herein.

55.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 51 through 53 to support claims for withholding tax refund payments.

56.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

57.     In reliance on the false and fraudulent misrepresentations, SKAT paid a baseless withholding tax refund claim of DKK 1,436,630, or at least $217,000 (US) and thereby suffered damages of that amount, plus interest.

58.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against Both Defendants)

59.     SKAT repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

61.     As alleged in paragraphs 25 through 53 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

62.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

63.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 53 above.

64.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

65.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT III**</u>

**(Payment By Mistake – Against Both Defendants)**

66.     SKAT repeats and realleges paragraphs 1 through 65 above as if fully set forth herein.

67.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

68.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

69.     SKAT's mistaken belief was material to its decision to pay the claims.

70.     SKAT suffered a loss as a result of its mistaken payments.

71.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against Both Defendants)

72.     SKAT repeats and realleges paragraphs 1 through 71 above as if fully set forth herein.

73.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

74.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

75.     SKAT suffered a loss because of the Defendants' unjust enrichment.

76.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against Both Defendants)

77.     SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

79.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Both Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

82.     Defendants made material misstatements described in paragraphs 28-29, 36 and 51 through 53 above in connection with every withholding tax refund claim submitted on behalf of Defendant Starfish Capital to SKAT.   Defendants knew, or should have known, that these statements were inaccurate.

83.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

84.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 1,436,630, or at least $217,000 (US), plus interest.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

                                    Respectfully submitted,


                                    HUGHES HUBBARD & REED LLP


                                     s/ Sarah L. Cave
                                    William R. Maguire
                                    Marc A. Weinstein
                                    Sarah L. Cave
                                    John T. McGoey
                                    One Battery Park Plaza
                                    New York, New York 10004-1482
                                    (212) 837-6000 (t)
                                    (212) 422-4726 (f)
                                    Bill.maguire@hugheshubbard.com
                                    Marc.weinstein@hugheshubbard.com
                                    Sarah.cave@hugheshubbard.com
                                    John.mcgoey@hugheshubbard.com

                                    Counsel for Plaintiff Skatteforvaltningein
                                    (Customs and Tax Administration of the
                                    Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 27, 2019 |
| VOOJO PRODUCTIONS LLC ROTH 401(K) PLAN & JOHN VAN MERKENSTEIJN, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Voojo Productions LLC Roth 401(K) Plan ("**Voojo**") and John van Merkensteijn ("**van Merkensteijn**") as follows:

I.   **INTRODUCTION**

1.      Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.      This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.      The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.    The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.    The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Voojo, as well as entities in the United Kingdom, Canada, Malaysia,

and Luxembourg.

6.    On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.      The Authorized Representatives of the claimants, such as Defendant van Merkensteijn, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.    The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.    The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.    The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.    SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.    As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.    As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 48,525,813, or at least $7,342,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.    Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.    This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Voojo is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, New York 10022, USA.  On information and belief, each participant, or member, of Defendant Voojo is a citizen of a State of the United States. At all times material to the allegations in this Complaint, Defendant Voojo purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant van Merkensteijn is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant van Merkensteijn was the sole participant in and served as the Authorized Representative for Defendant Voojo.

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

19.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

B.     **The Fraudulent Scheme**

25.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

Agent, and (iv) a Broker-Custodian. The respective roles of each of these participants are described in further detail in paragraphs 32 through 53 below.

          **1.**      **The Fraudulent Refund Claims Process**

26.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

27.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.     Each of the claimants provided the following documentation to SKAT through their designated agents:

        a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

        b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

            i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

            ii.     the amount of the tax refund claim;

            iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

            iv.     the bank account to which SKAT should pay the claim;

        c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.     It was SKAT's practice to pay claims that included the required supporting documentation.

31.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

## 2.      The Role of the Claimants

32.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.     Each of the claimants, including Defendant Voojo, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.  Defendant Voojo represented that Defendant van Merkensteijn was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Voojo's claims.

8

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Voojo represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Voojo made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 48,525,813, or at least $7,342,000 (US).  These refund claims were submitted to SKAT on the following dates: November 13, 2014; March 27, 2015; March 31, 2015; April 17, 2015; May 1, 2015; and May 22, 2015.

37.     In fact, Defendant Voojo did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Voojo on the following dates: November 26, 2014; April 29, 2015; May 19, 2015; and July 6, 2015.

39.     On information and belief, Defendant van Merkensteijn caused Defendant Voojo's fraudulent refund claims to be submitted to SKAT.  Defendant van Merkensteijn exerted control over Defendant Voojo as the plan's sole participant, and used this control to commit the fraud on SKAT.  Defendant van Merkensteijn was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans.  Defendant van Merkensteijn's wife was also the sole participant in a pension plan that submitted fraudulent refund claims to SKAT.

40.     In addition to Defendant Voojo, at least 29 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed an address of 425 Park Avenue, New York, NY 10022, USA, in their fraudulent tax refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     Defendant van Merkensteijn executed at the direction of, and on behalf of, Defendant Voojo a "Special Power of Attorney" dated August 21, 2014, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Voojo's] name for which [Voojo is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Voojo is] entitled on [Voojo's] behalf."  Defendant van Merkensteijn described himself as the "trustee" of Defendant Voojo.

43.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant van Merkensteijn and be subject to his direction and control with respect to Defendant Voojo's claims to SKAT.

44.     At times material to the allegations in this Complaint, Defendant van Merkensteijn served as a Managing Director at a financial services firm based at 40 West 57th Street, New York, NY.  At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT.  In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

45.     Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative for at least six of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulent requested tax refunds from SKAT, including Defendant Voojo.  Two of these claimants listed the financial services firm's West 57th Street address in their fraudulent refund claims to SKAT, and a third listed Defendant van Merkensteijn's New York home address.

### 4.     The Role of the Payment Agents

46.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

47.     By means of the Power of Attorney described in paragraphs 41-42 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

48.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

49.     In connection with each Claim Form, the Payment Agent:

a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.      requested that SKAT pay the claim to its bank account.

50.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and

belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

51.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

52.    By way of example, with respect to Defendant Voojo, one example of an "Income Advice":

    a.    is made out by Old Park Lane Capital PLC;

    b.    is dated May 11, 2015;

    c.    purports to certify Defendant Voojo's ownership of 882,618 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

    d.    states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

53.    Defendant Voojo never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against Both Defendants)

54.     SKAT repeats and realleges paragraphs 1 through 53 above as if fully set forth herein.

55.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 51 through 53 to support claims for withholding tax refund payments.

56.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

57.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 48,525,813, or at least $7,342,000 (US), and thereby suffered damages of that amount, plus interest.

58.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against Both Defendants)

59.     SKAT repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

61.     As alleged in paragraphs 25 through 53 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

62.    The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

63.    The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 53 above.

64.    As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

65.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT III**</u>

**(Payment By Mistake – Against Both Defendants)**

66.    SKAT repeats and realleges paragraphs 1 through 65 above as if fully set forth herein.

67.     This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

68.    SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

69.    SKAT's mistaken belief was material to its decision to pay the claims.

70.    SKAT suffered a loss as a result of its mistaken payments.

71.    The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against Both Defendants)

72.     SKAT repeats and realleges paragraphs 1 through 71 above as if fully set forth herein.

73.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

74.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

75.     SKAT suffered a loss because of the Defendants' unjust enrichment.

76.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against Both Defendants)

77.     SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

79.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Both Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

82.     Defendants made material misstatements described in paragraphs 28-29, 36 and 51 through 53 above in connection with every withholding tax refund claim submitted on behalf of Defendant Voojo to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

83.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

84.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 48,525,813, or at least $7,342,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.


## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

                                Respectfully submitted,


                                HUGHES HUBBARD & REED LLP


                                 s/ Sarah L. Cave
                                William R. Maguire
                                Marc A. Weinstein
                                Sarah L. Cave
                                John T. McGoey
                                One Battery Park Plaza
                                New York, New York  10004-1482
                                (212) 837-6000 (t)
                                (212) 422-4726 (f)
                                Bill.maguire@hugheshubbard.com
                                Marc.weinstein@hugheshubbard.com
                                Sarah.cave@hugheshubbard.com
                                John.mcgoey@hugheshubbard.com

                                Counsel for Plaintiff Skatteforvaltningen
                                (Customs and Tax Administration of the
                                Kingdom of Denmark)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SKATTEFORVALTNINGEN,<br><br>       Plaintiff,<br><br>   vs.<br><br>AZALEA PENSION PLAN & ELIZABETH<br>VAN MERKENSTEIJN,<br><br>       Defendants. | Civil Action No. _____<br><br>Honorable _____<br><br>February 28, 2019<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Azalea Pension Plan ("**Azalea**") and Elizabeth van Merkensteijn ("**van Merkensteijn**") as follows:

I.  **INTRODUCTION**

1.  Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.  This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.  The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1. At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Azalea, as well as entities in the United Kingdom, Canada, Malaysia,

and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7. As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8. On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9. The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a. The Authorized Representatives of the claimants, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 34,238,065, or at least $5,180,000 (US)[2], plus interest.

## II.      JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes. SKAT is located at Østbanegade 123, 2200 København Ø, Denmark. During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Azalea is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 30 Frost Creek Drive, Locust Valley, New York 11560, USA. On information and belief, each participant, or member, of Defendant Azalea is a citizen of a State of the United States. At all times material to the allegations in this Complaint, Defendant Azalea purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant van Merkensteijn is a citizen of the State of New York. Defendant van Merkensteijn was the sole participant in Defendant Azalea. At times material to the allegations in this Complaint, Defendant van Merkensteijn resided at 30 Frost Creek Drive, Locust Valley, New York 11560, the same address listed by at least two claimants in their fraudulent refund claims to SKAT, including Defendant Azalea. At times material to the allegations in this Complaint, Defendant van Merkensteijn also resided at 211 Central Park West, Apartment 2G, New York, NY 10024 and 60 Riverside Boulevard, Apartment 2101, New York, NY 10069, the same addresses listed by an additional four combined claimants.

5

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

19.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

_____

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

**B.    The Fraudulent Scheme**

25.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 32 through 53 below.

**1.    The Fraudulent Refund Claims Process**

26.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

27.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.      the bank account to which SKAT should pay the claim;

      c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

      d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

      e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.    The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.    It was SKAT's practice to pay claims that included the required supporting documentation.

31.    SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.    The Role of the Claimants

32.    Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.    Each of the claimants, including Defendant Azalea, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Azalea represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Azalea made thirteen (13) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 34,238,065, or at least $5,180,000 (US). These refund claims were submitted to SKAT on the following dates: December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and August 19, 2014.

37.     In fact, Defendant Azalea did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Azalea on the following dates: December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and August 29, 2014.

39.     On information and belief, Defendant van Merkensteijn caused Defendant Azalea's fraudulent claims to be submitted to SKAT, evidenced in part by the fact that Defendant Azalea used Defendant van Merkensteijn's New York home address in its fraudulent refund claims to SKAT. Defendant van Merkensteijn exerted control over Defendant Azalea as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant van Merkensteijn's

husband, non-party John van Merkensteijn, was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans. John van Merkensteijn also signed Power of Attorney documents as the Authorized Representative of six claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index. Two of these claimants listed an address of 425 Park Avenue, New York, NY 10022 in their fraudulent claims to SKAT, and two others listed Defendant van Merkensteijn's home address of 211 Central Park West, Apartment 2G, New York, NY 10024.

40.     Defendant van Merkensteijn also participated in the fraudulent scheme through her involvement with non-party Azalea LLC, the plan sponsor of Defendant Azalea. Azalea LLC was formed on June 11, 2013, less than six months before Defendant Azalea's first refund claims to SKAT. Defendant van Merkensteijn signed the Certificate of Cancellation of Azalea LLC filed with the State of Delaware, which listed her as the "Authorized Person" of Azalea LLC.

### 3.     The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     The non-party Authorized Representative executed at the direction of, and on behalf of, Defendant Azalea a "Special Power of Attorney" dated November 26, 2013, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Azalea's] name for which [Azalea is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Azalea is] entitled on [Azalea's] behalf." The Authorized Representative described himself as the "Authorized Representative" of Defendant Azalea.

43.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for the Authorized Representative and be subject to his direction and control with respect to Defendant Azalea's claims to SKAT.

44.     Defendant Azalea's Authorized Representative signed Power of Attorney documents for at least 24 of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Azalea.

45.     Defendant Azalea's Authorized Representative signed for at least one other claimant which, in its requests to SKAT for tax refunds, also listed Defendant van Merkensteijn's address of 30 Frost Creek Drive, Locust Valley, NY 11560, USA.

### 4.     The Role of the Payment Agents

46.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

47.     By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

48.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

49.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

       c.        enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

       d.        requested that SKAT pay the claim to its bank account.

50.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

51.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

52.      By way of example, with respect to Defendant Azalea, one example of a "Dividend Credit Advice":

       a.        is made out by Solo Capital Partners LLP;

       b.        is dated August 13, 2014;

       c.        purports to certify Defendant Azalea's ownership of 3,682,430 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

       d.        states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

53. Defendant Azalea never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against All Defendants)

54. SKAT repeats and realleges paragraphs 1 through 53 above as if fully set forth herein.

55. Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 51 through 53 to support claims for withholding tax refund payments.

56. Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

57. In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 34,238,065, or at least $5,180,000 (US), and thereby suffered damages of that amount, plus interest.

58. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

59. SKAT repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60. As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

61.     As alleged in paragraphs 25 through 53 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

62.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

63.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 53 above.

64.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

65.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT III**</u>

**(Payment By Mistake – Against All Defendants)**

66.     SKAT repeats and realleges paragraphs 1 through 65 above as if fully set forth herein.

67.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

68.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

69.     SKAT's mistaken belief was material to its decision to pay the claims.

70.     SKAT suffered a loss as a result of its mistaken payments.

71.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

72.     SKAT repeats and realleges paragraphs 1 through 71 above as if fully set forth herein.

73.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

74.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

75.     SKAT suffered a loss because of the Defendants' unjust enrichment.

76.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

77.     SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

79.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

80.    SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

82.    Defendants made material misstatements described in paragraphs 28-29, 36 and 51 through 53 above in connection with every withholding tax refund claim submitted on behalf of Defendant Azalea to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

83.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

84.    SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 34,238,065, or at least $5,180,000 (US), plus interest.


## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| OMINECA PENSION PLAN, JOHN VAN MERKENSTEIJN, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Omineca Pension Plan ("**Omineca**"), John van Merkensteijn ("**van Merkensteijn**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.      **INTRODUCTION**

1.      Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.      This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.      The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Omineca, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

      a.     The Authorized Representatives of the claimants, such as Defendant Ben-Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 90,528,784, or at least $13,698,000 (US)[2], plus interest.

## II.      JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III. **PARTIES**

16. Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes. SKAT is located at Østbanegade 123, 2200 København Ø, Denmark. During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17. Defendant Omineca is a pension plan which, in its requests to SKAT for tax refunds, listed its address as both 211 Central Park West, Apartment 2G, New York, NY 10024, and 60 Riverside Boulevard, Room 2101, New York, NY 10069, USA. On information and belief, each participant, or member, of Defendant Omineca is a citizen of a State of the United States. At all times material to the allegations in this Complaint, Defendant Omineca purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18. Defendant van Merkensteijn is a citizen of the State of New York. Defendant van Merkensteijn was the sole participant in Defendant Omineca. At times material to the allegations in this Complaint, Defendant van Merkensteijn resided at both 211 Central Park West, Apartment 2G, New York, NY 10024 and 60 Riverside Boulevard, Apartment 2101, New York, NY 10069, the two New York addresses listed by Defendant Omineca in its fraudulent refund claims to SKAT.

19. Defendant Ben-Jacob is a citizen of the State of New York. Defendant Ben-Jacob served as an Authorized Representative for Defendant Omineca.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

**B.**     **The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian. The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

    **1.**     **The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-parties Acupay System LLC ("**Acupay**") and Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

    a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

    b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

    i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

    ii.     the amount of the tax refund claim;

    iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.      the bank account to which SKAT should pay the claim;

c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.      It was SKAT's practice to pay claims that included the required supporting documentation.

32.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

## 2.      The Role of the Claimants

33.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.      Each of the claimants, including Defendant Omineca, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.      As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Omineca represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Omineca's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Omineca represented that non-parties Acupay and Goal were its agents and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Omineca made twenty (20) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 90,528,784, or at least $13,698,000 (US). These refund claims were submitted to SKAT on the following dates: June 27, 2014; October 16, 2014; April 24, 2015; May 1, 2015; and May 22, 2015.

38.     In fact, Defendant Omineca did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Omineca on the following dates: July 31, 2014; October 31, 2014; May 19, 2015; and July 6, 2015.

40.     On information and belief, Defendant van Merkensteijn caused Defendant Omineca's fraudulent claims to be submitted to SKAT, evidenced in part by the fact that Defendant Omineca used Defendant van Merkensteijn's home addresses of 211 Central Park West, Apartment 2G, New York, NY and 60 Riverside Boulevard, Apartment 2101, New York, NY in its fraudulent claims to SKAT. Defendant van Merkensteijn exerted control over Defendant

Omineca as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant van Merkensteijn was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans. Defendant van Merkensteijn's wife was also the sole participant in a pension plan that submitted fraudulent claims to SKAT.

41.     At times material to the allegations in this Complaint, Defendant van Merkensteijn served as a Managing Director of a financial services firm based at 40 West 57th Street, New York, NY.  At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT.  In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

42.     Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative of at least six claimants.  Two of these claimants listed the financial services firm's West 57th Street address in their fraudulent refund claims to SKAT, and a third listed Defendant van Merkensteijn's New York home address.

### 3.     The Role of the Claimants' Authorized Representatives

43.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

44.     Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Omineca a "Special Power of Attorney" dated October 10, 2014, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Omineca's] name for

which [Omineca is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Omineca is] entitled on [Omineca's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Omineca.

45.    As a result of the executed Special Power of Attorney, Payment Agent Acupay agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Omineca's claims to SKAT.

46.    Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Omineca.

### 4.    The Role of the Payment Agents

47.    The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.    By means of the Power of Attorney described in paragraphs 43-44 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.    With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

50.    In connection with each Claim Form, the Payment Agent:

   a.    provided its email address as the contact address for the claimant on whose behalf it was acting;

   b.    signed and stamped the form, and stated it was applying on behalf of the claimant;

11

c.       enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.       requested that SKAT pay the claim to its bank account.

51.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.      The Role of the Broker-Custodians**

52.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.      By way of example, with respect to Defendant Omineca, one example of a "Dividend Credit Advice":

a.       is made out by Solo Capital Partners LLP;

b.       is dated May 11, 2015;

c.       purports to certify Defendant Omineca's ownership of 1,461,526 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.       states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.     Defendant Omineca never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

#### (Fraud – Against All Defendants)

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 52 through 54 to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 90,528,784, or at least $13,698,000 (US), and thereby suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

#### (Aiding and Abetting Fraud – Against All Defendants)

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

67.     SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.     SKAT's mistaken belief was material to its decision to pay the claims.

71.     SKAT suffered a loss as a result of its mistaken payments.

72.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.     SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.     SKAT suffered a loss because of the Defendants' unjust enrichment.

77.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.     SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

81.     SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.     Defendants made material misstatements described in paragraphs 29-30, 37, and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Omineca to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 90,528,784, or at least $13,698,000 (US), plus interest.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2. For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3. For Counts I and II, punitive damages.

4. The costs of this action.

5. All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| BATAVIA CAPITAL PENSION PLAN & RICHARD MARKOWITZ, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Batavia Capital Pension Plan ("**Batavia Capital**") and Richard Markowitz ("**Markowitz**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Batavia Capital, as well as entities in the United Kingdom, Canada,

Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.　　The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.　　The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.　　The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.　　SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.　　As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.　　As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 32,466,334, or at least $4,912,000 (US)[2], plus interest.

## II.　JURISDICTION & VENUE

14.　　Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.　This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

III.    **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Batavia Capital is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 234 Centre Island Road, Oyster Bay, New York 11771, USA.  On information and belief, each participant, or member, of Defendant Batavia Capital is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Batavia Capital purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Markowitz is a citizen of the State of New York.  Defendant Markowitz was the sole participant in Defendant Batavia Capital.  At times material to the allegations in this Complaint, Defendant Markowitz resided at 234 Centre Island Road, Oyster Bay, NY 11771, the same address listed by at least two claimants in their fraudulent refund claims to SKAT, including Defendant Batavia Capital.  At times material to the allegations in this Complaint, Defendant Markowitz also resided at 1010 Fifth Avenue, Apartment 1D, New York, NY 10028, the same address listed by an additional two claimants in their fraudulent refund claims to SKAT.  Defendant Markowitz was the sole participant in both of these pension plans as well.

5

Case 1:19-cv-01895  Document 1-1  Filed 02/28/19  Page 8 of 130

## IV.  FACTUAL ALLEGATIONS

### A.  The Danish Withholding Tax System

19.  Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.  Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.  Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.  A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.  SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.  It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

25.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.    The respective roles of each of these participants are described in further detail in paragraphs 32 through 54 below.

1.    **The Fraudulent Refund Claims Process**

26.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

27.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

    iv.  the bank account to which SKAT should pay the claim;

   c.  a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

   d.  a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

   e.  in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.  The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.  It was SKAT's practice to pay claims that included the required supporting documentation.

31.  SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

    **2.**  **The Role of the Claimants**

32.  Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.  Each of the claimants, including Defendant Batavia Capital, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Batavia Capital represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Batavia Capital made thirteen (13) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 32,466,334, or at least $4,912,000 (US). These refund claims were submitted to SKAT on the following dates: December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and September 4, 2014.

37.     In fact, Defendant Batavia Capital did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Batavia Capital on the following dates: December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and October 9, 2014.

39.     On information and belief, Defendant Markowitz caused Defendant Batavia Capital's fraudulent claims to be submitted to SKAT, evidenced in part by the fact that Defendant Markowitz's home address of 234 Centre Island Road, Oyster Bay, NY was used by Defendant Batavia Capital in its fraudulent claims to SKAT. Defendant Markowitz exerted control over Defendant Batavia Capital as the plan's sole participant, and used this control to commit the fraud

on SKAT. Defendant Markowitz was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans. Defendant Markowitz's wife was also the sole participant in a pension plan that submitted fraudulent claims to SKAT.

40. At times material to the allegations in this Complaint, Defendant Markowitz served as a Managing Director of a financial services firm based at 40 West 57th Street, New York, NY. At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT. In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

41. Defendant Markowitz signed Power of Attorney documents as the Authorized Representative of at least four claimants that submitted fraudulent refund claims to SKAT. One of these claimants, non-party Routt Capital Pension Plan, listed Defendant Markowitz's other New York home address of 1010 Fifth Avenue, Apartment 1D, New York, NY, in its fraudulent claims to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

42. Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43. The non-party Authorized Representative executed at the direction of, and on behalf of, Defendant Batavia Capital a "Special Power of Attorney" dated November 30, 2013, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Batavia Capital's] name for which [Batavia Capital is] eligible, to oversee this

process, and to collect refunds of excess withholding tax to which [Batavia Capital is] entitled on [Batavia Capital's] behalf."  The Authorized Representative described himself as the "Authorized Representative" of Defendant Batavia Capital.

44.    As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for the Authorized Representative and be subject to his direction and control with respect to Defendant Batavia Capital's claims to SKAT.

45.    Defendant Batavia Capital's Authorized Representative signed Power of Attorney documents as the Authorized Representative for at least 24 of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Batavia Capital.

46.    Defendant Batavia's Authorized Representative signed the Power of Attorney document for at least one other claimant which, in its requests to SKAT for tax refunds, also listed Defendant Markowitz's home address of 234 Centre Island Road, Oyster Bay, NY 11771, USA.

### 4.    The Role of the Payment Agents

47.    The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.    By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and Authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.    With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

50.    In connection with each Claim Form, the Payment Agent:

a.    provided its email address as the contact address for the claimant on whose behalf it was acting;

b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.      requested that SKAT pay the claim to its bank account.

51.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

52.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.      By way of example, with respect to Defendant Batavia Capital, one example of a "Dividend Credit Advice":

a.      is made out by Solo Capital Partners LLP;

b.      is dated August 13, 2014;

c.      purports to certify Defendant Batavia Capital's ownership of 3,642,396 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

       d.      states an International Securities Identification Number ("**ISIN**") for TDC

A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that

uniquely identifies securities for trading and settlement purposes.

54.     Defendant Batavia Capital never owned the shares described above, never received

any dividend from Danish companies in which it was a purported shareholder and was not entitled

to claim a refund of dividend withholding tax.

<div align="center">

**CAUSES OF ACTION**

**COUNT I**

**(Fraud – Against All Defendants)**

</div>

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth

herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made

the material, false and fraudulent statements described in paragraphs 28-29, 36 and 52 through 54

to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made

these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless

withholding tax refund claims of DKK 32,466,334, or at least $4,912,000 (US), and thereby

suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral

turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<div align="center">13</div>

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 25 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 54 above.

65.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

67.     SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.     SKAT's mistaken belief was material to its decision to pay the claims.

71.     SKAT suffered a loss as a result of its mistaken payments.

72.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

<div align="center"><b><u>COUNT IV</u></b></div>

<div align="center"><b>(Unjust Enrichment – Against All Defendants)</b></div>

73.     SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.     SKAT suffered a loss because of the Defendants' unjust enrichment.

77.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

<div align="center"><b><u>COUNT V</u></b></div>

<div align="center"><b>(Money Had & Received – Against All Defendants)</b></div>

78.     SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

<u>COUNT VI</u>

**(Negligent Misrepresentation – Against All Defendants)**

81.     SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.     Defendants made material misstatements described in paragraphs 28-29, 36 and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Batavia Capital to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 32,466,334, or at least $4,912,000 (US), plus interest.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave                              
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| ROUTT CAPITAL PENSION PLAN & RICHARD MARKOWITZ, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Routt Capital Pension Plan ("**Routt Capital**") and Richard Markowitz ("**Markowitz**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Routt Capital, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

    a.      The Authorized Representatives of the claimants, such as Defendant Markowitz, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b. The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c. The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10. The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11. SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12. As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13. As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 65,585,864, or at least $9,924,000 (US)[2], plus interest.

## II. JURISDICTION & VENUE

14. Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2. This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Routt Capital is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 1010 Fifth Avenue, Apartment 1D, New York, NY 10028, USA.  On information and belief, each participant, or member, of Defendant Routt Capital is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Routt Capital purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Markowitz is a citizen of the State of New York.  Defendant Markowitz was the sole participant in Defendant Routt Capital and served as its Authorized Representative.  At times material to the allegations in this Complaint, Defendant Markowitz resided at 1010 Fifth Avenue, Apartment 1D, New York, NY 10028, the same address listed by at least two claimants in their fraudulent tax refund claims to SKAT, including Defendant Routt Capital.

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

19.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.     **The Fraudulent Scheme**

25.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 32 through 52 below.

1.     **The Fraudulent Refund Claims Process**

26.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-parties Acupay System LLC ("**Acupay**") and Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

27.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.     the bank account to which SKAT should pay the claim;

      c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

      d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

      e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.     It was SKAT's practice to pay claims that included the required supporting documentation.

31.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

32.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.     Each of the claimants, including Defendant Routt Capital, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Routt Capital represented that Defendant Markowitz was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Routt Capital's claims.

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Routt Capital represented that non-parties Acupay and Syntax were its agents and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Routt Capital made twenty-five (25) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 65,585,864, or at least $9,924,000 (US). These refund claims were submitted to SKAT on the following dates: May 8, 2014; May 15, 2014; October 16, 2014; October 31, 2014; December 15, 2014; March 31, 2015; April 17, 2015; May 1, 2015; and May 22, 2015.

37.     In fact, Defendant Routt Capital did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Routt Capital on the following dates: May 27, 2014; July 3, 2014; January 7, 2015; April 29, 2015; May 19, 2015; and July 6, 2015.

39.     On information and belief, Defendant Markowitz caused Defendant Routt Capital's fraudulent claims to be submitted to SKAT, evidenced in part by the fact that Defendant Routt Capital used Defendant Markowitz's New York home address in its fraudulent claims to SKAT. Defendant Markowitz exerted control over Defendant Routt Capital as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Markowitz was the sole participant

in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans. Defendant Markowitz's wife was also the sole participant in a pension plan that submitted fraudulent claims to SKAT.

40. At times material to the allegations in this Complaint, Defendant Markowitz served as a Managing Director of a financial services firm based at 40 West 57th Street, New York, NY. At least nine claimants listed that firm's West 57th Street address in their fraudulent refund claims to SKAT. In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

### 3.    The Role of the Claimants' Authorized Representatives

41. Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42. Defendant Markowitz executed at the direction of, and on behalf of, Defendant Routt Capital a "Special Power of Attorney" dated August 21, 2014, that granted to Payment Agent Acupay authority "to pursue and file for reductions in rates of tax withholding in [Routt Capital's] name for which [Routt Capital is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Routt Capital is] entitled on [Routt Capital's] behalf." Defendant Markowitz described himself as the "Trustee" of Defendant Routt Capital.

43. As a result of the executed Special Power of Attorney, Payment Agent Acupay agreed to act for Defendant Markowitz and be subject to his direction and control with respect to Defendant Routt Capital's claims to SKAT.

44.     Defendant Markowitz signed Power of Attorney documents as the Authorized Representative for at least four of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Routt Capital.  Defendant Routt Capital listed Defendant Markowitz's New York home address in its fraudulent refund claims to SKAT, and the other three claimants listed an address of 425 Park Avenue, New York, NY 10022.

### 4.     The Role of the Payment Agents

45.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

46.     By means of the Power of Attorney documents described in paragraphs 41-42 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

47.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

48.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

49.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.     The Role of the Broker-Custodians

50.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

51.     By way of example, with respect to Defendant Routt Capital, one example of an "Income Advice":

   a.  is made out by Old Park Lane Capital PLC;

   b.  is dated May 11, 2015;

   c.  purports to certify Defendant Routt Capital's ownership of 884,983 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

   d.  states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

52.     Defendant Routt Capital never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against All Defendants)

53.     SKAT repeats and realleges paragraphs 1 through 52 above as if fully set forth herein.

54.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36, and 50 through 52 to support claims for withholding tax refund payments.

55.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

56.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 65,585,864, or at least $9,924,000 (US) and thereby suffered damages of that amount, plus interest.

57.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

58.     SKAT repeats and realleges paragraphs 1 through 57 above as if fully set forth herein.

59.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

60.     As alleged in paragraphs 25 through 52 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

61.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

62.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 52 above.

63.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

64.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

65.     SKAT repeats and realleges paragraphs 1 through 64 above as if fully set forth herein.

66.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

67.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

68.     SKAT's mistaken belief was material to its decision to pay the claims.

69.     SKAT suffered a loss as a result of its mistaken payments.

70.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

71.     SKAT repeats and realleges paragraphs 1 through 70 above as if fully set forth herein.

72.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

73.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

74.     SKAT suffered a loss because of the Defendants' unjust enrichment.

75.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

76.     SKAT repeats and realleges paragraphs 1 through 75 above as if fully set forth herein.

77.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

78.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

79.     SKAT repeats and realleges paragraphs 1 through 78 above as if fully set forth herein.

80.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

81.     Defendants made material misstatements described in paragraphs 28-29, 36, and 50 through 52 above in connection with every withholding tax refund claim submitted on behalf of Defendant Routt Capital to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

82.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

83.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 65,585,864, or at least $9,924,000 (US), plus interest.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.


## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

                              Respectfully submitted,


                              HUGHES HUBBARD & REED LLP


                               s/ Sarah L. Cave
                              William R. Maguire
                              Marc A. Weinstein
                              Sarah L. Cave
                              John T. McGoey
                              One Battery Park Plaza
                              New York, New York 10004-1482
                              (212) 837-6000 (t)
                              (212) 422-4726 (f)
                              Bill.maguire@hugheshubbard.com
                              Marc.weinstein@hugheshubbard.com
                              Sarah.cave@hugheshubbard.com
                              John.mcgoey@hugheshubbard.com

                              Counsel for Plaintiff Skatteforvaltningen
                              (Customs and Tax Administration of the
                              Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| RJM CAPITAL PENSION PLAN & RICHARD MARKOWITZ, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants RJM Capital Pension Plan ("**RJM Capital**") and Richard Markowitz ("**Markowitz**") as follows:

I.     **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant RJM Capital, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

      a.      The Authorized Representatives of the claimants, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

3

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 59,487,345, or at least $9,001,000 (US)[2], plus interest.

## II.      JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant RJM Capital is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 1010 Fifth Avenue, Suite 1D, New York, NY 10028, USA.  On information and belief, each participant, or member, of Defendant RJM Capital is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant RJM Capital purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Markowitz is a citizen of the State of New York.  Defendant Markowitz was the sole participant in Defendant RJM Capital.  At times material to the allegations in this Complaint, Defendant Markowitz resided at 1010 Fifth Avenue, Apartment 1D, New York, NY 10028, the same address listed by at least two claimants in their fraudulent refund claims to SKAT, including Defendant RJM Capital.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

19.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

25.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.  The respective roles of each of these participants are described in further detail in paragraphs 32 through 53 below.

1.    **The Fraudulent Refund Claims Process**

26.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

27.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

iv.     the bank account to which SKAT should pay the claim;

c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.     It was SKAT's practice to pay claims that included the required supporting documentation.

31.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

32.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.     Each of the claimants, including Defendant RJM Capital, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.    As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.

35.    As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant RJM Capital represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

36.    Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant RJM Capital made twenty-four (24) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 59,487,345, or at least $9,001,000 (US). These refund claims were submitted to SKAT on the following dates: April 3, 2013; April 8, 2013; April 12, 2013; April 17, 2013; April 23, 2013; April 26, 2013; April 30, 2013; August 21, 2013; December 6, 2013; December 13, 2013; March 14, 2014; March 24, 2014; March 25, 2014; March 26, 2014; March 28, 2014; April 8, 2014; April 10, 2014; May 19, 2014; August 21, 2014; and September 15, 2014.

37.    In fact, Defendant RJM Capital did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.    Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant RJM Capital on the following dates: April 15, 2013; April 29, 2013; May 7, 2013; May 13, 2013; September 9, 2013; December 17, 2013; December 20, 2013; March 26, 2014; April 23, 2014; April 24, 2014; May 6, 2014; June 17, 2014; September 3, 2014; and October 9, 2014.

39.    On information and belief, Defendant Markowitz caused Defendant RJM Capital's fraudulent claims to be submitted to SKAT, evidenced in part by the fact that Defendant RJM

Capital used Defendant Markowitz's New York home address in its fraudulent refund claims to SKAT. Defendant Markowitz exerted control over Defendant RJM Capital as the plan's sole participant, and used this control to commit the fraud on SKAT. The initials RJM represent Defendant Markowitz's initials from his full name: Richard Jay Markowitz. Defendant Markowitz was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans. Defendant Markowitz's wife was also the sole participant in a pension plan that submitted fraudulent claims to SKAT.

40.     Defendant Markowitz also participated in the fraudulent scheme through his role incorporating non-party RJM Capital LLC, the plan sponsor for Defendant RJM Capital. Defendant Markowitz signed RJM Capital LLC's Certificate of Formation filed with the State of Delaware listing him as the "Authorized Person" of the LLC.

41.     Defendant Markowitz signed Power of Attorney documents as the Authorized Representative of at least four claimants that submitted fraudulent refund claims to SKAT. One of these claimants, non-party Routt Capital Pension Plan, also listed Defendant Markowitz's home address of 1010 Fifth Avenue, Apartment 1D, New York, NY, in its fraudulent claims to SKAT.

42.     At times material to the allegations in this Complaint, Defendant Markowitz served as a Managing Director of a financial services firm based at 40 West 57th Street New York, NY. At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT. In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

### 3.   The Role of the Claimants' Authorized Representatives

43.   Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

44.   The non-party Authorized Representative executed at the direction of, and on behalf of, Defendant RJM Capital a "Power of Attorney" dated March 21, 2013, that granted to non-party Goal authority "to be the attorney of [RJM Capital] and in [RJM Capital's] name and otherwise on [RJM Capital's] behalf and as [RJM Capital's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [RJM Capital] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [RJM Capital] or through [Goal] on behalf of [RJM Capital]."  The Authorized Representative described himself as the "Authorized Representative" of Defendant RJM Capital.

45.   As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for the Authorized Representative and be subject to his direction and control with respect to Defendant RJM Capital's claims to SKAT.

### 4.   The Role of the Payment Agents

46.   The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

47.   By means of the Power of Attorney described in paragraphs 43-44 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and subject to their control with respect to submitting the withholding tax refund claims.

48.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

49.     In connection with each Claim Form, the Payment Agent:

a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.      requested that SKAT pay the claim to its bank account.

50.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

## 5.     The Role of the Broker-Custodians

51.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

52.     By way of example, with respect to Defendant RJM Capital, one example of a "Dividend Credit Advice":

a.      is made out by Solo Capital Partners LLP;

b.      is dated August 13, 2014;

      c.     purports to certify Defendant RJM Capital's ownership of 3,660,794 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

      d.     states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

53.     Defendant RJM Capital never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

54.     SKAT repeats and realleges paragraphs 1 through 53 above as if fully set forth herein.

55.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36, and 51 through 53 to support claims for withholding tax refund payments.

56.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

57.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 59,487,345, or at least $9,001,000 (US) and thereby suffered damages of that amount, plus interest.

58.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

59.     SKAT repeats and realleges paragraphs 1 through 58 above as if fully set forth herein.

60.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

61.     As alleged in paragraphs 25 through 53 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

62.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

63.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 53 above.

64.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

65.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

66.     SKAT repeats and realleges paragraphs 1 through 65 above as if fully set forth herein.

67.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

68.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

69.     SKAT's mistaken belief was material to its decision to pay the claims.

70.     SKAT suffered a loss as a result of its mistaken payments.

71.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

72.     SKAT repeats and realleges paragraphs 1 through 71 above as if fully set forth herein.

73.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

74.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

75.     SKAT suffered a loss because of the Defendants' unjust enrichment.

76.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

77.     SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

79.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

82.     Defendants made material misstatements described in paragraphs 28-29, 36, and 51 through 53 above in connection with every withholding tax refund claim submitted on behalf of Defendant RJM Capital to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

83.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

84.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 59,487,345, or at least $9,001,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

16

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent
        misrepresentation, the damages sustained by SKAT as a result of the Defendants'
        wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money
        had and received, the damages sustained or the amounts by which the Defendants
        were paid by mistake or unjustly enriched, or by which the Defendants received
        money to which they were not entitled, plus pre-judgment interest, fees, costs and
        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com

Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| CALYPSO INVESTMENTS PENSION PLAN & JOCELYN MARKOWITZ, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Calypso Investments Pension Plan ("**Calypso**") and Jocelyn Markowitz ("**Markowitz**") as follows:

## I. INTRODUCTION

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.  At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Calypso, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

    b.    The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

    c.    The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.    The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.    SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.    As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.    As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 33,379,513, or at least $5,050,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.    Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   **PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Calypso is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 234 Centre Island Road, Oyster Bay, New York 11771, USA.  On information and belief, each participant, or member, of Defendant Calypso is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Calypso purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Markowitz is a citizen of the State of New York.  Defendant Markowitz was the sole participant in Defendant Calypso.  At times material to the allegations in this Complaint, Defendant Markowitz resided at 234 Centre Island Road, Oyster Bay, NY 11771, the same address listed by at least two claimants in their fraudulent refund claims to SKAT, including Defendant Calypso.  At times material to the allegation in this Complaint, Defendant Markowitz also resided at 1010 Fifth Avenue, Apartment 1D, New York, NY 10028, the same address listed by an additional two claimants.

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

19.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.     **The Fraudulent Scheme**

25.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 32 through 52 below.

1.     **The Fraudulent Refund Claims Process**

26.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

27.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.     the bank account to which SKAT should pay the claim;

      c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

      d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

      e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.     It was SKAT's practice to pay claims that included the required supporting documentation.

31.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

32.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.     Each of the claimants, including Defendant Calypso, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Calypso represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Calypso made thirteen (13) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 33,379,513, or at least $5,050,000 (US).  These refund claims were submitted to SKAT on the following dates:  December 6, 2013; December 13, 2013; March 20, 2014; March 24, 2014; March 25, 2014; March 26, 2014; March 28, 2014; April 8, 2014; April 10, 2014; May 19, 2014; and September 1, 2014.

37.     In fact, Defendant Calypso did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Calypso on the following dates:  December 17, 2013; December 20, 2013; April 23, 2014; April 24, 2014; May 6, 2014; June 17, 2014; and October 9, 2014.

39.     On information and belief, Defendant Markowitz caused Defendant Calypso's fraudulent claims to be submitted to SKAT, evidenced in part by the fact that Defendant Calypso used Defendant Markowitz's New York home address in its fraudulent refund claims to SKAT. Defendant Markowitz exerted control over Defendant Calypso as the plan's sole participant, and

used this control to commit the fraud on SKAT.  Defendant Markowitz's husband, non-party Richard Markowitz, was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans. Richard Markowitz also signed Power of Attorney documents as the Authorized Representative of four claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.  Three of these claimants listed an address of 425 Park Avenue, New York, NY 10022 in their fraudulent claims to SKAT, and the third listed Defendant Markowitz's home address of 1010 Fifth Avenue, Apartment 1D, New York, NY 10028.

### 3. The Role of the Claimants' Authorized Representatives

40.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

41.    The non-party Authorized Representative executed at the direction of, and on behalf of, Defendant Calypso a "Power of Attorney" dated November 25, 2013, that granted to Payment Agent Goal authority "to be the attorney of [Calypso] and in [Calypso's] name and otherwise on [Calypso's] behalf and as [Calypso's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Calypso] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Calypso] or through [Goal] on behalf of [Calypso]."  The Authorized Representative described himself as the "Duly authorized signatory" of Defendant Calypso.

10

42.     As a result of the executed Power of Attorney, Payment Agent Calypso also agreed to act for the Authorized Representative and be subject to his direction and control with respect to Defendant Calypso's claims to SKAT.

43.     Defendant Calypso's Authorized Representative signed Power of Attorney documents as the Authorized Representative for at least 24 of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Calypso.

44.     Defendant Calypso's Authorized Representative signed the Power of Attorney document for at least one other claimant which, in its requests to SKAT for tax refunds, also listed Defendant Markowitz's home address of 234 Centre Island Road, Oyster Bay, NY 11771, USA.

### 4.     The Role of the Payment Agents

45.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

46.     By means of the Power of Attorney described in paragraphs 40-41 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

47.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

48.     In connection with each Claim Form, the Payment Agent:

a.       provided its email address as the contact address for the claimant on whose behalf it was acting;

b.       signed and stamped the form, and stated it was applying on behalf of the claimant;

       c.        enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

       d.        requested that SKAT pay the claim to its bank account.

49.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants. On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.       The Role of the Broker-Custodians**

50.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

51.      By way of example, with respect to Defendant Calypso, one example of a "Dividend Credit Advice":

       a.        is made out by Solo Capital Partners LLP;

       b.        is dated August 13, 2014;

       c.        purports to certify Defendant Calypso's ownership of 3,692,814 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

       d.        states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

52.     Defendant Calypso never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against All Defendants)

53.     SKAT repeats and realleges paragraphs 1 through 52 above as if fully set forth herein.

54.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 50 through 52 to support claims for withholding tax refund payments.

55.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

56.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 33,379,513, or at least $5,050,000 (US), and thereby suffered damages of that amount, plus interest.

57.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

58.     SKAT repeats and realleges paragraphs 1 through 57 above as if fully set forth herein.

59.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

13

60.     As alleged in paragraphs 25 through 52 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

61.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

62.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 52 above.

63.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

64.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

65.     SKAT repeats and realleges paragraphs 1 through 64 above as if fully set forth herein.

66.     This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

67.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

68.     SKAT's mistaken belief was material to its decision to pay the claims.

69.     SKAT suffered a loss as a result of its mistaken payments.

70.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

71.     SKAT repeats and realleges paragraphs 1 through 70 above as if fully set forth herein.

72.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

73.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

74.     SKAT suffered a loss because of the Defendants' unjust enrichment.

75.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

76.     SKAT repeats and realleges paragraphs 1 through 75 above as if fully set forth herein.

77.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

78.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

79.     SKAT repeats and realleges paragraphs 1 through 78 above as if fully set forth herein.

80.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

81.     Defendants made material misstatements described in paragraphs 28-29, 36 and 50 through 52 above in connection with every withholding tax refund claim submitted on behalf of Defendant Calypso to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

82.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

83.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 33,379,513, or at least $5,050,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.  For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.  For Counts I and II, punitive damages.

4.  The costs of this action.

5.  All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| MICHELLE INVESTMENTS PENSION PLAN, JOHN VAN MERKENSTEIJN, and RICHARD MARKOWITZ, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Michelle Investments Pension Plan ("**Michelle Investments**"), John van Merkensteijn ("**van Merkensteijn**"), and Richard Markowitz ("**Markowitz**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.       The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.       The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Michelle Investments, as well as entities in the United Kingdom,

Canada, Malaysia, and Luxembourg.

6.       On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.    As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.    On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.    The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.    The Authorized Representatives of the claimants, such as Defendant van Merkensteijn, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

3

b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 73,864,112, or at least $11,176,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Michelle Investments is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 40 West 57th Street, New York, NY 10019, USA.  On information and belief, each participant, or member, of Defendant Michelle Investments is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Michelle Investments purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant van Merkensteijn is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant van Merkensteijn was a participant in and served as the Authorized Representative of Defendant Michelle Investments.

19.     Defendant Markowitz is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Markowitz was also a participant in Defendant Michelle Investments.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

### B.    The Fraudulent Scheme

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.  The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

#### 1.    The Fraudulent Refund Claims Process

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.      the bank account to which SKAT should pay the claim;

c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.      It was SKAT's practice to pay claims that included the required supporting documentation.

32.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.      The Role of the Claimants

33.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.      Each of the claimants, including Defendant Michelle Investments, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.      As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Michelle Investments represented that Defendant van Merkensteijn was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Michelle Investments' claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Michelle Investments represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Michelle Investments made twenty-seven (27) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 73,864,112, or at least $11,176,000 (US). One of these refund claims was undated, and the rest were submitted to SKAT on or about the following dates: September 2, 2012; December 10, 2012; March 19, 2013; April 19, 2013; May 16, 2013; August 29, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and August 19, 2014.

38.     In fact, Defendant Michelle Investments did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Michelle Investments on the following dates: September 19, 2012; January 15, 2013; April 10, 2013; May 13, 2013; June 10, 2013; October 1, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and August 29, 2014.

40.     On information and belief, Defendants Markowitz and van Merkensteijn caused Defendant Michelle Investments' fraudulent claims to be submitted to SKAT.  Defendants Markowitz and van Merkensteijn exerted control over Defendant Michelle Investments as the plan's participants, and used this control to commit the fraud on SKAT.  Defendants van Merkensteijn and Markowitz were each the sole participants in six different pension plans that submitted fraudulent refund claims to SKAT and participants with others in three additional plans, including Defendant Michelle Investments.  Defendant van Merkensteijn and Markowitz's wives were also the sole participants in pension plans that submitted fraudulent refund claims to SKAT.

41.     At times material to the allegations in this complaint, Defendants Markowitz and van Merkensteijn served as directors of a financial services firm based at 40 West 57th Street, New York, NY.  At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT, including Defendant Michelle Investments.  In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

42.     Defendant van Merkensteijn's New York home addresses were listed by at least six different claimants that submitted fraudulent refund claims to SKAT, and Defendant Markowitz's New York home addresses were also listed by at least four claimants.

43.     Defendant Markowitz signed Power of Attorney documents as the Authorized Representative for at least four of the 277 U.S. entities that pretended to own shares in Danish companies and that fraudulently requested tax refunds from SKAT.

44.     Defendant Markowitz also participated in the fraudulent scheme through his role incorporating non-party RJM Capital LLC, the plan sponsor of non-party claimant RJM Capital

Pension Plan. Defendant Markowitz signed RJM Capital LLC's Certificate of Formation filed with the State of Delaware listing him as the "Authorized Person" of the LLC.

### 3.     The Role of the Claimants' Authorized Representatives

45.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

46.     Defendant van Merkensteijn executed at the direction of, and on behalf of, Defendant Michelle Investments a "Special Power of Attorney" dated August 3, 2012, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Michelle Investments'] name for which [Michelle Investments is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Michelle Investments is] entitled on [Michelle Investments'] behalf." Defendant van Merkensteijn described himself as the "authorized signer" of Defendant Michelle Investments.

47.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant van Merkensteijn and be subject to his direction and control with respect to Defendant Michelle Investments' claims to SKAT.

48.     Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative for at least six of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT. Two of these claimants, including Defendant Michelle Investments, listed his financial firm's West 57th Street address in their fraudulent refund claims to SKAT, and a third listed Defendant van Merkensteijn's New York home address.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 45-46 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.   On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.     The Role of the Broker-Custodians

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to

show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.     By way of example, with respect to Defendant Michelle Investments, one example of a "Dividend Credit Advice":

        a.      is made out by Solo Capital Partners LLP;

        b.      is dated August 13, 2014;

        c.      purports to certify Defendant Michelle Investments' ownership of 2,772,261 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

        d.      states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Michelle Investments never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.    Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.    In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 73,864,112, or at least $11,176,000 (US), and thereby suffered damages of that amount, plus interest.

61.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.    SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.    As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.    As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.    The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.    The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.    As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.    The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.    SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.    As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.    It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

83.    SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.    Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Michelle Investments to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86. Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.   SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 73,864,112 or at least $11,176,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1. For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2. For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3. For Counts I and II, punitive damages.

4. The costs of this action.

5. All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| REMECE INVESTMENTS LLC PENSION PLAN, JOHN VAN MERKENSTEIJN, and RICHARD MARKOWITZ, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Remece Investments LLC Pension Plan ("**Remece Investments**"), John van Merkensteijn ("**van Merkensteijn**"), and Richard Markowitz ("**Markowitz**"), as follows:

I.   **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Remece Investments, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 57,825,442, or at least $8,750,000 (US)[2], plus interest.

## II.     JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

**III.    PARTIES**

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Remece Investments is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 40 West 57th Street, New York, NY 10019, USA.  On information and belief, each participant, or member, of Defendant Remece Investments is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Remece Investments purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant van Merkensteijn is a citizen of the State of New York.  At all times material to the allegations in the Complaint, Defendant van Merkensteijn was a participant in Defendant Remece Investments.

19.     Defendant Markowitz is a citizen of the State of New York.  At all times material to the allegations in the Complaint, Defendant Markowitz was a participant in Defendant Remece Investments.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.      the bank account to which SKAT should pay the claim;

      c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

      d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

      e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.      It was SKAT's practice to pay claims that included the required supporting documentation.

32.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

## 2.      The Role of the Claimants

33.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.      Each of the claimants, including Defendant Remece Investments, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Remece Investments represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Remece Investments made twenty-three (23) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 57,825,442, or at least $8,750,000 (US).  These refund claims were submitted to SKAT on the following dates:  April 12, 2013; April 17, 2013; April 23, 2013; April 26, 2013; April 30, 2013; August 21, 2013; December 6, 2013; December 13, 2013; March 20, 2014; March 24, 2014; March 25, 2014; March 26, 2014; March 28, 2014; April 8, 2014; April 10, 2014; May 19, 2014; and August 15, 2014.

38.     In fact, Defendant Remece Investments did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Remece Investments on the following dates: April 29, 2013; May 7, 2013; May 13, 2013; September 9, 2013; December 17, 2013; December 20, 2013; April 23, 2014; April 24, 2014; May 6, 2014; June 17, 2014; and September 3, 2014.

40.     On information and belief, Defendants van Merkensteijn and Markowitz caused Defendant Remece Investments' fraudulent claims to be submitted to SKAT.  Defendants van

Merkensteijn and Markowitz exerted control over Defendant Remece Investments as the plan's participants, and used this control to commit the fraud on SKAT. Defendants van Merkensteijn and Markowitz were each the sole participants in six different pension plans that submitted fraudulent refund claims to SKAT and participants with others in three additional plans, including Defendant Remece Investments. Defendants van Merkensteijn and Markowitz's wives were also the sole participants in pension plans that submitted fraudulent refund claims to SKAT.

41.     At times material to the allegations in this Complaint, Defendants van Merkensteijn and Markowitz served as directors at a financial services firm based at 40 West 57th Street, New York, NY. At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT, including Defendant Remece Investments. In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

42.     Defendant van Merkensteijn's New York home addresses were listed by at least six different claimants that submitted fraudulent refund claims to SKAT, and Defendant Markowitz's New York home addresses were also listed by at least four claimants.

43.     Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative of at least six claimants. Two of these claimants listed his financial firm's West 57th Street address in their fraudulent refund claims to SKAT, and a third listed Defendant van Merkensteijn's New York home address.

44.     Defendant Markowitz signed Power of Attorney documents as the Authorized Representative for at least four of the 277 U.S. entities that pretended to own shares in Danish companies and that fraudulently requested tax refunds from SKAT.

45.     Defendant Markowitz also participated in the fraudulent scheme through his role incorporating non-party RJM Capital LLC, the plan sponsor of non-party claimant RJM Capital Pension Plan.  Defendant Markowitz signed RJM Capital LLC's Certificate of Formation filed with the State of Delaware listing him as the "Authorized Person" of the LLC.

### 3.     The Role of the Claimants' Authorized Representatives

46.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

47.     The non-party Authorized Representative executed at the direction of, and on behalf of, Defendant Remece Investments a "Power of Attorney" dated March 21, 2013, that granted to non-party Goal authority "to be the attorney of [Remece Investments] and in [Remece Investments'] name and otherwise on [Remece Investments'] behalf and as [Remece Investments'] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Remece Investments] from time to time, including  the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Remece Investments] or through [Goal] on behalf of [Remece Investments]." The Authorized Representative described himself as the "Authorized Representative" of Defendant Remece Investments.

48.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for the Authorized Representative and be subject to his direction and control with respect to Defendant Remece Investments' claims to SKAT.

### 4. The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 46-47 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

     a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

     b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

     c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

     d.     requested that SKAT pay the claim to its bank account.

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5. The Role of the Broker-Custodians

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to

show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

    55.    By way of example, with respect to Defendant Remece Investments, one example of a "Dividend Credit Advice":

        a.    is made out by Solo Capital Partners LLP;

        b.    is dated August 13, 2014;

        c.    purports to certify Defendant Remece Investments' ownership of 2,790,175 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

        d.    states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

    56.    Defendant Remece Investments never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

### CAUSES OF ACTION

### COUNT I

### (Fraud – Against All Defendants)

    57.    SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

    58.    Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 57,825,442, or at least $8,750,000 (US) and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT II**</u>

**(Aiding and Abetting Fraud – Against All Defendants)**

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

**COUNT III**

**(Payment By Mistake – Against All Defendants)**

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

**COUNT IV**

**(Unjust Enrichment – Against All Defendants)**

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Remece Investments to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 57,825,442, or at least $8,750,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.     For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.     For Counts I and II, punitive damages.

4.     The costs of this action.

5.     All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP

 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| VANDERLEE TECHNOLOGIES PENSION PLAN, DAVID ZELMAN, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Vanderlee Technologies Pension Plan ("**Vanderlee**"), David Zelman ("**Zelman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.     **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.     At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Vanderlee, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Ben-Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.    The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.    The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.    The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.    SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.    As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.    As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 96,371,922, or at least $14,582,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.    Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

### III.    PARTIES

16.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.    Defendant Vanderlee is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 6319 Mill Point Circle, Dallas, Texas 75248, United States.  On information and belief, each participant, or member, of Defendant Vanderlee is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Vanderlee purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.    Defendant Zelman is a citizen of the State of Texas.  Defendant Zelman was the sole participant in Defendant Vanderlee.  At times material to the allegations in this Complaint, Defendant Zelman resided at 6319 Mill Point Circle, Dallas, Texas 75248, the same address listed by Defendant Vanderlee in its fraudulent refund claims to SKAT.

19.    Defendant Ben-Jacob is a citizen of the State of New York.  Defendant Ben-Jacob served as an Authorized Representative for Defendant Vanderlee.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

**B.    The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

**1.    The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-parties Acupay System LLC ("**Acupay**") and Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.     the bank account to which SKAT should pay the claim;

      c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

      d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

      e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Vanderlee, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Vanderlee represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Vanderlee's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Vanderlee represented that non-parties Acupay and Goal were its agents and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Vanderlee made twenty-one (21) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 96,371,922, or at least $14,582,000 (US). These refund claims were submitted to SKAT on the following dates: May 12, 2014; May 28, 2014; October 16, 2014; March 27, 2015; March 31, 2015; April 17, 2015; May 1, 2015; and May 22, 2015.

38.     In fact, Defendant Vanderlee did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Vanderlee on the following dates: June 17, 2014; October 31, 2014; April 29, 2015; May 19, 2015; and July 6, 2015.

40.     On information and belief, Defendant Zelman caused Defendant Vanderlee's fraudulent refund claims to be submitted to SKAT, evidenced in part by the fact that Defendant Zelman's home address of 6319 Mill Point Circle, Dallas, Texas 75248 was used by Defendant Vanderlee in its fraudulent claims to SKAT. Defendant Zelman exerted control over Defendant Vanderlee as the plan's sole participant, and used this control to commit the fraud on SKAT.

Defendant Zelman was the sole participant in five different pension plans that submitted fraudulent refund claims to SKAT.

41.    Defendant Zelman also participated in the fraudulent scheme by serving as the Authorized Representative for at least three different claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.  Each of these three claimants listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022 in the fraudulent tax refund claims they submitted to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

42.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.    Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Vanderlee a "Special Power of Attorney" dated September 3, 2014, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Vanderlee's] name for which [Vanderlee is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Vanderlee is] entitled on [Vanderlee's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Vanderlee.

44.    As a result of the executed Special Power of Attorney, Payment Agent Acupay agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Vanderlee's claims to SKAT.

45.    Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. entities that pretended to own shares in Danish

companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Vanderlee.

46.     At least 34 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index listed Defendant Ben-Jacob's office addresses of either 425 Park Avenue, New York, NY 10022, or 250 West 55th Street, New York, NY 10019, in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

47.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.     By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and subject to their control with respect to submitting the withholding tax refund claims.

49.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29, above.

50.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

51.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and

belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

52.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.    By way of example, with respect to Defendant Vanderlee, one example of a "Dividend Credit Advice":

a.    is made out by Solo Capital Partners LLP;

b.    is dated May 11, 2015;

c.    purports to certify Defendant Vanderlee's ownership of 1,471,358 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.    states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.    Defendant Vanderlee never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

### (Fraud – Against All Defendants)

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37 and 52 through 54 to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 96,371,922, or at least $14,582,000 (US), and thereby suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

67.     SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.     SKAT's mistaken belief was material to its decision to pay the claims.

71.     SKAT suffered a loss as a result of its mistaken payments.

72.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.     SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.     SKAT suffered a loss because of the Defendants' unjust enrichment.

77.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.     SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

81.     SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.     Defendants made material misstatements described in paragraphs 29-30, 37 and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Vanderlee to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 96,371,922, or at least $14,582,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.     For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.     For Counts I and II, punitive damages.

4.     The costs of this action.

5.     All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| CEDAR HILL CAPITAL INVESTMENTS LLC ROTH 401(K) PLAN, EDWIN MILLER, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Cedar Hill Capital Investments LLC Roth 401(K) Plan ("**Cedar Hill**"), Edwin Miller ("**Miller**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Cedar Hill, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

    a.     The Authorized Representatives of the claimants, such as Defendant Miller, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

  b.  The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

  c.  The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

  10.  The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

  11.  SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

  12.  As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

  13.  As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 48,926,930, or at least $7,403,000 (US)[2], plus interest.

## II.  <u>JURISDICTION & VENUE</u>

  14.  Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or territory or of different states or territories.

---

2. This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Cedar Hill is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Cedar Hill is a citizen of a State or Territory of the United States.  At all times material to the allegations in this Complaint, Defendant Cedar Hill purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Miller is a citizen of a State or Territory of the United States.  At all times material to the allegations in this Complaint, Defendant Miller was the sole participant in and served as the Authorized Representative for Defendant Cedar Hill.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Cedar Hill in its fraudulent refund claims to SKAT.

## IV.  FACTUAL ALLEGATIONS

### A.  The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

6

B.      **The Fraudulent Scheme**

26.      As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.      **The Fraudulent Refund Claims Process**

27.      The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.      The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.      Each of the claimants provided the following documentation to SKAT through their designated agents:

a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.      a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.      the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.      the amount of the tax refund claim;

iii.      a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

iv.     the bank account to which SKAT should pay the claim;

c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Cedar Hill, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims.  Defendant Cedar Hill represented that Defendant Miller was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Cedar Hill's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Cedar Hill represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Cedar Hill made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 48,926,930, or at least $7,403,000 (US).  These refund claims were submitted to SKAT on the following dates:  November 27, 2014; March 23, 2015; March 24, 2015; April 14, 2015; April 16, 2015; April 21, 2015; April 23, 2015; April 27, 2015; May 14, 2015.

38.     In fact, Defendant Cedar Hill did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Cedar Hill on the following dates:  December 19, 2014; April 29, 2015; May 8, 2015; May 19, 2015; June 24, 2015; and July 1, 2015.

40.     On information and belief, Defendant Miller caused Defendant Cedar Hill's fraudulent claims to be submitted to SKAT.  Defendant Miller exerted control over Defendant Cedar Hill as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Miller was the sole participant in seven different pension plans that submitted fraudulent refund claims to SKAT.

9

### 3.   The Role of the Claimants' Authorized Representatives

41.   Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.   At the direction of, and on behalf of, Defendant Cedar Hill, Defendant Miller caused the execution at the direction of a "Power of Attorney" dated August 22, 2014, that granted to Payment Agent Goal authority "to be the attorney of [Cedar Hill] and in [Cedar Hill's] name and otherwise on [Cedar Hill's] behalf and as [Cedar Hill's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Cedar Hill] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Cedar Hill] or through [Goal] on behalf of [Cedar Hill]."

43.   As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Miller and be subject to his direction and control with respect to Defendant Cedar Hill's claims to SKAT.

44.   In addition to Defendant Cedar Hill, Defendant Miller served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.   Defendant Ben-Jacob signed the Power of Attorney document as Defendant Miller's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also

allowed Defendant Cedar Hill to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Cedar Hill's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Miller with regard to Defendant Cedar Hill's fraudulent claims to SKAT.

48.     In addition to Defendant Cedar Hill, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41 through 45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

      b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

      c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

      d.     requested that SKAT pay the claim to its bank account.

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.     The Role of the Broker-Custodians

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.     By way of example, with respect to Defendant Cedar Hill, one example of a "Credit Advice":

      a.     is made out by Old Park Lane Capital PLC;

      b.     is dated May 11, 2015;

      c.     purports to certify Defendant Cedar Hill's ownership of 872,650 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

     d.     states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Cedar Hill never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

<div align="center">

**CAUSES OF ACTION**

**COUNT I**

**(Fraud – Against Defendants Cedar Hill and Miller)**

</div>

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 48,926,930, or at least $7,403,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

<div align="center">

**COUNT IV**

**(Unjust Enrichment – Against All Defendants)**

</div>

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

<div align="center">

**COUNT V**

**(Money Had & Received – Against All Defendants)**

</div>

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

<div align="center">15</div>

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Cedar Hill and Miller)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Cedar Hill to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 48,926,930, or at least $7,403,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

16

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| XIPHIAS LLC PENSION PLAN, JOHN VAN MERKENSTEIJN, and RICHARD MARKOWITZ, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Xiphias LLC Pension Plan ("**Xiphias**"), John van Merkensteijn ("**van Merkensteijn**") and Richard Markowitz ("**Markowitz**") as follows:

**I.      INTRODUCTION**

1.      Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.      This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.      The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.      At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Xiphias, as well as entities in the United Kingdom, Canada, Malaysia,

and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant van Merkensteijn, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

3

     b.    The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

     c.    The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.    The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.    SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.    As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.    As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 71,231,865, or at least $10,778,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.    Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.  **PARTIES**

16.     Plaintiff SKAT is agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Xiphias is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 40 West 57th Street, New York, NY 10019, USA.  On information and belief, each participant, or member, of Defendant Xiphias is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Xiphias purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant van Merkensteijn is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant van Merkensteijn was a participant in and served as the Authorized Representative of Defendant Xiphias.

19.     Defendant Markowitz is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Markowitz was also a participant in Defendant Xiphias.

## IV.  FACTUAL ALLEGATIONS

### A.  The Danish Withholding Tax System

20.  Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.  Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.  Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.  A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.  SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.  It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.  The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

        iv.     the bank account to which SKAT should pay the claim;

        c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Xiphias, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Xiphias represented that Defendant van Merkensteijn was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Xiphias' claims.

36. As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Xiphias represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

37. Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Xiphias made twenty-seven (27) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 71,231,865, or at least $10,778,000 (US). One of these refund claims was undated, and the rest were submitted to SKAT on the following dates: October 5, 2012; December 17, 2012; March 19, 2013; April 19, 2013; May 16, 2013; September 20, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 28, 2014; and September 4, 2014.

38. In fact, Defendant Xiphias did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39. Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Xiphias on the following dates: October 30, 2012; January 15, 2013; April 10, 2013; May 13, 2013; June 10, 2013; October 17, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and October 9, 2014.

40. On information and belief, Defendants van Merkensteijn and Markowitz caused Defendant Xiphias' fraudulent claims to be submitted to SKAT. Defendants van Merkensteijn and Markowitz exerted control over Defendant Investments as the plan's participants, and used

this control to commit the fraud on SKAT.  Defendants van Merkensteijn and Markowitz were each the sole participants in six different pension plans that submitted fraudulent refund claims to SKAT and participants with others in three additional plans, including Defendant Xiphias. Defendant van Merkensteijn and Markowitz's wives were also the sole participants in pension plans that submitted fraudulent refund claims to SKAT.

41.     At times material to the allegations in this Complaint, Defendants van Merkensteijn and Markowitz served as directors at a financial services firm based at 40 West 57th Street, New York, NY.  At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT, including Defendant Xiphias.  In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

42.     Defendant van Merkensteijn's New York home addresses were listed by at least six different claimants that submitted fraudulent refund claims to SKAT, and Defendant Markowitz's New York home addresses were also listed by at least four claimants.

43.     Defendant Markowitz signed Power of Attorney documents as the Authorized Representative for at least four of the 277 U.S. entities that pretended to own shares in Danish companies and that fraudulent requested tax refunds from SKAT.

44.     Defendant Markowitz also participated in the fraudulent scheme through his role incorporating non-party RJM Capital LLC, the plan sponsor of non-party claimant RJM Capital Pension Plan.  Defendant Markowitz signed RJM Capital LLC's Certificate of Formation filed with the State of Delaware listing him as the "Authorized Person" of the LLC.

### 3.    The Role of the Claimants' Authorized Representatives

45.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

46.    Defendant van Merkensteijn executed at the direction of, and on behalf of, Defendant Xiphias a "Special Power of Attorney" dated August 3, 2012, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Xiphias'] name for which [Xiphias is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Xiphias is] entitled on [Xiphias'] behalf."  Defendant van Merkensteijn described himself as the "authorized signer" of Defendant Xiphias.

47.    As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant van Merkensteijn and be subject to his direction and control with respect to Defendant Xiphias' claims to SKAT.

48.    Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative for at least six of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT.  Two of these claimants, including Defendant Xiphias, listed his financial firm's West 57th Street address in their fraudulent refund claims to SKAT, and a third listed Defendant van Merkensteijn's New York home address.

### 4.    The Role of the Payment Agents

49.    The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 45-46 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

52.     In connection with each Claim Form, the Payment Agent:

        a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

        b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

        c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

        d.      requested that SKAT pay the claim to its bank account.

53.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

54.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to

show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.     By way of example, with respect to Defendant Xiphias, one example of a "Dividend Credit Advice":

       a.     is made out by Solo Capital Partners LLP;

       b.     is dated August 13, 2014;

       c.     purports to certify Defendant Xiphias' ownership of 3,504,359 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

       d.     states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Xiphias never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37 and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 71,231,865, or at least $10,778,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37 and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Xiphias to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 71,231,865, or at least $10,778,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| GREEN SCALE MANAGEMENT LLC ROTH 401(K) PLAN, EDWIN MILLER, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Green Scale Management LLC Roth 401(K) Plan ("**Green Scale**"), Edwin Miller ("**Miller**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.    <u>**INTRODUCTION**</u>

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4. The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5. The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Green Scale, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6. On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

        a.      The Authorized Representatives of the claimants, such as Defendant Ben-
        Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants
        documents authorizing the Payment Agents to submit the claimants' tax refund claims and
        to receive from SKAT payments in respect of those claims;

b.       The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and their authorized representatives; and

c.       The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 69,067,941, or at least $10,451,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or territory or of different states or territories.

_____

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Green Scale is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, New York 10022, USA.  On information and belief, each participant, or member, of Defendant Green Scale is a citizen of a State or Territory of the United States.  At all times material to the allegations in this Complaint, Defendant Green Scale purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Miller is a citizen of a State or Territory of the United States.  Defendant Miller was the sole participant in Defendant Green Scale.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Ben-Jacob served as the Authorized Representative for Defendant Green Scale.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Green Scale in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

**B.**     **The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

**1.     The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.      the bank account to which SKAT should pay the claim;

       c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

       d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

       e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

## 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Green Scale, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Green Scale represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Green Scale's claims.

36.      As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Green Scale represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

37.      Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Green Scale made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 69,067,941, or at least $10,451,000 (US). These refund claims were submitted to SKAT on the following dates: November 13, 2014; Apr. 17, 2015; Apr. 24, 2015; May 1, 2015; and May 22, 2015.

38.      In fact, Defendant Green Scale did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.      Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Green Scale on the following dates: Nov. 26, 2014; May 19, 2015; and July 6, 2015.

40.      On information and belief, Defendant Miller caused Defendant Green Scale's fraudulent refund claims to be submitted to SKAT. Defendant Miller exerted control over Defendant Green Scale as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Miller was the sole participant in at least seven different plans that submitted fraudulent refund claims to SKAT.

41.     Defendant Miller also participated in the fraudulent scheme by serving as the Authorized Representative for at least four different claimants pretending to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

### 3.     The Role of the Claimants' Authorized Representatives

42.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.     Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Green Scale a "Special Power of Attorney" dated August 22, 2014, that granted to Payment Agent Acupay authority "to pursue and file for reductions in rates of tax withholding in [Battu Holding's] name for which [Green Scale is] eligible, to oversee this process, and to collect refunds of excess withholding tat to which [Green Scale is] entitled on [Battu Holding's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Green Scale.

44.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Green Scale's claims to SKAT.

45.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Green Scale.  Six of these claimants, including Defendant Green Scale, listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in their fraudulent refund claims to SKAT.

46.     In addition to Defendant Green Scale, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

47.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.     By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

50.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

51.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other

participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.   The Role of the Broker-Custodians

52.   Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.   By way of example, with respect to Defendant Green Scale, one example of an "income advice":

   a.      is made out by Old Park Lane Capital PLC;

   b.      is dated August 13, 2014;

   c.      purports to certify Defendant Green Scale's ownership of 3,023,900 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

   d.      states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.   Defendant Green Scale never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37 and 52 through 54 to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 69,067,941, or at least $10,451,000 (US), and thereby suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63. The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64. The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65. As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT III

### (Payment By Mistake – Against All Defendants)

67. SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68. This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69. SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70. SKAT's mistaken belief was material to its decision to pay the claims.

71. SKAT suffered a loss as a result of its mistaken payments.

72. The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.     SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.     SKAT suffered a loss because of the Defendants' unjust enrichment.

77.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.     SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

81.    SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.    Defendants made material misstatements described in paragraphs 29-30, 37 and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Green Scale to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 69,067,941, or at least $10,451,000 (US), plus interest.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.


### JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

                              Respectfully submitted,


                              HUGHES HUBBARD & REED LLP


                               s/ Sarah. L. Cave
                              William R. Maguire
                              Marc A. Weinstein
                              Sarah L. Cave
                              John T. McGoey
                              One Battery Park Plaza
                              New York, New York 10004-1482
                              (212) 837-6000 (t)
                              (212) 422-4726 (f)
                              Bill.maguire@hugheshubbard.com
                              Marc.weinstein@hugheshubbard.com
                              Sarah.cave@hugheshubbard.com
                              John.mcgoey@hugheshubbard.com

                              Counsel for Plaintiff Skatteforvaltningen
                              (Customs and Tax Administration of the
                              Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| FULCRUM PRODUCTIONS LLC ROTH 401(K) PLAN, EDWIN MILLER, and MICHAEL BEN-JACOB, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

---

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Fulcrum Productions LLC Roth 401(K) Plan ("**Fulcrum**"), Edwin Miller ("**Miller**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

## I.    INTRODUCTION

1.      Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.      This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.      The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

Case 1:19-cv-01928 Document 1-1 Filed 02/28/19 Page 2 of 79

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4. The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5. The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Fulcrum, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6. On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. At least three individuals have been criminally charged by SØIK.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

    a.      The Authorized Representatives of the claimants, such as Defendant Miller, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 26,910,520, or at least $4,072,000 (US)[2], plus interest.

## II.      JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or territory or of different states or territories.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Fulcrum is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Fulcrum is a citizen of a State or Territory of the United States.  At all times material to the allegations in this Complaint, Defendant Fulcrum purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Miller is a citizen of a State or Territory of the United States.  At all times material to the allegations in this Complaint, Defendant Miller was the sole participant in and served as the Authorized Representative for Defendant Fulcrum.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Fulcrum in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.   Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.   Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.   Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.   A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.   SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.   It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.  Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

iv.      the bank account to which SKAT should pay the claim;

c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Fulcrum, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Fulcrum represented that Defendant Miller was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Fulcrum's claims.

36. As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Fulcrum represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37. Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Fulcrum made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 26,910,520, or at least $4,072,000 (US). These refund claims were submitted to SKAT on the following dates: October 28, 2014; April 13, 2015; April 16, 2015; April 23, 2015; April 28, 2015; and May 15, 2015.

38. In fact, Defendant Fulcrum did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39. Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Fulcrum on the following dates: November 10, 2014; April 24, 2015; May 8, 2015; May 27, 2015; and July 6, 2015.

40. On information and belief, Defendant Miller caused Defendant Fulcrum's fraudulent claims to be submitted to SKAT. Defendant Miller exerted control over Defendant Fulcrum as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Miller was the sole participant in seven different pension plans that submitted fraudulent refund claims to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

41.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.    At the direction of, and on behalf of, Defendant Fulcrum, Defendant Miller caused the execution of a "Limited Power of Attorney" dated August 7, 2014, that granted to Payment Agent Syntax authority to be Defendant Fulcrum's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."  Defendant Miller described himself as the "Authorized Representative" of Defendant Fulcrum.

43.    As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Miller and be subject to his direction and control with respect to Defendant Fulcrum's claims to SKAT.

44.    In addition to Defendant Fulcrum, Defendant Miller served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.    Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Miller's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Fulcrum to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Fulcrum's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Miller with regard to Defendant Fulcrum's fraudulent claims to SKAT.

48.     In addition to Defendant Fulcrum, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

        a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

        b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.      requested that SKAT pay the claim to its bank account.

53.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.      The Role of the Broker-Custodians

54.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.      By way of example, with respect to Defendant Fulcrum, one example of a "Credit Advice":

a.      is made out by Telesto Markets LLP;

b.      is dated May 11, 2015;

c.      purports to certify Defendant Fulcrum's ownership of 292,762 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.      states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Fulcrum never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants Fulcrum and Miller)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 26,910,520, or at least $4,072,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT III**</u>

**(Payment By Mistake – Against All Defendants)**

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Fulcrum and Miller)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Fulcrum to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 26,910,520, or at least $4,072,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.    For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money

had and received, the damages sustained or the amounts by which the Defendants

were paid by mistake or unjustly enriched, or by which the Defendants received

money to which they were not entitled, plus pre-judgment interest, fees, costs and

expenses.

3.    For Counts I and II, punitive damages.

4.    The costs of this action.

5.    All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SKATTEFORVALTNINGEN,

                          Plaintiff,

           vs.

KEYSTONE TECHNOLOGIES LLC
ROTH 401(K) PLAN, EDWIN MILLER,
and MICHAEL BEN-JACOB,

                         Defendants.

Civil Action No. _____

Honorable _____

February 28, 2019

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Keystone Technologies LLC Roth 401(K) Plan ("**Keystone Technologies**"), Edwin Miller ("**Miller**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

## I.    INTRODUCTION

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Keystone Technologies, as well as entities in the United Kingdom,

Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently  discovered  that  the  claimants  had  submitted  requests  for  tax  refunds  by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.    As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.    On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.    The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

a.    The Authorized Representatives of the claimants, such as Defendant Miller, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.    The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.    The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.    The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.    SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.    As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.    As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 47,936,417, or at least $7,253,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.    Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or territory or of different states or territories.

---

2.    This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Keystone Technologies is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief, each participant, or member, of Defendant Keystone Technologies is a citizen of a State or Territory of the United States.  At all times material to the allegations in this Complaint, Defendant Keystone Technologies purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Miller is a citizen of a State or Territory of the United States.  At all times material to the allegations in this Complaint, Defendant Miller was the sole participant in and served as the Authorized Representative for Defendant Keystone Technologies.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Keystone Technologies in its fraudulent refund claims to SKAT.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

20.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.    Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

**B.     The Fraudulent Scheme**

26.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

**1.     The Fraudulent Refund Claims Process**

27.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

28.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.     Each of the claimants provided the following documentation to SKAT through their designated agents:

a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.     the amount of the tax refund claim;

iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

iv.     the bank account to which SKAT should pay the claim;

c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.     in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Keystone Technologies, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Keystone Technologies represented that Defendant Miller was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Keystone Technologies.

36. As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Keystone Technologies represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

37. Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Keystone Technologies made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 47,936,417, or at least $7,253,000 (US). These refund claims were submitted to SKAT on the following dates: November 27, 2014; March 13, 2015; March 24, 2015; April 14, 2015; April 23, 2015; April 27, 2015; and May 14, 2015.

38. In fact, Defendant Keystone Technologies did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39. Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Keystone Technologies on the following dates: December 19, 2014; April 24, 2015; April 29, 2015; May 8, 2015; May 19, 2015; June 24, 2015; and July 1, 2015.

40. On information and belief, Defendant Miller caused Defendant Keystone Technologies' fraudulent claims to be submitted to SKAT. Defendant Miller exerted control over Defendant Keystone Technologies as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant Miller was the sole participant in seven different pension plans that submitted fraudulent refund claims to SKAT.

### 3.    The Role of the Claimants' Authorized Representatives

41.    Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.    At the direction of, and on behalf of, Defendant Keystone Technologies, Defendant Miller caused the execution of a "Power of Attorney" dated August 22, 2014, that granted to Payment Agent Goal authority "to be the attorney of [Keystone Technologies] and in [Keystone Technologies'] name and otherwise on [Keystone Technologies'] behalf and as [Keystone Technologies'] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Keystone Technologies] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Keystone Technologies] or through [Goal] on behalf of [Keystone Technologies]."

43.    As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for Defendant Miller and be subject to his direction and control with respect to Defendant Keystone Technologies' claims to SKAT.

44.    In addition to Defendant Keystone Technologies, Defendant Miller served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.    Defendant Ben-Jacob signed the Power of Attorney document as Defendant Miller's "attorney-in-fact," thereby assisting in the execution of the document and the appointment

of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also

allowed Defendant Keystone Technologies to use his office address of 425 Park Avenue, New

York, NY 10022 as Defendant Keystone Technologies' address on the claims listed in paragraph

37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized

Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power

of Attorney documents on behalf of the Authorized Representative for at least 20 different

claimants, including signing as "attorney-in-fact" for Defendant Miller with regard to Defendant

Keystone Technologies' fraudulent claims to SKAT.

48.     In addition to Defendant Keystone Technologies, at least 33 other claimants that

pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed

Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West

55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.     The Role of the Payment Agents

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the

direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each

claimant and Authorized Representative authorized their respective Payment Agent to act on their

behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters

attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

    a.    provided its email address as the contact address for the claimant on whose behalf it was acting;

    b.    signed and stamped the form, and stated it was applying on behalf of the claimant;

    c.    enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

    d.    requested that SKAT pay the claim to its bank account.

53.    As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.    The Role of the Broker-Custodians**

54.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.    By way of example, with respect to Defendant Keystone Technologies, one example of an "Income Advice":

    a.    is made out by Old Park Lane Capital PLC;

    b.    is dated May 11, 2015;

    c.    purports to certify Defendant Keystone Technologies' ownership of 872,850 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

       d.     states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.     Defendant Keystone Technologies never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants Keystone Technologies and Miller)

57.     SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 47,936,417, or at least $7,253,000 (US), and thereby suffered damages of that amount, plus interest.

61.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.     SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.     As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

69.     SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72.     SKAT's mistaken belief was material to its decision to pay the claims.

73.     SKAT suffered a loss as a result of its mistaken payments.

74.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

<div align="center">

**COUNT IV**

**(Unjust Enrichment – Against All Defendants)**

</div>

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

<div align="center">

**COUNT V**

**(Money Had & Received – Against All Defendants)**

</div>

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

<div align="center">15</div>

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Keystone Technologies and Miller)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Keystone Technologies to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 47,936,417, or at least $7,253,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

16

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## **JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 28, 2019 |
| TARVOS PENSION PLAN & JOHN VAN MERKENSTEIJN, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Tarvos Pension Plan ("**Tarvos**") and John van Merkensteijn ("**van Merkensteijn**") as follows:

I.    **INTRODUCTION**

1.    Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.    This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.    The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.    At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.     The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Tarvos, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.     On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 36,038,252, or at least $5,453,000 (US)[2], plus interest.

## II.     JURISDICTION & VENUE

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Tarvos is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 30 Frost Creek Drive, Locust Valley, New York 11560, USA.  On information and belief, each participant, or member, of Defendant Tarvos is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Tarvos purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant van Merkensteijn is a citizen of the State of New York.  Defendant van Merkensteijn was the sole participant in Defendant Tarvos.  At times material to the allegations in this Complaint, Defendant van Merkensteijn resided at 30 Frost Creek Drive, Locust Valley, New York 11560, the same address listed by at least two claimants in their fraudulent refund claims to SKAT, including Defendant Tarvos.  At times material to the allegations in this Complaint, Defendant van Merkensteijn also resided at 211 Central Park West, Apartment 2G, New York, NY 10024 and 60 Riverside Boulevard, Apartment 2101, New York, NY 10069, the same addresses listed by an additional four combined claimants.

## IV.    FACTUAL ALLEGATIONS

### A.    The Danish Withholding Tax System

19.    Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

20.    Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

21.    Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

22.    A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

23.    SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

24.    It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

_____

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

### B.      The Fraudulent Scheme

25.      As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 32 through 52 below.

#### 1.      The Fraudulent Refund Claims Process

26.      The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

27.      The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

28.      Each of the claimants provided the following documentation to SKAT through their designated agents:

      a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

      b.      a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

            i.      the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

            ii.      the amount of the tax refund claim;

            iii.      a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

           iv.      the bank account to which SKAT should pay the claim;

        c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

29.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30.     It was SKAT's practice to pay claims that included the required supporting documentation.

31.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

## 2.     The Role of the Claimants

32.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33.     Each of the claimants, including Defendant Tarvos, made withholding tax refund claims through their Payment Agents, as described in paragraph 28, above.

34.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.

35.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Tarvos represented that non-party Goal was its agent and had authority to act on its behalf with respect to its claims.

36.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Tarvos made fourteen (14) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 36,038,252, or at least $5,453,000 (US).  These refund claims were submitted to SKAT on the following dates:  December 6, 2013; December 13, 2013; March 14, 2014; March 24, 2014; March 25, 2014; March 26, 2014; March 28, 2014; April 8, 2014; April 10, 2014; April 24, 2014; May 19, 2014; and September 1, 2014.

37.     In fact, Defendant Tarvos did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

38.     Based on the false refund claims listed in paragraph 36, SKAT made payments to Defendant Tarvos on the following dates:  December 17, 2013; December 20, 2013; March 26, 2014; April 23, 2014; April 24, 2014; May 6, 2014; June 17, 2014; and October 9, 2014.

39.     On information and belief, Defendant van Merkensteijn caused Defendant Tarvos' fraudulent claims to be submitted to SKAT, evidenced in part by the fact that Defendant Tarvos used Defendant van Merkensteijn's home address of 30 Frost Creek Drive, Locust Valley, NY in its fraudulent refund claims to SKAT.  Defendant van Merkensteijn exerted control over Defendant

Tarvos as the plan's sole participant, and used this control to commit the fraud on SKAT. Defendant van Merkensteijn was the sole participant in six different pension plans that submitted fraudulent refund claims to SKAT, and a participant with three others in three additional plans. Defendant van Merkensteijn's wife was also the sole participant in a pension plan that submitted fraudulent claims to SKAT.

40.     At times material to the allegations in this Complaint, Defendant van Merkensteijn served as a Managing Director of a financial services firm based at 40 West 57th Street, New York, NY.  At least nine claimants listed that firm's West 57th Street address in their fraudulent tax refund claims to SKAT.  In addition, at least four different officers and/or employees of that firm signed Power of Attorney documents as the Authorized Representatives of one or more of 35 claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index.

41.     Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative for at least six of the 277 U.S. entities that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT.  Two of these six claimants listed the financial services firm's West 57th Street address in their fraudulent refund claims to SKAT, and a third listed Defendant van Merkensteijn's New York home address of 211 Central Park West, Apartment 2G, New York, NY 10024.

### 3.     The Role of the Claimants' Authorized Representatives

42.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.     The non-party Authorized Representative executed at the direction of, and on behalf of, Defendant Tarvos a "Power of Attorney" dated November 25, 2013, that granted to Payment Agent Goal authority "to be the attorney of [Tarvos] and in [Tarvos'] name and otherwise on [Tarvos'] behalf and as [Tarvos'] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [Tarvos] from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [Tarvos] or through [Goal] on behalf of [Tarvos]."  The Authorized Representative described himself as the "Duly authorised signatory" of Defendant Tarvos.

44.     As a result of the executed Power of Attorney, Payment Agent Goal also agreed to act for the Authorized Representative and be subject to his direction and control with respect to Defendant Tarvos' claims to SKAT.

### 4.     The Role of the Payment Agents

45.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

46.     By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

47.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 28 above.

48.     In connection with each Claim Form, the Payment Agent:

        a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

      b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

      c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

      d.      requested that SKAT pay the claim to its bank account.

49.      As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants. On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**5.      The Role of the Broker-Custodians**

50.      Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

51.      By way of example, with respect to Defendant Tarvos, one example of a "Dividend Credit Advice":

      a.      is made out by Solo Capital Partners LLP;

      b.      is dated August 13, 2014;

      c.      purports to certify Defendant Tarvos' ownership of 2,909,769 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

      d.     states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559". An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

52.     Defendant Tarvos never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

53.     SKAT repeats and realleges paragraphs 1 through 52 above as if fully set forth herein.

54.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 28-29, 36 and 50 through 52 to support claims for withholding tax refund payments.

55.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

56.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 36,038,252, or at least $5,453,000 (US), and thereby suffered damages of that amount, plus interest.

57.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

58.     SKAT repeats and realleges paragraphs 1 through 57 above as if fully set forth herein.

59.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

60.     As alleged in paragraphs 25 through 52 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

61.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

62.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 25 through 52 above.

63.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

64.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

65.     SKAT repeats and realleges paragraphs 1 through 64 above as if fully set forth herein.

66.      This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

67.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

68.     SKAT's mistaken belief was material to its decision to pay the claims.

69.     SKAT suffered a loss as a result of its mistaken payments.

70.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

<div align="center">

**COUNT IV**

**(Unjust Enrichment – Against All Defendants)**

</div>

71.     SKAT repeats and realleges paragraphs 1 through 70 above as if fully set forth herein.

72.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

73.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

74.     SKAT suffered a loss because of the Defendants' unjust enrichment.

75.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

<div align="center">

**COUNT V**

**(Money Had & Received – Against All Defendants)**

</div>

76.     SKAT repeats and realleges paragraphs 1 through 75 above as if fully set forth herein.

77.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

78.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

79.     SKAT repeats and realleges paragraphs 1 through 78 above as if fully set forth herein.

80.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

81.     Defendants made material misstatements described in paragraphs 28-29, 36 and 50 through 52 above in connection with every withholding tax refund claim submitted on behalf of Defendant Tarvos to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

82.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

83.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 36,038,252, or at least $5,453,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SKATTEFORVALTNINGEN,

                              Plaintiff,

              vs.

TUMBA SYSTEMS LLC ROTH 401(K)
PLAN, EDWIN MILLER, and MICHAEL
BEN-JACOB,

                              Defendants.

---

Civil Action No. _____

Honorable _____

February 28, 2019

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Tumba Systems LLC Roth 401(K) Plan ("**Tumba**"), Edwin Miller ("**Miller**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.     **INTRODUCTION**

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they

pay to shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT

claiming repayments of tax withheld on dividends that they purported to have earned on shares of

Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and

they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for

refunds in respect of shares in Danish companies that they did not own.  The agents submitted the

fraudulent applications at the direction of, and on behalf of, the claimants and their authorized

representatives, with false documentation representing that the claimants owned substantial shares

in Danish companies, had earned substantial dividends for which tax had been withheld, and other

documentation representing that the claimants were entitled to a tax refund.  The agents obtained

over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the

claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received

fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United

States, including Defendant Tumba, as well as entities in the United Kingdom, Canada, Malaysia,

and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants

may have submitted fraudulent tax refund claims based on the double taxation treaty between

Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and

subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.    As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.    On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.    The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including but not limited to:

a.    The Authorized Representatives of the claimants, such as Defendant Miller, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.      The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.      SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.      As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.      As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 28,217,450, or at least $4,269,000 (US)[2], plus interest.

## II.    JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or territory or of different states or territories.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the
events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is
proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.  PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the
assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København
Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a
mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Tumba is a pension plan which, in its requests to SKAT for tax refunds,
listed its address as 425 Park Avenue, New York, NY 10022, USA.  On information and belief,
each participant, or member, of Defendant Tumba is a citizen of a State or Territory of the United
States.  At all times material to the allegations in this Complaint, Defendant Tumba purported to
be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section
401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of
the United States Internal Revenue Code, and resident of the United States of America for purposes
of U.S. taxation.

18.     Defendant Miller is a citizen of a State or Territory of the United States.  At all
times material to the allegations in this Complaint, Defendant Miller was the sole participant in
and served as the Authorized Representative for Defendant Tumba.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At times material to
the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were
located at 425 Park Avenue, New York, NY 10022, the same address listed by Defendant Tumba
in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

### B. The Fraudulent Scheme

26. As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian. The respective roles of each of these participants are described in further detail in paragraphs 33 through 56 below.

#### 1. The Fraudulent Refund Claims Process

27. The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

28. The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29. Each of the claimants provided the following documentation to SKAT through their designated agents:

    a. a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

    b. a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

        i. the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

        ii. the amount of the tax refund claim;

        iii. a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

iv.     the bank account to which SKAT should pay the claim;

c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.     It was SKAT's practice to pay claims that included the required supporting documentation.

32.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

## 2.     The Role of the Claimants

33.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.     Each of the claimants, including Defendant Tumba, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims.  Defendant Tumba represented that Defendant Miller was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Tumba's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Tumba represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Tumba made fifteen (15) withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 28,217,450, or at least $4,269,000 (US).  These refund claims were submitted to SKAT on the following dates:  October 28, 2014; April 30, 2015; and May 15, 2015.

38.     In fact, Defendant Tumba did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Tumba on the following dates:  November 10, 2014; May 27, 2015; and July 6, 2015.

40.     On information and belief, Defendant Miller caused Defendant Tumba's fraudulent claims to be submitted to SKAT.  Defendant Miller exerted control over Defendant Tumba as the plan's sole participant, and used this control to commit the fraud on SKAT.  Defendant Miller was the sole participant in seven different pension plans that submitted fraudulent refund claims to SKAT.

### 3.     The Role of the Claimants' Authorized Representatives

41.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of

Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

42.     At the direction of, and on behalf of, Defendant Tumba, Defendant Miller caused the execution of a "Limited Power of Attorney" dated August 7, 2014, that granted to Payment Agent Syntax authority to be Defendant Tumba's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction."  Defendant Miller described himself as the "Authorized Representative" of Defendant Tumba.

43.     As a result of the executed Limited Power of Attorney, Payment Agent Syntax also agreed to act for Defendant Miller and be subject to his direction and control with respect to Defendant Tumba's claims to SKAT.

44.     In addition to Defendant Tumba, Defendant Miller served as the Authorized Representative for at least three other claimants, which, in their requests to SKAT for tax refunds, also listed Defendant Ben-Jacob's office address of 425 Park Avenue, New York, NY 10022.

45.     Defendant Ben-Jacob signed the Limited Power of Attorney document as Defendant Miller's "attorney-in-fact," thereby assisting in the execution of the document and the appointment of the Payment Agent for purposes of submitting the fraudulent claims.  Defendant Ben-Jacob also allowed Defendant Tumba to use his office address of 425 Park Avenue, New York, NY 10022 as Defendant Tumba's address on the claims listed in paragraph 37.

46.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine claimants that submitted fraudulent tax refund claims to SKAT.

47.     Defendant Ben-Jacob also participated in the fraudulent scheme by signing Power of Attorney documents on behalf of the Authorized Representative for at least 20 different claimants, including signing as "attorney-in-fact" for Defendant Miller with regard to Defendant Tumba's fraudulent claims to SKAT.

48.     In addition to Defendant Tumba, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

**4.     The Role of the Payment Agents**

49.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

50.     By means of the Power of Attorney described in paragraphs 41-45 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

51.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

52.     In connection with each Claim Form, the Payment Agent:

        a.      provided its email address as the contact address for the claimant on whose behalf it was acting;

        b.      signed and stamped the form, and stated it was applying on behalf of the claimant;

        c.      enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

        d.      requested that SKAT pay the claim to its bank account.

11

53.    As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

54.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

55.    By way of example, with respect to Defendant Tumba, one example of a "Dividend Advice":

a.    is made out by West Point Derivatives Ltd;

b.    is dated May 11, 2015;

c.    purports to certify Defendant Tumba's ownership of 292,350 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.    states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

56.    Defendant Tumba never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against Defendants Tumba and Miller)

57.      SKAT repeats and realleges paragraphs 1 through 56 above as if fully set forth herein.

58.      Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 54 through 56 to support claims for withholding tax refund payments.

59.      Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

60.      In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 28,217,450, or at least $4,269,000 (US), and thereby suffered damages of that amount, plus interest.

61.      Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

62.      SKAT repeats and realleges paragraphs 1 through 61 above as if fully set forth herein.

63.      As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

64.      As alleged in paragraphs 26 through 56 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

65. The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

66. The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 56 above.

67. As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

68. Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

### COUNT III

### (Payment By Mistake – Against All Defendants)

69. SKAT repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70. This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

71. SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

72. SKAT's mistaken belief was material to its decision to pay the claims.

73. SKAT suffered a loss as a result of its mistaken payments.

74. The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

75.     SKAT repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

77.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

78.     SKAT suffered a loss because of the Defendants' unjust enrichment.

79.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

80.     SKAT repeats and realleges paragraphs 1 through 79 above as if fully set forth herein.

81.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

82.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against Defendants Tumba and Miller)

83.     SKAT repeats and realleges paragraphs 1 through 82 above as if fully set forth herein.

84.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

85.     Defendants made material misstatements described in paragraphs 29-30, 37, and 54 through 56 above in connection with every withholding tax refund claim submitted on behalf of Defendant Tumba to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

86.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

87.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 28,217,450, or at least $4,269,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

16

2.      For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money
        had and received, the damages sustained or the amounts by which the Defendants
        were paid by mistake or unjustly enriched, or by which the Defendants received
        money to which they were not entitled, plus pre-judgment interest, fees, costs and
        expenses.

3.      For Counts I and II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

17